**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

BURGIOUS FRAZIER, JR., YOSUB KIM,
WAYNE KRUG, BEN PEREZ, VANESSA
SZAJNBERG, NICHOLAS TAPALANSKY,
and SHELLY YIP,

                  Petitioners,

       -against-

X. CORP f/k/a TWITTER, INC. and X
HOLDINGS CORP f/k/a X HOLDINGS I,
INC.,

             **Respondents.**

C.A. NO. 1:24-CV-2135

---

**MEMORANDUM OF LAW IN SUPPORT OF PETITION TO COMPEL ARBITRATION**

---

Akiva Cohen
**KAMERMAN, UNCYK, SONIKER & KLEIN P.C.**
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com

*Counsel for Petitioners*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

I.      INTRODUCTION ..............................................................................................1

II.     STATEMENT OF FACTS..................................................................................3

    A.   Twitter Requires Petitioners to Execute the DRA as a Condition of Employment................3

    B.   Twitter Selects the Arbitration Provider For, and Rules Governing, the DRA .......................4

    C.   Twitter Engages in Procedural Sandbagging That Stalls Employees' Arbitrations.................5

III.    Argument............................................................................................................7

    A.   Federal Law Requires That the DRA Be Enforced .....................................................7

    B.   This Court Is the Appropriate Court to Compel Arbitration ........................................7

    C.   The Court Should Compel Twitter to Arbitrate in Accordance With the DRA's
         Requirement That Twitter Abide By Rule 31(c) and the Minimum Standards ..................8

    D.   Judge Maas's Partial Final Award Collaterally Estops Respondents from Denying that the
         DRA Requires Them to Proceed Under Rule 31(c) and JAMS's Minimum Standards...............9

        i.    Judge Maas's Partial Final Award Satisfies New York's Requisites for Preclusive Effect......9

        ii.   Because Judge Maas's Ruling Estops Respondents from Denying Their Obligation to
              Abide by Rule 31(c) and the Minimum Standards, the Court Must Compel Them to Do So....13

IV.     Conclusion.........................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allemeier v. Zyppah, Inc.*, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018)......................................13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) ...................................11

*Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.,* 409 F.3d 87 (2d Cir. 2005) .............14

*Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91 (S.D.N.Y. 1997) .......................................11

*C.D.S., Inc. v. Zetler*, 288 F. Supp. 3d 551 (S.D.N.Y. 2017)................................................14

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360 (2d Cir. 2003)......................12

*County of Rockland v. Aetna Casualty & Surety Company*, 129 A.D. 2d 606 (2d Dept 1987) ...................14

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) ...................................................11

*GTF Mktg., Inc. v. Colonial Aluminum Sales, Inc.*, 108 A.D.2d 86 (N.Y. App. Div. 1985) ........................13

*Hoeg v. Samsung Elecs. of Am., Inc.*, 2024 WL 714566 (N.D. Ill. Feb. 20, 2024) ...........................13

*Horst Constr. Co. v. Jeffries*, 2012 WL 13018331 (E.D. Pa. Mar. 27, 2012) ..............................13

*In re Drexel Burnham Lambert Group, Inc.*, 161 B.R. 902 (S.D.N.Y. 1993) ...............................14

*Interoceania Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir. 1997).....................................14

*Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261 (2d Cir. 1997) ........................................14

*Jiang v. Am. Express Nat'l Bank*, 2023 WL 144127 (E.D.N.Y. Jan. 10, 2023) ............................16

*Levitt v. Lipper Holdings, LLC*, 2006 WL 1330028 (S.D.N.Y. May 15, 2006) .............................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)................................11

*Overview Books, LLC v. U.S*, 438 F. App'x 31 (2d Cir. 2011) ............................................14

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979) ......................................................16

*Petition of Home Ins. Co.*, 908 F. Supp. 180 (S.D.N.Y. 1995) ............................................11

*Pre-Paid Legal Servs., Inc.*, 786 F.3d 1287 (10th Cir. 2015) ...........................................13

*Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191 (2d Cir. 1991) ....................15

**Statutes**

9 U.S.C. § 4...................................................................................................... 11, 12

**Other Authorities**

JAMS Employment Rules, Rule 2.........................................................................8

JAMS Employment Rules, Rule 24(e) ...............................................................15

JAMS Employment Rules, Rule 31(c) .................................................................9

JAMS Minimum Standards of Procedural Fairness, Standard No. 6 ................................... 8, 9

Petitioners Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, and Shelly Yip ("Petitioners") respectfully submit this Memorandum of Law in support of their Petition to compel Respondents Twitter, Inc., X Corp., X Holdings I, Inc., and X Holding Corp. (collectively, "Twitter" or "Respondents") to arbitrate with Petitioners in accordance with the terms of Twitter's Dispute Resolution Agreement ("DRA"), including the terms that require Respondents to pay the fees for such arbitrations.

