# EXHIBIT 1

MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel:     +1.415.442.1000
Fax:     +1.415.442.1001

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EMMANUEL CORNET, JUSTINE DE CAIRES, GRAE KINDEL, ALEXIS CAMACHO, AND JESSICA PAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 3:22-cv-06857-JD<br><br>**DECLARATION OF FIDELMA CALLAGHAN IN SUPPORT OF DEFENDANT TWITTER, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLASS CLAIMS** |

## DECLARATION OF FIDELMA CALLAGHAN

I, Fidelma Callaghan, do hereby state and declare as follows:

1.      I have worked at Twitter for almost two years.   Currently, I hold the title of Director of Global People Services.  I have held this position since March 2021.  Prior to that, I worked for another company in a similar capacity.

2.      As part of my job duties, I have personal knowledge of Twitter's current processes and practices, and its historical processes and practices dating back at least to September 2017, for onboarding new employees, including how Twitter presents applicants for U.S. positions with an offer letter and a Dispute Resolution Agreement, the process for applicants to review, sign, and submit documentation relating to their prospective employment, and Twitter's record-keeping systems related to the applicant's execution of the offer letter and Dispute Resolution Agreement and submission of a request, if any, to opt out of the Agreement, all of which Twitter maintains in the ordinary course of business.   My knowledge of Twitter's practices is based on information I have learned in the course of my work, including through my review of Twitter documents and my understanding of its systems.  If called to testify regarding the facts set forth in this declaration, I could and would testify competently thereto.

3.      Since at least September 2017, when Twitter offers a job to an applicant for a position in the United States, a member of Twitter's Global People Services team prepares an offer packet in Twitter's internal OWL system, which is Twitter's system for generating onboarding documents for new employees, including an offer letter and onboarding packet. When the offer is accepted, the new hire record—which includes the offer letter and onboarding packet—is then transferred to a different system called Workday where an employee file is created. The offer packet includes the applicant's offer letter and a Dispute Resolution

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

Agreement, among other things. Twitter sends the applicant's offer packet to the applicant using the email address that the applicant provided during the application process, or the employee's @twitter.com email address if the offer packet was generated during the conversion from an independent contractor position to a position as a full-time employee.

4.     An applicant's offer letter explains the steps the applicant needs to take to accept the offer, which includes signing the offer letter and the other documents in the offer packet, including the Dispute Resolution Agreement, and returning them to Twitter by a specific date on which the offer expires.

5.     Based on my experience and job responsibilities at Twitter, I am familiar with how applicants use the secure electronic signature system to electronically sign documents in the offer packet. By clicking on a link in an email that the applicant receives, the internet-based Adobe Sign program launches and prompts the applicant to sign the document, allowing the applicant the choice of typing, drawing, or taking a picture of their signature. The Adobe Sign program then presents the applicant with the complete offer packet in PDF format and allows the applicant to scroll up and down to review the materials on a computer screen. The program identifies the parts of the documents that require an applicant's signature or initials, and it allows the applicant to apply their electronic signature or initials by clicking on prompts that say "Click to Sign Here" in the parts of the documents with blanks indicating that a signature or initials are required. When the applicant has completed reviewing and signing the documents, the applicant is prompted to click a button, and then a message pops up that says "you're all set. You finished signing [document title] document. We will email the agreement to all parties. You can also download a copy of what you just signed." The screen also provides a hyperlink to the document for the employee to download.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

6.     Based on my experience and job responsibilities at Twitter, I am familiar with how Twitter receives and maintains executed offer packets from applicants.  After the applicant submits the executed documents through Adobe Sign, an automatic email notification is sent to People Services and the recruiter.  Also, the signed letter is automatically uploaded into Twitter's OWL system.   The Adobe Sign system also sends a copy of the signed offer packet to the applicant's email address.  The system has a "hire sync" feature that refreshes every thirty-minutes and uploads any new electronic signatures into OWL and identifies people who have accepted the offer and are ready to onboard.  The feature also triggers automatic creation of new Workday profiles as well.

7.     Each of the five Plaintiffs in this lawsuit electronically signed their offer packet documents, including their offer letter and a Dispute Resolution Agreement as follows:

a.  **<u>Grae Kindel</u>**.  I have reviewed the personnel records for Plaintiff Grae Kindel, which contains a signed offer letter and a Dispute Resolution Agreement bearing Kindel's signature and dated September 14, 2017.  Attached hereto as **Exhibit A** is a true and correct copy of Kindel's signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel records in the ordinary course of business.   I have also reviewed the OWL entries relating to Kindel's offer packet and the audit trail recorded to Adobe Sign when Kindel completed the offer packet.   Based on my review of those materials, on September 14, 2017, Twitter sent the offer packet to Kindel.  Kindel's offer packet included a Dispute Resolution Agreement.  On September 14, 2017, Kindel signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign.  A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Kindel's personal email address.