## I.  INTRODUCTION

Statements like 'Petitioners signed DRAs requiring them to resolve employment-related disputes with Twitter through a process of binding arbitration administered by JAMS, under the JAMS Employment Rules' are hardly uncommon features in petitions brought to compel arbitration in 9 U.S.C. § 4 cases. But most of the time, that statement is found in a brief filed by an employer seeking to compel the employee to arbitrate. That's not true here. Petitioners were required to execute Twitter's DRA as a condition of accepting employment with Twitter and did not subsequently opt out of the DRA's arbitration provisions, and they acknowledge that fact. They are ready, willing, able, and prepared to arbitrate. They have filed arbitrations. Twitter has not merely agreed that such employees should be permitted to arbitrate; it continues to argue in other proceedings that its employees are **required** to do so and has sought to compel them to arbitrate.

This might lead the Court to question why this Petition is required at all. The answer is simple. Twitter maintains but that the employees are required to arbitrate, but also that Twitter need not the pay fees required, under Rule 31(c) of the JAMS Employment Rules and its Policy on Employment Arbitration Minimum Standards of Procedural Fairness (the "Minimum Standards"), for the arbitrations to proceed. And it does so even though Twitter selected the JAMS employment arbitration rules to govern those arbitrations. In Twitter's view, the DRA's provision relating to

payment of forum fees conflicted with Rule 31(c) and the Minimum Standards, only an arbitrator could rule on that position and require them to pay the fees, and if the arbitrator will not make a ruling to that effect without the fees having first been paid, well, that's the employee's problem, not Twitter's.

To cut the Gordian Knot created by Twitter's abusive litigation tactics, Petitioners' counsel advanced fees in one matter to permit an arbitrator – retired Magistrate Judge Frank Maas – to rule on the disputed contractual interpretation Twitter relied upon as the justification for refusing to arbitrate under the terms of their DRA. Like Petitioners in this case, Zhang Yunfeng was employed by Twitter and signed, as a condition of employment, a DRA substantively identical in relevant part to the ones at issue in this case. And, as in Petitioners' arbitrations, Respondents insisted that the DRA relieved them of their obligation to make JAMS-ordered payments of arbitration and arbitrator fees. The only way that this case differs from Mr. Zhang's is in the identity of the Petitioners; the contract and issue of contractual interpretation is the same in all relevant respects.

Zhang moved for an award declaring that the DRA required Twitter to pay all the costs unique to arbitration, and Respondents opposed. Finding that New York law applied, and permits but does not require the division of fees between employee and employer, Judge Maas held that the DRA's provision regarding payment of arbitral fees did not conflict with Rule 31(c) and the Minimum Standards, and that Twitter's agreement in the DRA to abide by the JAMS rules therefore encompassed an agreement to abide by and pay the fees required by Rule 31(c) and the Minimum Standards. Judge Maas thus issued a Partial Final Award ordering that Twitter pay the JAMS fees and arbitrator fees, other than the initial case management fee, in connection with the proceeding.

Despite that ruling, Twitter maintains the same objection in hundreds of other matters, including Petitioners'. But because Twitter had a full and fair opportunity to litigate its position in a proceeding which reached a final conclusion on this matter, however, it is collaterally estopped from

2

denying that the DRA requires them to pay the forum fees. Petitioners thus seek an order

compelling Respondents to arbitrate "in accordance with the terms [of the DRA]," including paying

the forum fees required by the Rules Twitter selected to govern those arbitrations, and contractually

agreed to abide by. The Court should grant the Petition.