DECLARATION OF FIDELMA CALLAGHAN IN SUPPORT OF MOTION TO COMPEL ARBITRATION 3:22-CV-06857-JD

b. **Alexis Camacho**. I have reviewed the personnel records for Plaintiff Alexis Camacho, which contains an offer letter and a Dispute Resolution Agreement bearing Camacho's signature and dated June 12, 2018. Attached hereto as **Exhibit B** is a true and correct copy of Camacho's signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel file in the ordinary course of business. I have also reviewed the OWL entries relating to Camacho's offer packet and the audit trail recorded to Adobe Sign when Camacho completed the offer packet. Based on my review of those materials, on June 11, 2018, Twitter sent the offer packet to Camacho. Camacho's offer packet included a Dispute Resolution Agreement. On June 12, 2018, Camacho signed the documents enclosed in the offer packet, including the offer letter and Dispute Resolution Agreement, via Adobe Sign. A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Camacho's personal email address.

c. **Justine De Caires**. I have reviewed the personnel records for Plaintiff Justine de Caires, which contains an offer letter and a Dispute Resolution Agreement bearing De Caires signature and dated October 7, 2018. Attached hereto as **Exhibit C** is a true and correct copy of De Caires' signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel records in the ordinary course of business. I have also reviewed the OWL entries relating to De Caires' offer packet and the audit trail recorded to Adobe Sign when De Caires completed the offer packet. Based on my review of those materials, on October 4, 2018, Twitter sent the offer packet to De Caires. De Caires' offer packet included a Dispute Resolution Agreement. On October 7, 2018, De Caires signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign. A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to De

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

Caires' personal email address.

        d.   **Jessica Pan**.  I have reviewed the personnel records for Plaintiff Jessica Pan, which contains an offer letter and a Dispute Resolution Agreement bearing Pan's signature and dated November 18, 2019.  Attached hereto as **Exhibit D** is a true and correct copy of Pan's signed offer letter and Dispute Resolution Agreement, which are maintained in their personnel records in the ordinary course of business.  I have also reviewed the OWL entries relating to Pan's offer packet and the audit trail recorded to Adobe Sign when Pan completed the offer packet.  Based on my review of those materials, on November 18, 2019, Twitter sent the offer packet to Pan.  Pan's offer packet included a Dispute Resolution Agreement.  On November 18, 2019, Pan signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign.  A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Pan's personal email address.

        e.   **Emmanuel Cornet**.  I have reviewed the personnel records for Plaintiff Emmanuel Cornet, which contains an offer letter and a Dispute Resolution Agreement bearing Cornet's signature and dated April 23, 2021.  Attached hereto as **Exhibit E** is a true and correct copy of Cornet's signed offer letter and Dispute Resolution Agreement, which are maintained in his personnel records in the ordinary course of business.  I have also reviewed the OWL entries relating to Cornet's offer packet and the audit trail recorded to Adobe Sign when Cornet completed the offer packet.  Based on my review of those materials, on April 23, 2021, Twitter sent the offer packet to Cornet.  Cornet's offer packet included a Dispute Resolution Agreement.  On April 23, 2021, Cornet signed the documents enclosed in the offer packet, including the Dispute Resolution Agreement, via Adobe Sign.  A PDF copy of the signed offer packet, which included a signed copy of the Dispute Resolution Agreement, was sent to Cornet's personal email

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

address.

8.      Based on my experience and job responsibilities at Twitter, I know that if an employee submits a Dispute Resolution Agreement Opt Out Form, it would be retained in that employee's personnel records in the ordinary course of business.  I have reviewed each of the Plaintiffs' personnel files and confirmed that none of the Plaintiffs submitted a Dispute Resolution Agreement Opt Out Form to Twitter's Human Resources department within 30 days of receiving the Dispute Resolution Agreement (or at any time thereafter).  I have also confirmed that each of them remained employed at Twitter for more than 30 days after receiving the Dispute Resolution Agreement.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct.  Signed on November 21, 2022 in Dublin, Ireland.


_____

FIDELMA CALLAGHAN

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DECLARATION OF FIDELMA
CALLAGHAN IN SUPPORT OF MOTION
TO COMPEL ARBITRATION 3:22-CV-
06857-JD

EXHIBIT A

September 14, 2017

Greg Kindel
23 West Street #2
Medford, MA 02155
greg.kindel@gmail.com

Dear Greg,

Twitter, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1. **Position.** Your job title will be Sr. Software Engineer. You will report at the start of your employment to Bryan Bonczek, Manager, Software Engineering. You will be a regular, full-time employee.

2. **Start Date.** Your employment will commence on October 9, 2017. You will be providing services from the Company's Cambridge, MA location. (You may be required to travel as one part of your duties.)

3. **Cash Compensation**. The Company will pay you a gross starting salary at an annualized rate of ████████████████████████████, payable in accordance with the Company's standard payroll schedule. This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. **Performance Bonus Plan.** You may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. Currently, for the Performance Bonus Plan Year that extends from January 1, 2017 to December 31, 2017, you have been assigned a Performance Bonus Plan target of [10.00]% of your annual base salary, which will be paid pursuant to the terms and conditions in the Performance Bonus Plan.

5. **Employee Benefits.** As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.