## II. STATEMENT OF FACTS

### A. Twitter Requires Petitioners to Execute the DRA as a Condition of Employment

For years, Twitter has required its employees to execute a form DRA as a condition of

employment. Petition, ¶ 1. The DRA states that it is governed by the Federal Arbitration Act and

evidences a transaction involving commerce. Petition, Ex. 5, at 36, § 1. It provides that "Disputes

covered by this Agreement include, without limitation, disputes arising out of or relating to

interpretation or application of this Agreement, including the enforceability, revocability or validity

of the Agreement or any portion of the Agreement." *Id.*

The DRA further provides that

> [e]xcept as it otherwise provides or required by law, this Agreement
> also applies, without limitation, to  disputes regarding the
> employment relationship, terms and conditions of employment, trade
> secrets, unfair  competition, compensation, breaks and rest periods,
> termination, discrimination, harassment, or retaliation, and claims
> arising under the Uniform Trade Secrets Act, Title VII of the Civil
> Rights Act of 1964, Americans With Disabilities Act, Age
> Discrimination in Employment Act, Family Medical Leave Act, Fair
> Labor Standards Act, Employee Retirement Income Security Act
> (except for claims for employee benefits under any benefit plan
> sponsored by the Company and covered by the Employee Retirement
> Income Security Act of 1974 or funded by insurance), Genetic
> Information Non-Discrimination Act, and state statutes, if any,
> addressing the same or similar subject matters, all other state
> statutory and common law claims, and any other employment-related
> claim.
>
> Except as it otherwise provides, this Agreement is intended to apply
> to the resolution of disputes that otherwise would be resolved in a
> court of law or before a forum other than arbitration. This
> Agreement requires all covered disputes to be resolved only by an
> arbitrator through final and binding arbitration and not by way of

court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

*Id.* (emphasis in original).

Twitter's practice was to send offer letters to successful job applicants. Declaration of Akiva Cohen ("Cohen Dec"), ¶ 2 and Ex. 1. Twitter's offer letters explain the steps the applicant must take to accept a job offer, which include signing the DRA. *Id.* Twitter uses Adobe Sign to collect electronic signatures on those employment documents. *Id.*, Ex. 1. Twitter has largely automated the onboarding process for new employees, such that once the applicant submits executed documents through Adobe Sign, the documents are stored, Twitter's People Services team is notified, and a new Workday profile is created for the newly hired Twitter employee. *Id.* This automated process requires the employee to execute the DRA. *Id.*

### B.  Twitter Selects the Arbitration Provider For, and Rules Governing, the DRA

Since June 2018, the DRA has provided that the employee and Twitter agree to bring any arbitration claim before JAMS, pursuant to the then-current JAMS Rules. *See, e.g.*, Petition Ex. 5 at 37, § 5. The DRA also contains a link to the Employment Arbitration Rules page, which in turn contains a link to the "Complete List of Rules & Procedures," including the Minimum Standards. *Id.*

Rule 2 of the JAMS Rules provides that the parties to an arbitration can agree to any procedures not specified in the JAMS Rules, or otherwise alter the JAMS Rules, only if any such alterations are "consistent with the applicable law and JAMS policies (including without limitations, the []Minimum Standards . . . .").[1] JAMS adopted its Minimum Standards effective July 15, 2009.[2]

The Minimum Standards apply to arbitrations based on a pre-dispute agreement that is required as a condition of employment. *Id.* Minimum Standard No. 6 provides in pertinent part that

---

[1] Available at: https://www.jamsadr.com/rules-employment-arbitration/english

[2] Available at: https://www.jamsadr.com/employment-minimum-standards/

"An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration. The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services." *Id.* Moreover, since June 1, 2021, the JAMS Employment Arbitration Rules & Procedures, have provided in Rule 31(c) that "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee."[3]

### C.  Twitter Engages in Procedural Sandbagging That Stalls Employees' Arbitrations

Elon Musk acquired Twitter and promptly laid off nearly 75% of the workforce, offering them a paltry severance far less than the amount Twitter had previously promised the employees, which prompted thousands of former Twitter employees to file arbitration demands in response. Cohen Dec, ¶ 3. In the months after Twitter's former employees filed their arbitration demands, JAMS invoiced Respondents for their share of the initiation fees and indicated that JAMS had concluded that the Minimum Standards would apply to the arbitration. *Id.* Respondents did not object to these statements, and instead, filed answers and affirmative defenses, paid their share of the case initiation fees, and participated in the selection of arbitrators. *Id.*

After proceeding in arbitration for several months, on June 2, 2023, Respondents began objecting to the application of the JAMS rules requiring Respondents to bear the fees, arguing that the DRA superseded those rules. Cohen Dec, Ex. 2. On June 21, 2023, JAMS rejected Respondents' objection. Cohen Dec, Ex. 3. On June 28, 2023, Respondents wrote JAMS and indicated that they would refuse to proceed under the Minimum Standards, asserting that only an arbitrator could answer questions regarding the interpretation of the DRA. Cohen Dec, Ex. 4.