6. ***Equity Compensation.*** Subject to the approval of the Company's Board of Directors, you will be granted Fifteen Thousand [15,000] restricted stock units ("RSUs") of the Company. The RSUs will be subject to the terms and conditions set forth in the Company's 2013 equity plan. You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your start date, provided you have been continuously employed by Twitter during that time, and the balance quarterly over the next three years of continuous service, as described in the equity plan. Please note that the terms of the Company's equity plans are reviewed periodically, and subject to revision at the Company's sole discretion.

7. ***Employee Invention Assignment and Confidentiality Agreement.*** You will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement"). A copy of the Confidentiality Agreement is enclosed with this letter.

8. ***Employment Relationship.*** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

9. ***Outside Activities.*** While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company. In addition, for a period of one (1) year after the termination of your services, you will not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.



10. **_Background Check._**  This offer is contingent on successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like.  This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

11. **_Verification of Employability._**  This offer is contingent upon your providing legal proof of your identity and authorization to work in the United States within three (3) days of the commencement of your employment.

12. **_Taxes._** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes.  Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

13. **_Dispute Resolution._**  We sincerely hope that no dispute will arise between us.  If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy.  A copy of the Dispute Resolution Policy is enclosed with this letter.

14. **_Entire Agreement_**.  This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer, including successful completion of the background check and, if applicable, acquisition of a visa, have been satisfied. Any questions regarding your satisfaction of these conditions should be directed to Sonny Yuen at sonnyyuen@twitter.com.

**By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.**



We hope that you will accept our offer to join the Company.  To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to Sonny.  This offer will expire if the signed documents are not returned to me by the end of the day on September 20, 2017.

*Very truly yours,*

**Twitter, Inc.**

*By*

Laura Brady, VP, Total Rewards

I have read, understood and accept all the provisions of this offer of employment:

*Greg Kindel*
Greg Kindel (Sep 14, 2017)

Greg Kindel

Sep 14, 2017

Date



# DISPUTE RESOLUTION AGREEMENT

> **This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

DISPUTE RESOLUTION AGREEMENT

**3. Selecting The Arbitrator**

The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

**4. Starting The Arbitration**

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

**5. How Arbitration Proceedings Are Conducted**

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly:**

**(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.**

**(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver"). The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.**

**(c) There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney**

DISPUTE RESOLUTION AGREEMENT

**general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.**

Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## DISPUTE RESOLUTION AGREEMENT

**9. Non-Retaliation**

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

**10. Enforcement Of This Agreement**

This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**AGREED:**

Laura Brady, VP, Total Rewards

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED    Greg Kindel

EMPLOYEE SIGNATURE    *Greg Kindel*
Greg Kindel (Sep 14, 2017)

Date:    Sep 14, 2017

EXHIBIT B

June 11, 2018

Alex Camacho
2691 79th Ave Oakland, CA 94605
acamacho@twitter.com

Dear Alex,

Twitter, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1. **Position.** Your job title will be Security Engineer I. You will report at the start of your employment to Joe Stevensen, Sr. Mgr., Security Engineering. You will be a regular, full-time employee.

2. **Start Date.** Your employment will commence on June 18, 2018. You will be providing services from the Company's San Francisco, CA location. (You may be required to travel as one part of your duties.)

3. **Cash Compensation**. The Company will pay you a gross starting salary at an annualized rate of ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, payable in accordance with the Company's standard payroll schedule. This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. **Performance Bonus Plan** . If your start date is on or before September 30th of the Performance Bonus Plan year, you may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. Currently, for the Performance Bonus Plan Year that extends from January 1, 2018 to December 31, 2018, you have been assigned a Performance Bonus Plan target of 10.00% of your annual base salary, which will be paid pursuant to the terms and conditions in the Performance Bonus Plan.

5. **Employee Benefits.** As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.

6. **Equity Compensation.** Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ("RSUs"). The number of RSUs that are granted to you, if approved, will be determined by dividing ████████████ ██████████████ by the prevailing RSU conversion rate in effect during the month in which your employment role commences under the terms of this offer letter. (Note: for the purposes of RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

   The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the "Equity Documents"). You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and the balance will vest over your next three years of continuous service with the Company, as will be further described in the equity documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs. Stock price are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

7. **Employee Invention Assignment and Confidentiality Agreement.** You will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement"). A copy of the Confidentiality Agreement is enclosed with this letter.

8. **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or



the Company may terminate your employment at any time and for any reason, with or without cause.  This is the full and complete agreement between you and the Company regarding the duration of the employment relationship.  Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

9.  ***Outside Activities.***  While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature.  While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company.  In addition, for a period of one (1) year after the termination of your services, you will not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.

10. ***Background Check.***  This offer is contingent on successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like.  This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

11. ***Acknowledgement re: Compensation.***  You acknowledge and agree that if during the recruiting process, to the extent you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting.  You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.

12. ***Verification of Employability.***  This offer is contingent upon your providing legal proof of your identity and authorization to work in the United States within three (3) days of the commencement of your employment.



13. **_Taxes._** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes. Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

14. **_Dispute Resolution._** We sincerely hope that no dispute will arise between us. If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy. A copy of the Dispute Resolution Policy is enclosed with this letter.

15. **_Entire Agreement_**. This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer, including successful completion of the background check and, if applicable, acquisition of a visa, have been satisfied. Any questions regarding your satisfaction of these conditions should be directed to Valerie VanderLinden at valeriewolf@twitter.com.