---

[3] *Supra*, note 2.

The practical effect of Respondents' position (and refusal to pay the arbitration fees) was to halt the progress of hundreds of arbitrations involving former Twitter employees who contended that they had been denied severance benefits which had been promised to them. Cohen Dec, Ex. 5. When Twitter refused to pay the mandatory arbitration fees required by the JAMS Employment Rules, thus preventing Zhang and hundreds of his former colleagues from having any aspect of their dispute – including the apportionment of fees – heard in the forum Twitter chose to require, Zhang cut the Gordian knot, staking the fees necessary to have Judge Maas consider Twitter's position that the DRA did not require it to abide by the fee-allocation rules of its chosen forum. Petition, ¶ 54. After extensive briefing, Petition, Exs. 1-3, and oral argument, Cohen Dec ¶ 8, on November 30, 2023, Judge Maas rejected Respondents' arguments and held, in a Partial Final Award, that Twitter's DRA required Respondents to abide by the JAMS Rules and pay the fees. Petition, Ex. 4 at 3-4.

In his Partial Final Award, Judge Maas found that

> Twitter employees . . . are required to sign the DRA electronically as a condition of employment even though they may opt out of its applicability if they choose to do so. The DRA, which contains mandatory arbitration language in Section 1, therefore constitutes '<u>an agreement</u> . . . required as a condition of employment' within the meaning of JAMS Rule 31(c)."

*Id.* at 4 (emphasis in original). After considering and rejecting Respondents' argument that the DRA mandated that the arbitral fees be split between Respondents and the employees, Judge Maas went on to hold that "Respondent Twitter, Inc., and Respondent X Holdings I, Inc. (as Twitter's affiliate, successor, subsidiary, or parent), will be required to pay all the JAMS fees and arbitrator fees (other than the initial case management fee) incurred in connection with this proceeding." *Id.* at 4.

### III. ARGUMENT

#### A. Federal Law Requires That the DRA Be Enforced

"Federal law and policy strongly favors arbitration as an alternative dispute resolution process." *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 91, 93 (S.D.N.Y. 1997). Congress intended the Federal Arbitration Act ("the FAA") "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The FAA

> leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4.

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Courts must resolve doubts about the scope of an arbitration agreement in favor of arbitrability, unless it is beyond question that the dispute is not covered by the agreement. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, the parties agree that the DRA is a valid and binding arbitration agreement that covers the claims in Petitioners' demands for arbitration. Thus, the DRA is precisely the kind of agreement Congress intended the FAA to favor.

#### B. This Court Is the Appropriate Court to Compel Arbitration

Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Under the FAA, "arbitration must proceed in the district where the order directing arbitration is filed, and a federal district court may only compel arbitration in its own district." *Petition of Home Ins. Co.*, 908 F. Supp. 180, 182 (S.D.N.Y. 1995) (Internal citations omitted).

Here, the DRA provides that "[t]he location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise." Petition, Ex. 5 at 37, § 3. Petitioners' arbitrations were accordingly filed in and will proceed in this district, and this Court is thus the proper court to compel Respondents to arbitrate in accordance with the terms of the DRA.

### C. The Court Should Compel Twitter to Arbitrate in Accordance With the DRA's Requirement That Twitter Abide By Rule 31(c) and the Minimum Standards

"A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 USC § 4. "[P]rior to compelling arbitration, the district court must first determine two threshold issues that are governed by state rather than federal law: (1) Did the parties enter into a contractually valid arbitration agreement? and (2) If so, does the parties' dispute fall within the scope of the arbitration agreement?" *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). If the answer to those questions is yes and the arbitration agreement is valid and applicable – and it is – then the Court must not only compel arbitration, but compel arbitration "in accordance with the terms thereof." 9 U.S.C. § 4.