**By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.**

We hope that you will accept our offer to join the Company. To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to Valerie. This offer will expire if the signed documents are not returned to me by the end of the day on June 13, 2018.



*Very truly yours,*

**Twitter, Inc.**

*By*

Leslie Berland, Head of People

I have read, understood and accept all the provisions of this offer of employment:

Alex Camacho (Jun 12, 2018)

_____

Alex Camacho
Jun 12, 2018

_____

Date

# DISPUTE RESOLUTION AGREEMENT

> **This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your sole responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment and survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement.

Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims.

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

## DISPUTE RESOLUTION AGREEMENT

### 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

### 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

### 5. How Arbitration Proceedings Are Conducted

In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis. Accordingly:**

**(a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver").  The Class Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) a civil court of competent jurisdiction finds the Class Action Waiver is unenforceable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.**

**(b) There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ("Collective Action Waiver").  The Collective Action Waiver shall not be severable from this Agreement in any case in which (1) the dispute is filed as a collective action and (2) a civil court of competent jurisdiction finds the Collective Action Waiver is unenforceable. In such instances, the collective action must be litigated in a civil court of competent jurisdiction.**

**(c)  There will be no right or authority for any dispute to be brought, heard or arbitrated as a private attorney general representative action ("Private Attorney General Waiver"). The Private Attorney General Waiver shall be severable from this Agreement in any case in which a civil court of competent jurisdiction finds the Private Attorney General Waiver is unenforceable. In such instances and where the claim is brought as a private attorney**

DISPUTE RESOLUTION AGREEMENT

**general, such private attorney general claim must be litigated in a civil court of competent jurisdiction.**

Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

The Class Action Waiver, Collective Action Waiver and Private Attorney General Waiver shall be severable in any case in which the dispute is filed as an individual action and severance is necessary to ensure that the individual action proceeds in arbitration.

**6. Paying For The Arbitration**

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

**7. The Arbitration Hearing And Award**

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**8. An Employee's Right To Opt Out Of Arbitration**

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

# DISPUTE RESOLUTION AGREEMENT

**9. Non-Retaliation**

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

**10. Enforcement Of This Agreement**

This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

**AGREED:**

Leslie Berland, Head of People

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED    Alex Camacho

EMPLOYEE SIGNATURE    Alex Camacho (Jun 12, 2018)

Date:    Jun 12, 2018

# EXHIBIT C

October 04, 2018

Justine De Caires
836 Edinburgh St, San Francisco, CA 94112
justine@minerva.kgi.edu

Dear Justine,

Twitter, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1. **Position.**  Your job title will be Software Engineer I. You will report at the start of your employment to Chiao Dyi, Mgr., Software Engineering. You will be a regular, full-time employee.

2. **Start Date.**  Your employment will commence on June 10, 2019. You will be providing services from the Company's San Francisco, CA location.  (You may be required to travel as one part of your duties.)

3. **Cash Compensation**. The Company will pay you a gross starting salary at an annualized rate of ████████████████████████████, payable in accordance with the Company's standard payroll schedule.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

4. **Sign-on Bonus.**  Additionally, you are eligible to receive a sign-on bonus of ████ ████████████████, less applicable taxes, as a reward for joining and remaining with the Company ("Sign-On Bonus").  To earn the Sign-On Bonus, you must remain actively employed by the Company in good standing for twelve (12) months after your start date ("Anniversary Date").  If at any time before your Anniversary Date your employment ends for any reason, whether voluntary or involuntary, you acknowledge and agree that you are obligated to repay a pro-rata portion of the Sign-On Bonus upon Twitter's request.  You will be paid the Sign-On Bonus in a lump sum at the time of your first payroll date, subject to repayment as described in this paragraph.

5. ***Performance Bonus Plan .*** Performance Bonus Plan. You are eligible to earn a discretionary performance bonus award in accordance with the Company's Global Discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. If your start date is on or before September 30, 2019, you are eligible to participate in the 2019 Global Discretionary Performance Bonus Plan. Currently, for the 2019 Performance Bonus Plan year, the Performance Bonus Plan target for your position is 10.00% of annual Base Salary, paid pursuant to the terms and conditions in the applicable Performance Bonus Plan.

6. ***Employee Benefits.*** As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.

7. ***Equity Compensation.*** Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ("RSUs"). The number of RSUs that are granted to you, if approved, will be determined by dividing ███████████ ██████████████████████████ by the prevailing RSU conversion rate in effect during the month in which your employment role commences under the terms of this offer letter. (Note: for the purposes of RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the "Equity Documents"). You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and the balance will vest over your next three years of continuous service with the Company, as will be further described in the equity documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs.



Stock price are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

8. **Employee Invention Assignment and Confidentiality Agreement.** You will be required, as a condition of your employment with the Company, to sign the Company's standard Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement"). A copy of the Confidentiality Agreement is enclosed with this letter.

9. **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

10. **Outside Activities.** While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company. In addition, for a period of one (1) year after the termination of your services, you will not solicit either directly or indirectly, any employee of the Company to leave the Company for other employment or assist any person or entity in doing the same.