Here, there is no dispute that the DRA is a valid arbitration agreement covering the claims Petitioners pled in their arbitration demands. Indeed, Respondents have moved to compel other former Twitter employees to arbitrate their substantively identical claims. *See, e.g., Cornet v. Twitter, Inc.*, Case No. 3:22-cv-06857-JD, N.D. Cal., D.I. 18, p. 1; *Woodfield v. Twitter, Inc. et al.*, C.A. No. 1:23-cv-780-JLH, D. Del., D.I. 52, p.1. Thus, the only question for the Court is whether the DRA requires Respondents to abide by Rule 31(c) and the JAMS Minimum Standards; if so, the Court should "compel arbitration in accordance with the terms thereof" by directing Respondents to abide by those standards as they arbitrate with Petitioners. *See Hoeg v. Samsung Elecs. of Am., Inc.,* 2024 WL

714566, at *7 (N.D. Ill. Feb. 20, 2024) ("After nearly two years of motion practice, it is time for Petitioners to have their claims arbitrated. [...] As such, the Court orders SEA to stick to its own terms and arbitrate Petitioners' BIPA claims. And despite Samsung's contentions, this Order can and does compel Samsung to pay the requisite fees as set by the AAA."); *Allemeier v. Zyppah, Inc.*, 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018) ("Zyppah is ordered to submit to arbitration in accordance with its Employment Agreement with Petitioner. Zyppah is further ordered to pay any fees and comply with any requirements imposed by the AAA."); *Pre-Paid Legal Servs., Inc.*, 786 F.3d 1287 (10th Cir. 2015) (affirming district court's order compelling the defendant to pay arbitration fees); *Horst Constr. Co. v. Jeffries*, 2012 WL 13018331, at *1 (E.D. Pa. Mar. 27, 2012) (granting plaintiff's motion to stay pending arbitration and compelling defendant to follow the dispute resolution procedures in the parties' agreement); *Levitt v. Lipper Holdings, LLC*, 2006 WL 1330028, at *1 (S.D.N.Y. May 15, 2006) (compelling party to pay all fees invoiced by arbitration provider). And because Judge Maas's ruling estops Respondents from contesting that issue for a second time before this Court, the answer to that question is unequivocal: Respondents must comply with Rule 31(c) and the Minimum Standards, and the Court should compel them to do so.

### D. Judge Maas's Partial Final Award Collaterally Estops Respondents from Denying that the DRA Requires Them to Proceed Under Rule 31(c) and JAMS's Minimum Standards

   i. <u>Judge Maas's Partial Final Award Satisfies New York's Requisites for Preclusive Effect</u>

Under New York procedural law, collateral estoppel can be asserted by a litigant who was not a party to the original action. *GTF Mktg., Inc. v. Colonial Aluminum Sales, Inc.*, 108 A.D.2d 86, 89 (N.Y. App. Div. 1985). When issue preclusion is asserted, the core question is whether the party against whom the preclusive effect is sought had a "full and fair opportunity to contest" the issue in prior litigation, irrespective of the identity of their adversary. *Id.* "Collateral estoppel is permissible as to a given issue if: (1) the identical issue was raised in a previous proceeding; (2) the issue was

actually litigated and decided in the previous proceeding; (3) the party [against whom preclusion is sought] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Interoceania Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotes omitted). *See also Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005). There is and should be no dispute that each of those elements is satisfied: The relevant provisions of the DRA are identical across Petitioners and Mr. Zhang, *compare* Petition Ex. 5 at 37, § 6 *with* Cohen Dec. Ex. 6 at 2, § 6, and Petitioners arbitrations are governed by the same version of the JAMS Employment Rules as Mr. Zhang's.[4] Respondents actually and actively litigated this issue before Judge Maas, with extensive briefing and oral argument. *See* Petition Exhibits 1-4, Cohen Dec ¶ 8**.** And Judge Maas's ruling was necessary to address the issue before him, not *dicta. Cf. C.D.S., Inc. v. Zetler*, 288 F. Supp. 3d 551, 557 (S.D.N.Y. 2017). *See also Overview Books, LLC v. U.S*, 438 F. App'x 31, 33 (2d Cir. 2011).