11. **Acknowledgement re: Compensation.** You acknowledge and agree that if during the recruiting process, to the extent you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting. You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.



12. **_Verification of Employability._**  This offer is contingent upon your providing legal proof of your identity and authorization to work in the United States within three (3) days of the commencement of your employment.

13. **_Taxes._** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes.  Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

14. **_Dispute Resolution._**  We sincerely hope that no dispute will arise between us.  If a dispute should arise, it can be resolved through the Company's Dispute Resolution Policy.  A copy of the Dispute Resolution Policy is enclosed with this letter.

15. **_Entire Agreement_**.  This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer, including successful completion of the background check and, if applicable, acquisition of a visa, have been satisfied. Any questions regarding your satisfaction of these conditions should be directed to Fariha Naveed at fnaveed@twitter.com.

**By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.**

We hope that you will accept our offer to join the Company.  To indicate your acceptance of this offer, please initiate the authorization of your background check, and sign and date the enclosed duplicate original of this letter agreement, the enclosed Confidentiality Agreement, and the enclosed Dispute Resolution Policy and return them to Fariha.  This offer will expire if the signed documents are not returned to me by the end of the day on October 08, 2018.



*Very truly yours,*

**Twitter, Inc.**

*By*

Leslie Berland, Head of People

I have read, understood and accept all the provisions of this offer of employment:

Justine De Caires (Oct 7, 2018)

_____

Justine De Caires

Oct 7, 2018

_____

Date



# DISPUTE RESOLUTION AGREEMENT

> **This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.

## DISPUTE RESOLUTION AGREEMENT

### 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee.  Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/.  Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

### 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

### 5. How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.** Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

DISPUTE RESOLUTION AGREEMENT

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hr@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## 9. Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10. Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of

DISPUTE RESOLUTION AGREEMENT

Employee's employment with the Company.

**AGREED:**

Leslie Berland, Head of People

TWITTER, INC.

**AGREED:**

EMPLOYEE NAME PRINTED     Justine De Caires

EMPLOYEE SIGNATURE     Justine De Caires (Oct 7, 2018)

Date:     Oct 7, 2018

EXHIBIT D

November 18, 2019

Jessica Pan
1400 Carpentier St. Apt 402 San Leandro, CA 94577
jessica.sj.pan@gmail.com

Dear Jessica,

Welcome to the Flock!  We're excited to offer you employment with Twitter, Inc. (the '**Company**'), on the following terms and conditions:

1. *Start Date.*  Your employment will commence on December 09, 2019 ('**Start Date**'). You will be providing services from the Company's San Francisco, CA location. Your Start Date and employment are subject to the conditions set out below, in the **Conditions on Offer** section.

2. *Position.*  Your job title will be Sr. Software Engineer. You will report at the start of your employment to Chiao-Yen Dyi, Mgr., Software Engineering.  You will be a regular, full-time employee.

3. *Duties.* You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as the Company may otherwise assign to you.  Depending on the nature of your role, the Company may require you to travel from time to time.  Without limiting your obligations to the Company, during your employment you must serve the Company faithfully and diligently to the best of your ability and perform the duties the Company assigns to you to the best of your abilities and knowledge.

4. *Hours.*  Your normal hours of work are 40 hours each week, excluding a lunch break, to be worked primarily during the standard business hours Monday to Friday. The Company requires flexibility in your working hours, and you may be required or need to work additional hours as necessary for the performance of your role. These additional hours can include hours outside normal business hours, or on weekends and public holidays.

5. *Base Compensation.*  The Company will pay you a gross starting salary at an annualized rate of ▉▉▉▉▉ USD, payable in accordance with the Company's standard payroll schedule, less applicable deductions.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

6. *Performance Bonus Plan.* You may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. For the current Performance Bonus Plan year, the Performance Bonus Plan target for your position is 20% of annual eligible earnings, paid pursuant to the terms and conditions in the Performance Bonus Plan.

7. **Equity Compensation.** Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ('**RSUs**'). The number of RSUs that are granted to you, if approved, will be determined by dividing ███████ USD by the prevailing RSU conversion rate in effect during the month in which your employment role commences under the terms of this offer letter. (Note: for the purposes of the RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the '**Equity Documents**'). You will vest in 25% of the RSUs on the first year anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and over your next three years of continuous service with the Company you will vest 6.25% per quarter, as will be further described in the Equity Documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs. Stock price are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

8. **Employee Benefits.** As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans. The Company may replace, change or cease providing these benefits and remuneration and the terms on which they are provided at any time at its discretion.

9. **Conditions on this Offer.** This offer of employment and your commencement of employment with the Company is conditioned upon:

a) Your providing legal proof of your identity and authorization to work in the United States within three days of the commencement of your employment.

b) Your signing of the Company's standard Employee Invention Assignment and Confidentiality Agreement ('**Confidentiality Agreement**'), which includes restrictions on your ability to engage in outside activities, and other restrictions during and following your employment, as described in the Confidentiality Agreement, and the Company's approval of such outside activities. A copy of the Confidentiality Agreement is enclosed with this letter.

c) Your disclosure, and resolution to the satisfaction of the Company, of any contractual commitments or legal obligations that would prohibit, restrict or interfere with your ability to perform your duties for the Company.

d) Your successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like. This offer may be withdrawn in the sole

discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

10. **Acknowledgement re: Compensation.** You acknowledge and agree that if during the recruiting process you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting. You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.