And Judge Maas's ruling was sufficiently final. Under New York law, res judicata and collateral estoppel (or claim and issue preclusion, respectively) "apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award." *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267–68 (2d Cir. 1997). *See also In re Drexel Burnham Lambert Group, Inc.*, 161 B.R. 902 (S.D.N.Y. 1993) *citing Norris v. Grosvenor Marketing, Ltd.*, 803 F.2d 1281; 1285 n.4 (2d Cir. 1986); *County of Rockland v. Aetna Casualty & Surety Company*, 129 A.D. 2d 606, 607 (2d Dept 1987) ("that the prior determination was an unconfirmed arbitration award and not a judicial determination does not lessen its collateral estoppel effect").

The same holds true for Judge Maas's Partial Final Award, because the parties consented to the arbitrator having authority to issue Partial Final Awards and did not object when Judge Maas

---

[4] The JAMS Employment Arbitration Rules & Procedures reflect an effective date of June 1, 2021. *See*, note 2, *supra*. In addition, the DRA provides that "Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules." *See* DRA, §5,

indicated he would do so. *See Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) ("if the parties agree that the panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so"); Petition, Ex. 5 at 37, § 5 (arbitration to be conducted under JAMS rules); JAMS Employment Arbitration Rules & Procedures, Rule 24(e) (expressly authorizing the arbitrator to issue Partial Final Awards as interim measures); Cohen Dec ¶ 8 (Judge Maas indicated he would issue a Partial Final Award and Defendants did not object). And Judge Maas decided this particular issue with finality. *See* Award at n.3 ("[B]ecause nothing remains to be decided by me with respect to the issue of responsibility for the payment of JAMS and arbitrator fees, I have captioned this award a 'Partial Final Award.'") The Partial Final Award is therefore a "final" judgment on the merits on this issue for purposes of collateral estoppel, and Petitioners may seek its offensive enforcement in the courts against the same Respondents in similar situations.

Finally, this case is particularly ripe for offensive issue preclusion. Respondents seek to trap Petitioners – and hundreds of their former colleagues – in a strange loop: unable to access the courts, because the DRA requires arbitration, but unable to access arbitration because Respondents refuse to comply with the rules of their chosen arbitration provider, which will not administer the arbitrations unless the fees are paid. And while the DRA *requires* Respondents to pay those fees (because it requires Respondents to abide by those rules), Respondents insist that only the arbitrator they will not pay can make them do so because of their already-rejected interpretation of the DRA. The only way out of this loop is to prevent Respondents from re-litigating this issue over and over again claimant-by-claimant, and the vehicle to do so is to pre-emptively rule that Respondents are precluded from even making that argument.

In contrast, Twitter's preferred outcome – that its former employees be forced to litigate the issue of whether Twitter is required to honor the terms of the contract it not only signed, but

drafted, hundreds or thousands of times – would be a blatant misuse of judicial resources that would exemplify the "little good and much harm" that can come from permitting a determined litigant to endlessly retry the same issue in an exhausting fashion in different venues until it obtains a ruling it prefers. *See Jiang v. Am. Express Nat'l Bank*, 2023 WL 144127, at *8 (E.D.N.Y. Jan. 10, 2023). And while "[t]he general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel," *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979), neither circumstance is present here. To the contrary, Respondents have continually opposed the creation of a single mass litigation regarding this issue, resulting in various plaintiffs in the same situation as Petitioners having to file individual claims from coast to coast. Furthermore, none of the potential avenues of unfairness that would justify a refusal to allow the use of offensive non-mutual collateral estoppel as contemplated by *Parklane* threaten the Respondents in this case. Given the sums at stake and the number of arbitrations naming Respondents under this DRA, Respondents had every incentive to argue this issue "fully and vigorously," and in fact did so. Finally, the partial final award in *Zhang* is not inconsistent with any previous action; in fact, it is explicitly consistent with JAMS' previous ruling in these cases. And, since the DRA delegates all fee issues to the arbitrator, there are no "procedural opportunities" available to the Respondents that were "unavailable in the first action of a kind that might be likely to cause a different result," *Parklane* at 332, on a resultant action; any further arguments on this issue would also be heard by an arbitrator.