11. **Taxes.** All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes. Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

12. **Outside Activities.** While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company.

13. **Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

14. **Dispute Resolution.** We sincerely hope that no dispute will arise between us. If a dispute should arise, it will be resolved through the Company's Dispute Resolution Agreement, unless you choose to opt-out of the same pursuant to its terms. A copy of the Dispute Resolution Agreement is enclosed with this letter.

15. **Entire Agreement**. This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer have been satisfied. To accept this offer, please initiate the authorization of your background check, and sign and date this offer letter, and the other documents enclosed with this letter (including the Confidentiality Agreement and Dispute Resolution Agreement) and return them via Adobesign. This offer will expire if the signed documents are not returned by November 20, 2019.

We're excited to welcome you to Twitter!

Sincerely,

**Twitter, Inc.**

By _____

      Leslie Berland

      Head of People

By signing below, I acknowledge and agree that I have read, understood and accept all the provisions of this offer of employment:

*Jessica Pan*
Jessica Pan (Nov 18, 2019)
_____

      Jessica Pan

Nov 18, 2019
_____

      Date

# DISPUTE RESOLUTION AGREEMENT

> **This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.**
>
> **You can choose to opt out of this Agreement – you have 30 days to opt out.**

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides or required by law, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov) the U.S. Department of Labor (www.dol.gov) the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.





## 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/. Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

## 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

## 5. How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis.** Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.



## 7. The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8. An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hrlegaldocs@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## 9. Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10. Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of Employee's employment with the Company.

**AGREED:**

Leslie Berland, Head of People
TWITTER, INC.

**By signing below, I acknowledge and agree to the terms of this Dispute Resolution Agreement, and confirm I am aware of my right to opt out per the terms of this Agreement:**

EMPLOYEE NAME PRINTED      Jessica Pan

EMPLOYEE SIGNATURE         *Jessica Pan*
                           Jessica Pan (Nov 18, 2019)

Date:                      Nov 18, 2019





# EXHIBIT E

April 23, 2021

Emmanuel Cornet
2415 Van Ness Ave Apt 601, San Francisco, CA 94109
m@ma.nu

Dear Emmanuel,

Welcome to the Flock!  We're excited to offer you employment with Twitter, Inc. (the '**Company**'), on the following terms and conditions:

1. *Start Date.*  Your employment will commence on June 29, 2021 ('**Start Date**'). You will be providing services from the Company's US - Remote US location. Your Start Date and employment are subject to the conditions set out below, in the **Conditions on Offer** section.

2. *Position.*  Your job title will be Staff Software Engineer. You will report at the start of your employment to Bill Couch, Mgr., Software Engineering. You will be a regular, full-time employee.

3. *Duties.* You will perform the duties and have the responsibilities and authority customarily performed and held by an employee in your position or as the Company may otherwise assign to you.  Depending on the nature of your role, the Company may require you to travel from time to time.  Without limiting your obligations to the Company, during your employment you must serve the Company faithfully and diligently to the best of your ability and perform the duties the Company assigns to you to the best of your abilities and knowledge.

4. *Hours.*  Your normal hours of work are 40 hours each week, excluding a lunch break, to be worked primarily during the standard business hours Monday to Friday. The Company requires flexibility in your working hours, and you may be required or need to work additional hours as necessary for the performance of your role. These additional hours can include hours outside normal business hours, or on weekends and public holidays.

5. *Base Compensation.*  The Company will pay you a gross starting salary at an annualized rate of ███████ USD, payable in accordance with the Company's standard payroll schedule, less applicable deductions.  This salary will be subject to adjustment from time to time in accordance with the employee compensation policies then in effect. This is an exempt position, and your salary is intended to cover all hours worked.

6. *Sign-On Bonus.*  You are eligible to receive a one-time sign-on bonus in the gross amount of ██████ USD, less applicable deductions required or authorized to be deducted by the Company, as a reward for joining and remaining with the Company ('**Sign-On Bonus**'). To earn the Sign-On Bonus, you must remain actively employed by the Company in good standing for 12 months after your Start Date.  If you resign from your employment or your employment is terminated by the Company at any time within 12 months of your Start Date, you acknowledge and agree that, upon the Company's request, you are obligated to repay the Sign-On Bonus, reduced on a pro-rata basis by one-twelfth (1/12) of the Sign-On Bonus for each full month you remain employed by the Company. You will be paid the Sign-On Bonus in a lump sum at the time of your first payroll date, subject to repayment as described in this paragraph.

7. *Performance Bonus Plan.* You may be eligible to earn a discretionary performance bonus award in accordance with the Company's discretionary Performance Bonus Plan as it may exist and/or be amended from time to time. For the current Performance Bonus Plan year, the Performance Bonus Plan target for your position is 25% of annual eligible earnings, paid pursuant to the terms and conditions in the Performance Bonus Plan.