Under the circumstances, the Court must give Judge Maas's Ruling preclusive effect.

ii.    Because Judge Maas's Ruling Estops Respondents from Denying Their Obligation to Abide by Rule 31(c) and the Minimum Standards, the Court Must Compel Them to Do So

Judge Maas's ruling reached two key conclusions that the Court should give preclusive effect: *First*, he ruled that Rule 31(c) and the Minimum Standards did not conflict with Section 6 of the DRA, which governs the parties' obligations to pay for the arbitration. As Judge Maas explained, Section 6 merely provides that such fees will be "apportioned between the parties in accordance with []applicable [New York State] law," and New York law does not provide for any specific apportionment of fees beyond 'whatever the parties agreed to.' Petition Ex. 4 at 3. Respondents, meanwhile, also agreed in the DRA to abide by the JAMS Rules, which include the Minimum Standards, and Rule 31(c) which likewise requires Respondents to pay all of the fees at issue. *Id.* at 3-4. Thus, Judge Maas found, Respondents agreed to pay the fees required by the JAMS Rules, and Section 6 of the DRA therefore does not contradict, Respondents' obligation to pay the arbitral fees. *Id.* at 3-4. And *second*, Judge Maas rejected Twitter's contention that the Minimum Standards and Rule 31(c) should not apply, finding that Twitter's DRA was in fact an agreement required as a condition of employment and therefore JAMS was correct in applying the Minimum Standards to claims brought under Twitter's DRA. *Id.* at 4.

Those findings are dispositive here. Respondents' opposition to this Petition is likely to take two forms: first, a contention that the delegation clause of the DRA prevents this Court from ordering them to abide by Rule 31(c) and the Minimum Standards, and second an argument that Judge Maas's ruling was wrong on the merits, and that they should be allowed to ask hundreds of different arbitrators to repeatedly rule on the same issue, in hopes of finding one who agrees. But giving Judge Maas's ruling preclusive effect dispenses with both arguments and leaves Respondents with no basis to oppose the requested relief.

First, if the Court gives Judge Maas's ruling preclusive effect then the DRA's delegation clause is irrelevant. The DRA provides that any "disputes" regarding the apportionment of arbitrator and arbitration fees "will be resolved by the arbitrator." Petition, Ex. 5 at 37, § 6. But Respondents' obligation to pay fees in accordance with Rule 31(c) and the Minimum Standards cannot be in dispute if Respondents are estopped from denying that the DRA requires them to abide by those rules; once that argument is acknowledged as resolved there is no "dispute" left to delegate. Petitioners pled that the DRA requires Respondents to pay the fees at issue, but Respondents refuse, stymieing the arbitrations. Respondents are precluded as a matter of law from denying that the DRA requires them to pay those fees, and do not deny that they refuse to do so. Thus, there is no dispute to delegate to an arbitrator, and the Court can and must compel Respondents to abide by the legally undisputed terms of the DRA.

Similarly, once the Court finds Respondents precluded from relitigating the issues decided by Judge Maas, Respondents' complaints that Judge Maas's decision was wrong are irrelevant. Of course, Judge Maas's decision was entirely correct. But the point of issue preclusion is that the Court's view of the *correctness* of the prior decision simply is not in play once that Court has determined the prior decision has preclusive effect. This Court is not an appellate court tasked with reviewing Judge Maas's decision – whether for abuse of discretion, or clear error, or *de novo*. It is not the place for Respondents to mount a collateral attack on Judge Maas's findings and legal conclusions. And were that not the case – that is, were Judge Maas's ruling not preclusive and Petitioners forced to separately litigate the same questions in their own proceedings – the DRA's delegation clause would prevent the Court from opining on the issue.

The only question for the Court to decide, then, is whether the *Zhang* Award precludes Respondents from objecting to the relief sought here. If it does – and, as shown above, it does – the

Court's task is ministerial: it must grant the Petition and compel Respondents to arbitrate under the terms of the DRA, including by abiding by Rule 31(c) and the Minimum Standards.

## IV. CONCLUSION

For the reasons set forth herein, Petitioners respectfully request that the Court issue an Order compelling Respondents to arbitrate these matters consistent with the terms of the DRA, including compliance with Rule 31(c) and JAMS's Minimum Standards.

Respectfully submitted,

Dated: March 21, 2024
New Brunswick, New Jersey

KAMERMAN, UNCYK, SONIKER & KLEIN P.C.

By: */s/ Akiva M. Cohen*
Akiva M. Cohen
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
*Attorneys for Petitioners*

15