8. *Equity Compensation.* Subject to the approval of the Compensation Committee of the Company's Board of Directors (or an authorized subcommittee), you will be granted a specified number of restricted stock units of the Company ('**RSUs**'). The number of RSUs that are granted to you, if approved, will be determined by dividing ████████ USD by the prevailing RSU conversion rate in effect during the month in which your employment role commences

under the terms of this offer letter, rounded up to the nearest whole share. (Note: for the purposes of the RSU grant under this paragraph, your employment commencement date is anticipated to be your Start Date as set out above, unless delayed or deferred for any reason. In the event you have been previously engaged by the Company in any capacity under a different role or arrangement, such prior service will <u>not</u> count for the purposes of your RSU grant).

The RSUs will be subject to the terms of the Company's 2013 Equity Incentive Plan and its form of RSU agreement (the '**Equity Documents**'). You will vest in 12.5% of the RSUs on the six month anniversary of the first day of the month following your Start Date, provided you have continued to provide services to the Company until that date, and over your next three and a half years of continuous service with the Company you will vest 6.25% per quarter, as will be further described in the Equity Documents. Be advised that the calculation used to determine the number of RSUs granted is determined in the sole discretion of the Company and will not correlate to any published stock price on your date of hire and, furthermore, does not denote, nor can it predict, the future value of any RSUs. Stock prices are by nature volatile, and there is no way to predict the value of your future shares, if and when they vest.

Subject to your continued employment in an equity eligible role, you will be eligible to receive future equity grants.

9.   *Employee Benefits*.  As a regular employee of the Company, you will be eligible to participate in Company-sponsored benefits in accordance with the terms of the applicable benefit plans.  The Company may replace, change or cease providing these benefits and remuneration and the terms on which they are provided at any time at its discretion.

10.   *Conditions on this Offer*.  This offer of employment and your commencement of employment with the Company is conditioned upon:

a)   Your providing legal proof of your identity and authorization to work in the United States within three days of the commencement of your employment.

b)   Your signing of the Company's standard Employee Invention Assignment and Confidentiality Agreement ('**Confidentiality Agreement**'), which includes restrictions on your ability to engage in outside activities, and other restrictions during and following your employment, as described in the Confidentiality Agreement, and the Company's approval of such outside activities.  A copy of the Confidentiality Agreement is enclosed with this letter.

c)   Your disclosure, and resolution to the satisfaction of the Company, of any contractual commitments or legal obligations that would prohibit, restrict or interfere with your ability to perform your duties for the Company.

d)   Your successful completion of a background check regarding your employment experience, educational credentials, criminal history and the like.  This offer may be withdrawn in the sole discretion of the Company based on its review of the background check results. Your acceptance of this offer of employment will be complete when you have initiated authorization to perform a background check, as instructed by our Human Resources Department.

11.   *Acknowledgement re: Compensation*.  You acknowledge and agree that if during the recruiting process you disclosed your current or past salary to Twitter, such disclosure was made voluntarily and without prompting.  You further acknowledge and agree that Twitter may consider and verify any such compensation information you've disclosed, including disclosure of compensation that you would forfeit by leaving your current employment.

12.   *Taxes*. All forms of compensation that are subject to income or payroll taxes will be reduced to reflect applicable income tax withholding and payroll taxes.  Any form of compensation that is subject to income or payroll taxes and that is not paid in cash will result in a reduction in cash compensation to reflect applicable income tax withholding and payroll taxes.

13.   *Outside Activities*.  While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes

engaging in any work that is competitive in nature. While you render services to the Company, you also will not assist any person or entity in competing with the Company, in preparing to compete with the Company, or in hiring any employees or consultants of the Company.

14. *Employment Relationship.* Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. This is the full and complete agreement between you and the Company regarding the duration of the employment relationship. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment, may only be changed through an express written agreement signed by you and the Company's Chief Executive Officer.

15. *Dispute Resolution.* We sincerely hope that no dispute will arise between us. If a dispute should arise, it will be resolved through the Company's Dispute Resolution Agreement, unless you choose to opt-out of the same pursuant to its terms. A copy of the Dispute Resolution Agreement is enclosed with this letter.

16. *Entire Agreement.* This letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company.

Please do not make any change in your present living or employment circumstances until all of the conditions to this offer have been satisfied. To accept this offer, please initiate the authorization of your background check, and sign and date this offer letter, and the other documents enclosed with this letter (including the Confidentiality Agreement and Dispute Resolution Agreement) and return them via Adobesign. This offer will expire if the signed documents are not returned by April 26, 2021, unless otherwise extended by the Company.

We're excited to welcome you to Twitter!

Sincerely,

**Twitter, Inc.**

Jennifer Christie
Chief Human Resources Officer

By signing below, I acknowledge and agree that I have read, understood and accept all the provisions of this offer of employment:

*Emmanuel Cornet*
Emmanuel Cornet (Apr 23, 2021 21:49 GMT)

 Emmanuel Cornet

Apr 23, 2021

Date

# DISPUTE RESOLUTION AGREEMENT

This Dispute Resolution Agreement is a contract and covers important issues relating to your rights. It is your responsibility to read it and understand it. You are free to seek assistance from independent advisors of your choice outside the Company or to refrain from doing so if that is your choice.

You can choose to opt out of this Agreement – you have 30 days to opt out.

## 1. How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. If the FAA is found not to apply, then this Agreement is enforceable under the laws of the state in which you ("Employee") are employed at the time you enter into this Agreement. This Agreement applies to any dispute arising out of or related to Employee's employment with Twitter, Inc. or one of its affiliates, successor, subsidiaries or parent companies ("Company") or termination of employment, and survives after the employment relationship terminates. It can only be revoked or modified by a writing, signed by both you and Twitter, Inc.'s Chief Executive Officer, which specifically states an intent to revoke or modify this Agreement. Nothing contained in this Agreement shall be construed to prevent or excuse Employee or the Company from using the Company's existing internal procedures for resolution of complaints.

Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement. Except as it otherwise provides or required by law, this Agreement also applies, without limitation, to disputes regarding the employment relationship, terms and conditions of employment, trade secrets, unfair competition, compensation, breaks and rest periods, termination, discrimination, harassment, or retaliation, and claims arising under the Uniform Trade Secrets Act, Title VII of the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, all other state statutory and common law claims, and any other employment-related claim.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Agreement requires all covered disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **By entering into this Agreement, the parties are waiving a trial by jury.**

## 2. Limitations On How This Agreement Applies

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

Regardless of any other terms of this Agreement, claims may be brought before and remedies awarded by an administrative agency if applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include, without limitation, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov) the U.S. Department of Labor (www.dol.gov) the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to predispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement.



*EC*
EC

1

## 3. Selecting The Arbitrator

The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the state in which the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted. If, however, the parties fail to agree on an arbitrator within 30 days after the initiation of arbitration, or at the request of either party, the dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ("JAMS Rules"). The JAMS Rules may be accessed at: https://www.jamsadr.com/rules-employment-arbitration/. Alternatively, an Employee may obtain a copy of the JAMS Rules from Human Resources. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee reported to work for the Company, unless each party to the arbitration agrees in writing otherwise.

## 4. Starting The Arbitration

All claims in arbitration are subject to the same statutes of limitation that would apply in court. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. Any demand for arbitration made to the Company shall be provided to the attention of the Company's Legal Department, Twitter, Inc., 1355 Market Street, Suite 900, San Francisco, CA 94103. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.

## 5. How Arbitration Proceedings Are Conducted

Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. Discovery and conduct of the arbitration hearing shall be governed by the JAMS Rules applicable to discovery and arbitration hearing procedures.

**You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis**. Employee and the Company agree that any arbitration will be limited to the claims between Employee and the Company individually. Employee acknowledges and agrees that Employee and the Company are each waiving the right to participate as a plaintiff or class member in any purported class action, collective action or representative action proceeding ("Class Action Waiver"). This Class Action Waiver shall not apply to California Private Attorney General Act claims brought against the Company to the extent a Class Action Waiver is not legally enforceable as to those claims. Notwithstanding any other provision of this Agreement or the JAMS Rules, disputes regarding the scope, applicability, enforceability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which: (1) the claim is filed as a class, collective, or representative action and (2) there is a final judicial determination that the Class Action Waiver is unenforceable as to any claims, the class, collective, and/or representative action on such claims must be litigated in a civil court of competent jurisdiction, but the Class Action Waiver shall be enforced in arbitration on an individual basis as to all other claims to the fullest extent possible and the claims to be litigated in court shall be stayed pending the completion of the arbitration on the arbitrable claims.

## 6. Paying For The Arbitration

Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.



*EC*
EC

## 7.  The Arbitration Hearing And Award

The parties will arbitrate their dispute before the Arbitrator, who shall confer with the parties regarding the conduct of the hearing and resolve any disputes the parties may have in that regard. The Arbitrator shall apply substantive law as applicable to the claims, and may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator; no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. Unless otherwise agreed by the parties in writing, the Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law, within 30 days after the date of closing of the arbitration hearing or the completion of post-hearing briefing, whichever is later. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

## 8.  An Employee's Right To Opt Out Of Arbitration

**Arbitration is not a mandatory condition of Employee's employment at the Company, and therefore an Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Agreement.** The Employee must submit a signed and dated statement on a "Dispute Resolution Agreement Opt Out Form" ("Form") that can be obtained from the Company's Human Resources Department at hrlegaldocs@twitter.com. In order to be effective, the signed and dated Form must be returned to the Human Resources Department within 30 days of the Employee's receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

## 9.  Non-Retaliation

An employee will not be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

## 10.  Enforcement Of This Agreement

This Agreement is the full and complete agreement relating to the formal resolution of covered disputes. Except as stated in paragraph 5, above, in the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration. Nothing in this Agreement modifies the at-will nature of Employee's employment with the Company.

**AGREED:**

Leslie Berland, Head of People
TWITTER, INC.

**By signing below, I acknowledge and agree to the terms of this Dispute Resolution Agreement, and confirm I am aware of my right to opt out per the terms of this Agreement:**

EMPLOYEE NAME PRINTED      Emmanuel Cornet

EMPLOYEE SIGNATURE      *Emmanuel Cornet*
Emmanuel Cornet (Apr 23, 2021 21:49 GMT)

Date:      Apr 23, 2021





EC