# EXHIBIT 1

CAUSE NO. 1601002342

| | |
|---|---|
| YUNFENG ZHANG,<br><br>CLAIMANT,<br><br>V.<br><br>TWITTER, INC., X HOLDINGS I, INC., AND ELON MUSK,<br><br>RESPONDENTS. | JAMS<br><br>MOTION FOR AN INTERIM AWARD DECLARING THAT THE PARTIES' DISPUTE RESOLUTION AGREEMENT REQUIRES RESPONDENTS TO PAY ALL COSTS UNIQUE TO ARBITRATION |

---

**CLAIMANT YUNFENG ZHANG'S MOTION FOR AN INTERIM AWARD DECLARING THAT THE PARTIES' DISPUTE RESOLUTION AGREEMENT REQUIRES RESPONDENTS TO PAY ALL COSTS UNIQUE TO ARBITRATION**

---

KAMERMAN, UNCYK, SONIKER & KLEIN P.C.
Akiva M. Cohen, Esq.
Attorneys for Plaintiffs
1700 Broadway, 16th Floor
New York, New York 10019
(212) 400-4930
acohen@kusklaw.com
Dylan M. Schmeyer
dmschmeyer@kusklaw.com
Michael D. Dunford
mdunford@kusklaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ...............................................................................................................1

RELEVANT FACTS ...........................................................................................................3

ARGUMENT .......................................................................................................................4

     I.   The DRA Obligates Respondents to Comply with the Minimum Standards ....................4

        A.  Applicable California law requires Respondents to pay the entire cost of
            the arbitration ...........................................................................................................5

        B.  Generally applicable contract law requires Respondents to pay the entire cost
            of the arbitration ......................................................................................................6

     II.  Even if None of That Were True, Respondents Waived Section 6 of the DRA
        and Any Objection to the Minimum Standards, and Agreed to Abide by the
        Minimum Standards ...............................................................................................10

     III. Twitter's Defenses Are Meritless ........................................................................11

CONCLUSION .................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*544 Bloomrest, LLC v. Harding*, 202 A.D.3d 499, 501 N.Y.S.3d 53 (2022)................................18

*A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 335 (S.D.N.Y. 2013) ..................................11

*All Metro Aids, Inc. v. Homeward Bound Servs., Inc.*, 15 Misc. 3d 1121(A), 839 N.Y.S.2d 431
    (Sup. Ct., Nassau County, 2007) ..........................................................................................14

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)..............................5, 8

*Bank of Tokyo-Mitsubishi, Ltd., New York Branch v. Kvaerner a.s.*, 243 A.D.2d 1, 671 N.Y.S.2d 905
    (1998) ......................................................................................................................................14

*BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674 (2d Cir. 1997) ...........................................2

*Bynum v. Maplebear Inc.*, No. 15-CV-6263, 2016 WL 5373643 (E.D.N.Y. Sept. 19, 2016)....................14

*Certain Underwriters at Lloyd's v. Expeditors Int'l of Washington, Inc.*, 584 F. Supp. 3d 860
    (C.D. Cal. 2022) ....................................................................................................................16

*Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*, No. 14 CIV. 8727 NRB,
    2015 WL 4486335 (S.D.N.Y. July 23, 2015) ..........................................................................7

*Dunkin v. Boskey*, 82 Cal. App. 4th 171, 98 Cal. Rptr. 2d 44 (2000) ..............................................8

*Elliott v. Nestle Waters N. Am. Inc.*, No. 13 CIV. 6331 RA, 2015 WL 1611333
    (S.D.N.Y. Apr. 10, 2015)........................................................................................................17

*Empire Asset Mgmt. Co. v. Best*, No. 21-CV-4542 (PAC), 2021 WL 2650457
    (S.D.N.Y. June 28, 2021), *aff'd*, No. 21-1798-CV, 2022 WL 893402 (2d Cir. Mar. 28, 2022)............6

*Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373 (Cal. Ct. App., 2d Dist., 2016)........................7

*In re Barney Mac, LLC*, No. 04-17768 AJG, 2006 WL 2864974 (Bankr. S.D.N.Y. Oct. 3, 2006)...........9

*In re Live Primary, LLC*, 626 B.R. 171 (Bankr. S.D.N.Y. 2021)..................................................11

*In re Lois/USA, Inc.*, 264 B.R. 69 (Bankr. S.D.N.Y. 2001) ..........................................................14

*Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564 (S.D.N.Y. 2013)..........................................16

*Jimenez v. Monadnock Const., Inc.*, 109 A.D.3d 514, 970 N.Y.S.2d 577 (2013) ...............................17

*Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021) ........................................................15

*Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 96 N.E.3d 784 (2018)....................................8

*Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 63 P.3d 979 (2003)................................................16

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ..............................................6

*Medtronic, Inc. v. Walland*, No. 21 CIV. 2908 (ER), 2021 WL 4131657 (S.D.N.Y. Sept. 10, 2021) .......17

*Mills v. Facility Sols. Grp., Inc.*, 84 Cal. App. 5th 1035, 300 Cal. Rptr. 3d 833 (2022)..............................16

*Oakland-Alameda Cnty. Coliseum Auth. v. Golden State Warriors, LLC*, 53 Cal. App. 5th 807, 267 Cal. Rptr. 3d 799 (2020) ........................................................................................9

*Oce Bus. Servs., Inc. v. Christensen*, No. 116720/04, 2005 WL 1712143 (Sup. Ct., N.Y. County, 2005)....5

*Old Colony Tr. Co. v. City of Omaha*, 230 U.S. 100 (1913) .............................................10

*Pac. Emps. Ins. Co. v. Indus. Accident Comm'n of State of California*, 306 U.S. 493 (1939) ...........16

*Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522, 644 N.E.2d 1001 (1994).......................15

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996) ...............................................6

*Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 207 Cal. Rptr. 3d 473 (2016) ........................16

*Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365, 290 Cal. Rptr. 3d 429 (2022) ...............8

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)........................................11

*Sateriale v. RJ Reynolds Tobacco Co.*, No. 2:09-CV-08394-CAS, 2014 WL 7338881 (C.D. Cal. Dec. 19, 2014) ........................................................................................7

*SG Cowen Sec. Corp. v. Messih*, No. 00CIV.3228(HB), 2000 WL 633434 (S.D.N.Y. May 17, 2000), *aff'd*, 224 F.3d 79 (2d Cir. 2000) .....................................................................17

*Sims v. Worldpac Inc.*, No. C 12-05275 JSW, 2013 WL 663277 (N.D. Cal. Feb. 22, 2013) ............... 5, 15

*Tsatsani v. Walmart, Inc.*, No. 19CV9063PAEBCM, 2020 WL 6688939 (S.D.N.Y. Oct. 26, 2020), *report and recommendation adopted*, No. 19CIV9063PAEBCM, 2020 WL 6701019 (S.D.N.Y. Nov. 13, 2020).........................................................................15

*United States v. Hamdi*, 432 F.3d 115 (2d Cir. 2005) .................................................7

*Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411 (E.D.N.Y. 2013) ...................................15

**Statutes**

28 U.S.C. § 2201................................................................................16

9 U.S.C. § 4 ....................................................................................17

N.Y. C.P.L.R. § 7513 ........................................................................ 13, 21

**Rules**

JAMS Rule 2 ....................................................................................13

**Treatises**

11 *Williston on Contracts* § 32:11 (4th ed.)..........................................................11

## INTRODUCTION

Since Respondent X Holdings Corp. f/k/a X Holdings I, Inc. ("X Holdings") purchased

Respondent X Corp. f/k/a Twitter, Inc. ("Twitter"), Twitter has adopted a policy of refusing to

timely pay bills it knows are due and owing, on the theory that it would save money by forcing its

creditors to sue to enforce Twitter's debts.[1] And Respondents had already expressly imported that

disregard for their payment obligations to the arbitrations filed against them; though Twitter's

arbitration agreement (the "DRA") required Respondents to arbitrate under JAMS' rules and JAMS

provides that invoices are due on receipt, Respondents unilaterally decided that it would be

"reasonable" to delay payment (and therefore the progress of the arbitrations) by 30 days after each

---

[1] *See, e.g.*, *Imply Data, Inc. v. Twitter, Inc. et al*, No. CGC 22 603473 (Cal. Super. Ct., Dec. 13, 2022) (breach of contract for non-payment of more than three million dollars in invoices for work performed); *Columbia REIT - 650 California, LLC, v. Twitter, Inc., et al.*, No. CGC 22 603719 (Cal. Super Ct., Dec. 29, 2022) (breach of contract for non-payment of rent); *Canary, LLC v. Twitter, Inc. et al.*, No. CGC 23 603842 (Cal. Super. Ct., Jan. 6, 2023) (breach of contract for non-payment of invoices owed for marketing work); *Mediant Communications Inc. v. Twitter, Inc*, No. 650092/2023 (Sup. Ct., N.Y. Cnty., January 10, 2023) (breach of contract for non-payment of invoices owed); *The Crown Estate Commissioners v. Twitter UK Ltd & anor*, No. PT-2023-000043 (UK High Court, Jan. 19, 2023); *CRA Intl. Inc. Twitter Inc.*, No. 2384CV00142 (Mass. Super. Ct., Suffolk Cnty., January 19, 2023) (breach of contract for non-payment of more than two million dollars in invoices for expert consulting); *SRI Nine Market Square LLC, v. Twitter, Inc., et al.*, No. CGC 23 604136 (Cal. Super. Ct., Jan. 20, 2023) (breach of contract for non-payment of rent); *Leaphly LLC v. Twitter Inc.*, No. 23-A-00690-2 (Geo. Super. Ct., Jan. 24, 2023); *Innisfree M&A Inc v. Twitter, Inc.*, No. 650686/2023 (Sup. Ct., N.Y. Cnty., Feb. 3, 2023) (breach of contract for non-payment of nearly two million dollars in unpaid consulting fees); *Jamestown Ponce City Market, L.P. v. Twitter, Inc.*, No. 23DD000299 (Geo. Super. Ct., Feb. 9, 2023); *Analysis Group, Inc. v. Twitter Inc.*, No. 1:23-cv-10312 (D. Mass, Feb. 9, 2023) (breach of contract for non-payment of more than two million dollars in expert consulting fees); *Blueprint Studios Trends Inc., v. Twitter, Inc., et al.*, No. CGC 23 604709 (Cal. Super. Ct., Feb. 17, 2023); *Writer, Inc. v. Twitter, Inc., et al.*, No. CGC 23 604735 (Cal. Super. Ct., Feb. 21, 2023); *SHIGO Center Plaza Owner LLC vs. Twitter Inc.*, No. 2384CV00461 (Mass. Super. Ct., Suffolk Cnty., Feb. 22, 2023); *Nube Group LLC v. Twitter, Inc.*, No. 3:23-cv-00921 (N.D. Cal., Mar. 1, 2023) (breach of contract for non-payment of invoices); *Private Jet Services Group, LLC v. Twitter, Inc.* No. 1:23-cv-00210 (D.N.H, Mar. 27 2023) (breach of contract for non-payment of invoices for private jet services); *Melior Productions Inc. v. Twitter, Inc. et al.*, No. CGC 23 605464 (Cal. Super. Ct., Mar. 28, 2023); *KRE 1330 Broadway Owner LLC v. Twitter, Inc.* No. 23CV030513 (Cal. Super. Ct., Apr. 4, 2023); *White Coat Captioning, LLC et al. v. Twitter, Inc.*, No. 3:23-cv-01594 (N.D. Cal., Apr. 4, 2023) (multiplaintiff breach of contract); *Global Data Strategy Ltd v. Twitter Inc.*, No. 3:23-cv-02266 (N.D. Cal., May 10, 2023) (breach of contract for unpaid business consulting fees); *JF Associates LLC v. X. Corp*, No. 652564/2023 (Sup. Ct., N.Y. Cnty, May 26, 2023) (breach of contract for unpaid public relations consulting fees); *Gjoni v. Twitter, Inc.*, No. 1:23-cv-04465 (S.D.N.Y., May 30, 2023) (violations of NYC Admin Code § 22-505, the New York City Displaced Building Service Workers Protection Act); *Facilitate Corporation Pte Ltd v. Twitter, Inc.*, No. 4:23-cv-03242 (N.D. Cal., Jun. 29, 2023) (breach of contract for unpaid construction and facilities invoices); *Point B, Inc. v. Twitter, Inc.*, No. 3:23-cv-02934 (N.D. Cal., Jun 14, 2023) (breach of contract for unpaid business consulting fees); *see also* Amended Complaint in *Arnold et al. v. X Corp et al*, No. 3:23-cv-00528 (D. Del., Jun. 16 2023), D.I. 10, at ¶¶ 6 ("Elon told me he would only pay rent over his dead body"), 206-07 ("well, we just won't pay those. We just won't pay landlords" and "We just won't pay rent"), 244 (Musk directed Twitter not to pay the janitorial staff for work already completed), 246 (Transition Team member informing Twitter employee that Musk had decided Twitter would no longer be paying rent globally).

invoice, and so Respondents did, contrary obligations notwithstanding. Declaration of Akiva M. Cohen ("Cohen Dec"), Ex. 1.

Not content to merely continue to delay payments, Respondents are now applying that disregard for known payment obligations by entirely refusing to continue to pay arbitration fees invoiced by JAMS for arbitrations outside of California and Nevada, based on the spurious argument that the DRA's fees provision allows Respondents to refuse to comply with Standard 6 of JAMS' Policy on Employment Arbitration Minimum Standards of Procedural Fairness (the "Minimum Standards"). Twitter's refusal has ground this arbitration to a halt, along with thousands of others), as JAMS – reasonably – will not proceed without being paid. Claimant (and his thousands of colleagues) cannot afford to advance the necessary fees for their cases. But Claimant could, and therefore did, advance sufficient funds to allow the Arbitrator to rule on this one issue.

Claimant therefore brings this motion for an interim award: (1) construing the parties' DRA and ruling that Respondents are contractually required to abide by the Minimum Standards; or (2) to the extent that the Arbitrator does not so-construe the DRA, ruling that Respondents waived any objection to the application of the Minimum Standards by paying the case initiation fees and proceeding under the Minimum Standards without objection on the timeline required by JAMS' commencement letter. Whatever path the Arbitrator chooses,[2] the outcome should be the same: an interim award declaring that Respondents are obligated to pay the fees for this arbitration, which Claimant can then confirm and enforce.

---

[2] Respectfully, because this issue impacts thousands of Claimant's colleagues and Respondents could be collaterally estopped by a ruling in Claimant's favor so long as that ruling is necessary to the outcome of the award, *see BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997) (unconfirmed arbitration award is sufficient to collaterally estop if other elements are met), Claimant asks that the Arbitrator consider the issues in the order presented by Claimant and neither rule in the alternative nor focus first on the waiver despite, as discussed below, the clarity of that waiver. In other words, Claimant asks that the Arbitrator: (1) first consider whether the DRA, properly construed, requires Respondents to abide by the Minimum Standards and, if it does, to stop there; and (2) only reach the waiver issue if the Arbitrator concludes that the DRA does not require Respondents to abide by the Minimum Standards.

**RELEVANT FACTS**

The relevant facts are uncontested. By its own admission, Twitter has for years required its employees to execute a form Dispute Resolution Agreement as a condition of employment. *See Cornet v. Twitter, Inc.*, D.I. 18[3] at 8 (Twitter arguing that employees "could not have completed the process and been hired by Twitter without signing the Agreements"). JAMS adopted the Minimum Standards in July 2009. *See* Minimum Standards ("Effective July 15, 2009").[4] Roughly nine years later, in or about June 2018, Twitter amended its form DRA to identify JAMS as the provider before whom Twitter and its employees would arbitrate disputes brought under its DRA, and would do so under the Employment Arbitration Rules. *See* Cohen Dec Ex. 3 (pre-amendment form DRA), 4 (post amendment form). That form DRA includes a link to the Employment Arbitration Rules page, which in turn contains a link to the "Complete List of Rules & Procedures," including the Minimum Standards. *Id.*, Ex. 4, ¶ 3.

Claimant Yunfeng Zhang joined Twitter in 2021 and executed Twitter's standard DRA. Cohen Dec. Ex. 5. On November 4, 2022, Twitter notified Mr. Zhang that it would be placing him on a three-month non-working leave and then terminating him on February 2, 2023. Demand for Arbitration, ¶¶ 96-98. Twitter fired thousands of Mr. Zhang's colleagues in the same way. *Id.* Thousands of those fired employees have filed arbitrations against Twitter with JAMS, some as early as December 2022. Cohen Dec, Ex. 6. Many of those arbitrations, like Mr. Zhang's, include claims against each of the Respondents. *Id.*

Mr. Zhang filed his claims against Respondents on February 13, 2023. Demand for Arbitration. After receiving Claimant's payment of the case-initiation fee, JAMS promptly sent

---

[3] Cohen Dec. Ex. 2.
[4] Available at https://www.jamsadr.com/employment-minimum-standards/#:~:text=B.-,Minimum%20Standards%20of%20Procedural%20Fairness,Procedural%20Fairness%20for%20Employment%20Arbitration

Respondents an invoice for their share of the fee and notice of JAMS' intent to initiate the arbitration. That notice specified that the Minimum Standards would apply to the arbitration and that the "parties' agreement to proceed constitutes agreement to the foregoing." Cohen Dec. Ex. 7. Respondents had previously received similar notices for other arbitrations. Cohen Dec. Ex. 8. On February 28, 2023, Respondents filed their answer and affirmative defenses. Respondents thereafter paid their share of the case initiation fees (as per the Minimum Standards) and engaged in arbitrator selection. Judge Maas was appointed on May 25, 2023, and, pursuant to the Minimum Standards, Respondents were invoiced for the initial deposit of arbitrator fees. Cohen Dec Ex. 9. Respondents paid those fees.

On June 2, 2023, for the first time, Respondents objected to imposition of the Minimum Standards, arguing that the Minimum Standards were a "default" that had been "superseded" by the parties' DRA, even though until that point Respondents' conduct indicated that they were proceeding under the Minimum Standards. Cohen Dec Ex. 6. On June 21, JAMS rejected that objection. *Id.*, Ex. 10. On June 28, Respondents wrote JAMS and indicated that they would refuse to proceed under the Minimum Standards. *Id.* Ex. 11. JAMS has since confirmed that the Arbitrator can proceed to consider this motion so long as Claimant advances what Twitter alleges are Claimant's share of the fees for this motion. *Id.*, Ex. 12. Because the Parties' DRA provides that disputes over payment for the arbitration must be resolved by the Arbitrator, Cohen Dec. Ex. 5, ¶ 6, this motion followed.

## ARGUMENT

### I.   The DRA Obligates Respondents to Comply with the Minimum Standards

The DRA Twitter imposed on its employees requires Respondents to comply with the Minimum Standards and pay all of the fees involved in this arbitration for two reasons. First, the DRA expressly provides that Respondents will bear the arbitration fees where required by applicable

law. Because the arbitration agreement includes in its scope a potential claim under California's Fair Employment and Housing Act ("FEHA"), applicable California law requires that it be construed as obligating Respondents to pay the arbitration fees. Second, applicable state law governing the enforceability and interpretation of contracts requires Respondents to comply with the Minimum Standards.

**A. Applicable California law requires Respondents to pay the entire cost of the arbitration**

California law implies in every mandatory employment arbitration agreement an agreement by the employer "to pay all types of costs that are unique to arbitration" if the parties' agreement "contains within its scope the arbitration of FEHA claims." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). *See also Oce Bus. Servs., Inc. v. Christensen*, No. 116720/04, 2005 WL 1712143 at *5 (Sup. Ct., N.Y. County, 2005) ("California law construes a contract to arbitrate in such circumstances to have implicitly included provisions for conscionable discovery and costs in an arbitration proceeding). The parties' DRA does not carve out of its scope FEHA claims, Cohen Dec Ex. 5, and as a California-headquartered employer, **all** of Twitter's employee DRAs "contain[] within [their] scope the arbitration of FEHA claims" because any Twitter employee could potentially have a claim against Twitter for a discriminatory decision made from Twitter's California headquarters. *See Sims v. Worldpac Inc.*, No. C 12-05275 JSW, 2013 WL 663277, at *4 (N.D. Cal. Feb. 22, 2013) (declining to dismiss FEHA claim filed by non-California employee where discriminatory decision was allegedly made in California headquarters). Indeed, though it is unnecessary for these purposes, Mr. Zhang has asserted a FEHA claim in connection with his termination. Demand for Arbitration, ¶¶ 177-189.

At the conference, Respondents' reply on this point was to suggest that California law was irrelevant because – they contend – the DRA should be interpreted under New York law. As discussed in Section III(B), *infra*, Respondents are wrong in those assertions, both as to which law

should govern interpretation of the fees provision and as to what the outcome would be under New York law. But more fundamentally, the dispute about choice of law is irrelevant. The DRA does not provide that Respondents will pay fees 'if required by the law of the state governing interpretation of the DRA.' Rather, it provides that Respondents will pay such fees "in all cases where required by law." Cohen Dec. Ex. 5, ¶ 6. And Respondents cannot dispute either that they are bound by FEHA, or that FEHA requires them to pay the fees they now object to. Because Respondents are "required by law" to pay such fees, the DRA contains their agreement to do so.[5]

### B. Generally applicable contract law requires Respondents to pay the entire cost of the arbitration

In addition, and in the alternative, basic principles of contract construction and general laws on the enforceability of contracts require the same result.[6] It is well-settled that the Arbitrator may not construe the DRA in a manner that renders it void and unenforceable if any other reasonable construction is available. *See Koenig v. Warner Unified Sch. Dist.*, 41 Cal. App. 5th 43, 55 (Cal. Ct. App., 4th Dist., 2019) ("'[A] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"), *quoting* Cal. Civ. Code, § 1643; *Unique Photo, Inc. v. Vormittag Assocs., Inc.*, No. CV 08-2682 SJF AKT, 2010 WL 3924828, at *4 (E.D.N.Y. Aug. 27, 2010) ("the court construes the contract as a whole, giving effect to every portion of the instrument, if possible, and utilizing

---

[5] Importantly, Respondents, not Mr. Zhang, drafted the form DRA, and they had an absolutely free hand in doing so. Had Respondents wished to include a choice of law clause, they could have done so. Had they wished to agree to pay fees only where required by the law of the forum state, they could have drafted the DRA to say so. Instead, Respondents included a broader clause obligating them to pay fees "in **all** cases where required by law." And to the extent that provision was in any way ambiguous, it must be construed against respondents. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (applying the "common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it" to arbitration agreement). *See also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) and *Empire Asset Mgmt. Co. v. Best*, No. 21-CV-4542 (PAC), 2021 WL 2650457, at *4 (S.D.N.Y. June 28, 2021), *aff'd*, No. 21-1798-CV, 2022 WL 893402 (2d Cir. Mar. 28, 2022) (both holding that arbitration clauses are subject to interpretation against the interest of drafting party)

[6] The DRA does not contain a choice of law clause and, as a contract between a New York-based employee and a California-based employer, either New York or California law will apply to the DRA's construction. The Arbitrator need not address which state's law governs the DRA, however, because – as shown herein – both New York and California law apply the same relevant interpretive principles.

that construction rendering the agreement legal rather than one which makes it void"), *report and recommendation adopted*, No. 08 CV 2682 AJF AKT, 2010 WL 3909324 (E.D.N.Y. Sept. 29, 2010). Here, Respondents argue that Section 6 of the DRA obligates Claimant to pay for half of the arbitration costs at JAMS. Cohen Dec Ex. 6. But that interpretation cannot be adopted.

First, Respondents' interpretation of the DRA would render the entire arbitration agreement void. JAMS *will not* accept jurisdiction of any arbitration in which an employee subject to a mandatory arbitration agreement is required to share in the arbitration costs, *see* Minimum Standards**,** yet Section 5 of the the DRA provides for arbitration *only* with JAMS, and only under the Employment Arbitration Rules and Procedures Cohen Dec Ex. 5**.** Respondents' proposed construction would thus render performance impossible and the entire agreement unenforceable, and therefore must be rejected. *See United States v. Hamdi*, 432 F.3d 115, 124 (2d Cir. 2005) *quoting* 11 *Williston on Contracts* § 32:11 (4th ed.) ("[I]nterpretations which render the contract valid or its performance possible are preferred to those which render it invalid or its performance impossible"); *Sateriale v. RJ Reynolds Tobacco Co.*, No. 2:09-CV-08394-CAS, 2014 WL 7338881, at *8 (C.D. Cal. Dec. 19, 2014) (same).

Moreover, Respondents' ability to accept or reject the Minimum Standards on a case-by-case basis would render the contract unenforceable as illusory and without consideration. Under respondent's construction of the DRA, while employees would be bound to arbitrate any claim *Respondents* wished to arbitrate (upon Respondents' election in a particular case to abide by the Minimum Standards), Respondents could decline to arbitrate any case they wanted to take to court (by declining to abide by the Minimum Standards). *See Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (Cal. Ct. App., 2d Dist., 2016) (contract is illusory where one party is not actually obligated under the contract, or where there is no consideration); *Coventry Enterprises LLC v. Sanomedics Int'l Holdings, Inc.*, No. 14 CIV. 8727 NRB, 2015 WL 4486335, at *4 (S.D.N.Y. July 23, 2015) (bilateral

contract would be illusory if one party were not actually bound, for lack of consideration, and court should not construe disputed terms in a manner that would render the agreement illusory).

Respondents' proposed construction would also render the DRA void for illegality and as contrary to California public policy. As noted above, California law does not allow Twitter to enter into a DRA that both potentially encompasses FEHA claims and yet requires Mr. Zhang to pay for arbitration. *Armendariz*, 24 Cal. 4th at 113. Respondents contend that they did so anyway, executing the DRA at Twitter's corporate headquarters *in* California and sending it from there to Mr. Zhang for countersignature. But contracts entered into in violation of law and public policy are void and unenforceable. *See, e.g.*, *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 110, 96 N.E.3d 784, 790 (2018) (rejecting construction of contract that would operate in a manner that would be void against public policy); *Dunkin v. Boskey*, 82 Cal. App. 4th 171, 183, 98 Cal. Rptr. 2d 44, 51 (2000) ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms") (cleaned up). For that reason, too, Respondents' proposed construction must be rejected if there is any viable alternative. *See, e.g.*, *Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th 365, 379, 290 Cal. Rptr. 3d 429, 440 (2022) ("ambiguous terms in an arbitration agreement should be construed, where reasonable, in favor of legality")

And there is, in fact, a reasonable alternative construction that does not place Sections 5 and 6 in conflict: by amending the DRA to select JAMS as the required arbitration provider years after JAMS had already adopted the Minimum Standards, Respondents agreed to bear the unique costs of arbitrating with JAMS in any arbitration in which JAMS applied the Minimum Standards, unless and until JAMS changed its rules. This construction is consistent with an informed decision by Twitter – a company that recently sold for $44 Billion dollars and had a fully staffed legal department – to change their required form DRA to incorporate JAMS and the JAMS rules. It is also consistent with

Twitter's decision to provide a link within the DRA that referred employees to the JAMS employment arbitration page, which in turn directed visitors to the Minimum Standards. Cohen Dec Ex. 5. And the DRA provides that the arbitration will be conducted in accordance with the JAMS Rules, *id.*, which themselves reference the Minimum Standards and **require** parties to abide by them. *See* JAMS Rule 2(a) (providing that any variation from the baseline rules agreed on by the parties will be allowed only if consistent with the Minimum Standards).

Nor would such a construction render the terms allowing for a split "in accordance with applicable law" meaningless. That provision would simply cover the contingent possibility – unlikely as it might be – that at some future point JAMS might choose to cease requiring employers to bear the full costs in these arbitrations even if not separately required by state law.[7]

Finally, to whatever extent the DRA is ambiguous regarding Respondents' obligation to pay the arbitration fees when required by the rules of the chosen arbitration association, Respondents' course of performance would compel the same conclusion. It is well-established that the parties' course of performance under an ambiguous contract can supply the meaning of a disputed term. *See*, *e.g.*, *In re Barney Mac, LLC*, No. 04-17768 AJG, 2006 WL 2864974, at *14 (Bankr. S.D.N.Y. Oct. 3, 2006); *Oakland-Alameda Cnty. Coliseum Auth. v. Golden State Warriors, LLC*, 53 Cal. App. 5th 807, 821, 267 Cal. Rptr. 3d 799, 811 (2020). Here, Twitter faced thousands of arbitrations filed with JAMS since December 2022, in which JAMS insisted on the application of the Minimum Standards. For roughly half a year, and at a cost of hundreds of thousands of dollars if not more, Respondents simply abided by the Minimum Standards and raised no argument that the DRA provided them any other option. That "practical interpretation of a contract by the parties to it" definitively answers any

---

[7] The provision Respondents rely on notably does not say that in the absence of a state law requiring Respondents to bear the entire cost, the parties will split the arbitration fees equally. Rather, it provides that in the absence of such a provision, the parties will split the fees as provided for under applicable state law. Respondents cite no New York law **requiring** Claimant to pay 50% of the fees, and indeed the New York law's default would allow the Arbitrator to allocate costs in any manner he chooses – including in accordance with the Minimum Standards. N.Y. C.P.L.R. § 7513.

remaining questions about its appropriate construction. *Old Colony Tr. Co. v. City of Omaha*, 230 U.S. 100, 118 (1913). And even were that not so, because Respondents drafted the agreement at issue and presented it to Mr. Zhang on a take-it-or-leave-it basis, any ambiguity in the agreement must be construed against Respondents regardless. *See* note 4, *supra*.

In sum, the motion should be granted, and the Arbitrator should issue the requested interim award. Because Respondents' proposed construction of the DRA would render the agreement void and unenforceable, and Claimant's proposed construction would not, "applicable state law" – which Respondents agreed to follow – requires that the DRA be construed as mandating that Respondents abide by the Minimum Standards. And even were the DRA ambiguous (and it is not), the parties' course of performance requires the same conclusion. The Arbitrator should thus issue an interim award declaring as much and directing Respondents to immediately reimburse Claimant for the funds Claimant advanced.

## II.   Even if None of That Were True, Respondents Waived Section 6 of the DRA and Any Objection to the Minimum Standards, and Agreed to Abide by the Minimum Standards

Finally, Respondents have in any event waived any contrary provision of the DRA by proceeding under the Minimum Standards. JAMS' case-initiation notice was crystal clear: this arbitration would proceed only under the Minimum Standards notwithstanding any contrary agreement by the parties, and that Respondents would convey their acceptance of those standards by proceeding with the arbitration. Cohen Dec, Ex. 7. Respondents then proceeded with the arbitration for months in accordance with the Minimum Standards, paying invoiced fees and participating in arbitrator selection, before abruptly changing their minds and objecting to the Minimum Standards. But it was too late for Respondents to do that.

Respondents were specifically advised that proceeding with the arbitration would constitute their agreement to abide by the Minimum Standards. Cohen Dec Ex. 7. And Respondents

proceeded with the arbitration by paying the case initiation fees and engaging in arbitrator selection, two non-trivial steps in the arbitration process. Therefore, Respondents agreed to proceed under the Minimum Standards and cannot now object to the application of those Standards. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree"). Moreover, proceeding under the Minimum Standards and paying fees thereunder without seeking contribution from Claimant, as Respondents did for months after the case was initiated, waived any right to contribution Respondents may have otherwise had under their interpretation of the DRA. *See, e.g., A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 335 (S.D.N.Y. 2013) ("a party may, by words or conduct, waive a provision in a contract or eliminate a condition in a contract which was inserted for its benefit"); *In re Live Primary, LLC*, 626 B.R. 171, 195 (Bankr. S.D.N.Y. 2021) (conduct can waive even unambiguous provisions of contract).

## III.   Twitter's Defenses Are Meritless

At the conference, Twitter raised a series of arguments objecting to the Arbitrator's consideration of this motion or to the substantive points raised herein. As discussed below, those arguments have no merit.

### A.    Respondents' "Advisory Opinion" Objections are Baseless

At the conference, Respondents objected to the Arbitrator even considering this motion on two theories: (a) unless Mr. Zhang agreed to waive the Minimum Standards if the DRA does not require Respondents to pay the fees, he is seeking an "advisory opinion" that would allow him to "have his cake and eat it too"; and (b) because JAMS would only "consider" the Arbitrator's opinion

11

on whether the Minimum Standards should apply in this action, any ruling on that issue would be advisory.

As to the first argument, it is legally unintelligible. Mr. Zhang and Respondents disagree about what the DRA requires of Respondents with respect to payment of fees. Had the DRA delegated this issue to the courts, Mr. Zhang would be able to file a declaratory judgment action seeking to have the DRA interpreted without first agreeing to waive the Minimum Standards in the event that the DRA was construed as Respondents prefer. *See* 28 U.S.C. § 2201. And the DRA allows Mr. Zhang to seek just such a declaratory judgment, expressly providing that "no remedies that would be available to an individual in a court of law will be forfeited by virtue of this Agreement." Cohen Dec. Ex. 5 at ¶ 7. Respondents can no more require Mr. Zhang to prophylactically waive the Minimum Standards as a precondition to obtaining the Arbitrator's determination of the meaning of the DRA than it could require him to do so before obtaining a declaratory judgment, and this objection fails.

And Respondents' second argument erroneously conflates two distinct issues: (1) whether Respondents agreed in the DRA to pay the fees for this arbitration; and (2) whether JAMS correctly interpreted its own Rules in concluding that the Minimum Standards apply in this case. As to the former issue – *i.e.* the declaratory judgment Mr. Zhang seeks by this Motion – the Arbitrator's word is final; JAMS will not review that determination, whatever that is. Only as to the *latter* issue – which Respondents indicated at the conference *they* intended to raise – would anyone be seeking an "advisory opinion" as to which JAMS would have the last word. Cohen Dec. Ex. 10.[8]

---

[8] In any event, JAMS correctly interpreted its own Rules. The Minimum Standards apply whenever an arbitration is required by a standard "clause ***or agreement***" that an employer requires an employee to sign as a condition of employment. Minimum Standards at B. Respondents have affirmatively represented to the Northern District of California that execution of the DRA is a condition of employment. Cohen Dec Ex. 2 at 8. That Twitter allowed Mr. Zhang to subsequently "opt out" of his DRA if he jumped through a series of procedural hurdles – he could only do so via a specific form that he would get access to only upon making an email request of Twitter HR, *see* Cohen Dec Ex. 5, ¶ 8 – does not change the fact that this arbitration is predicated on an agreement he was required to sign in the first

Finally, and contrary to Respondents' arguments at the conference, the distinction between the two issues is very much *not* "without a difference." First, as shown above, the DRA obligates Respondents to pay the fees because they are "required by law" to do so, independent of the Minimum Standards. But if the requirement turned on the Minimum Standards, the distinction between the two issues would be critical. In that case, whether or not the Minimum Standards apply would, of course, be a threshold issue; if they did not, then whether the DRA requires Respondents to abide by them if applicable would be irrelevant. But given that the Minimum Standards do apply, as JAMS has repeatedly confirmed, Cohen Dec. Exs. 7, 8, 10, 12., whether the DRA requires Respondents to pay the arbitral fees is of huge significance. If the DRA requires Respondents to pay the fees where required by the Minimum Standards, then Respondents' refusal to do so is a breach of the DRA, for which Mr. Zhang could either seek damages or as to which Mr. Zhang could obtain a federal court order, under Section 4 of the Federal Arbitration Act, compelling Respondents to arbitrate "in accordance with the terms [of the agreement]," 9 U.S.C. § 4, and Mr. Zhang's arbitration will proceed. If the DRA does *not* require Respondents to do so, then Respondents can terminate this arbitration (by declining to abide by the Minimum Standards and thereby causing JAMS to decline jurisdiction). The "difference," then, is whether this arbitration will proceed. The Arbitrator therefore can and should resolve the dispute between the parties about the meaning of the DRA.

### B.    Choice of Law Does not Rescue Respondents

At the conference, Respondents argued that Mr. Zhang's DRA should be subject to New York law, and that if it was they would have no obligation to pay the fees under the Minimum Standards. Both assertions are wrong.

---

instance as a condition of employment, and JAMS is correct to reject employers' attempts to "one neat trick" themselves out of the Minimum Standards instead of simply giving the employee the option to not sign the arbitration agreement in the first instance.

a. <u>The DRA has no choice of law clause</u>

At the conference, Respondents argued that the DRA contains a choice of law clause because the contract selects New York as the venue for arbitration and requires appointment of an arbitrator barred in the forum state. Cohen Dec. Ex. 5, ¶ 3. While those provisions reflect the reality that a contract requiring Mr. Zhang to litigate elsewhere would be unenforceable, *Bynum v. Maplebear Inc.*, No. 15-CV-6263, 2016 WL 5373643, at *8 (E.D.N.Y. Sept. 19, 2016) ("To the extent that the arbitration clause provides for arbitration in San Francisco…it violates applicable federal policy in regards to venue and is invalid.") and both the convenience of having an arbitrator local to the hearing and the reality that many choice of law issues would result in application of the law of the forum state, neither provision designates New York law as governing the interpretation of the DRA.[9] "Choice of law clauses are not to be confused with choice of forum clauses." *All Metro Aids, Inc. v. Homeward Bound Servs., Inc.*, 15 Misc. 3d 1121(A), 839 N.Y.S.2d 431 (Sup. Ct., Nassau County, 2007) (rejecting argument that Pennsylvania choice of forum clause meant parties had agreed to Pennsylvania law). *See also In re Lois/USA, Inc.*, 264 B.R. 69, 101 (Bankr. S.D.N.Y. 2001) ("The choice-of-law clause does not address the court or courts in which the law is to be applied, and the forum selection clause does not address the law the chosen forum is to apply … A choice-of-law clause and a forum selection clause are not the same, and address different needs and concerns"); *Bank of Tokyo-Mitsubishi, Ltd., New York Branch v. Kvaerner a.s.*, 243 A.D.2d 1, 5, 671 N.Y.S.2d 905, 908 (1998) ("choice of law and choice of forum are altogether separate matters"). Nor does Mr. Zhang's employment offer letter (which required Mr. Zhang to execute the DRA) contain a choice of law clause. Cohen Dec Ex. 5. Thus, the Arbitrator must engage in a choice of law analysis to determine what substantive law governs Mr. Zhang's claims, and this fee issue.

---

[9] To the contrary, the DRA expressly allows the parties to choose a location other than New York for the arbitration.

b.   California law governs Mr. Zhang's FEHA rights[10]

There should be no question that California law governs Mr. Zhang's rights under FEHA.

After all, Mr. Zhang unquestionably has rights under FEHA, *Sims v. Worldpac Inc.*, No. C 12-05275

JSW, 2013 WL 663277, at *4, and New York law does not address FEHA. Thus, California's rule

that requires employers mandating arbitration of potential FEHA claims to agree to pay the costs

imposed by arbitration is the only relevant law that *can* apply. But even if this were viewed as a

broader question – with California's rule for such agreements viewed as conflicting with New York's

decision not to have a blanket requirement as a matter of state unconscionability law – New York

courts would apply California law to that question, and so should the Arbitrator.

Statutory claims under FEHA are tort claims, and with respect to tort claims, New York's

conflict of laws analysis focuses on (1) which state has the greater interest in the conduct at issue;

and (2) whether one of the states at issue has a stronger public policy concern. *See, Kinsey v. New York

Times Co.*, 991 F.3d 171, 177 (2d Cir. 2021). Particularly where a conduct-regulating (rather than loss-

allocating) statute is at issue, the location of the allegedly tortious conduct is "a predominant, if not

exclusive, concern." *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 522, 644 N.E.2d 1001, 1002

(1994) (cleaned up). *See also Youngman v. Robert Bosch LLC,* 923 F. Supp. 2d 411, 416 (E.D.N.Y. 2013).

Here, FEHA is a conduct-regulating statute that bars California employers from engaging in

discrimination, *see, e.g., Tsatsani v. Walmart, Inc.*, No. 19CV9063PAEBCM, 2020 WL 6688939, at *14

(S.D.N.Y. Oct. 26, 2020), *report and recommendation adopted*, No. 19CIV9063PAEBCM, 2020 WL

6701019 (S.D.N.Y. Nov. 13, 2020) (holding that state interest test applies in employment

discrimination claims because the relevant laws are primarily conduct-regulating)**,** and the allegedly

discriminatory conduct occurred in California. Demand for Arbitration, ¶¶95-100. Moreover,

---

[10] Because the law that applies to the payment of arbitration fees under an arbitration agreement that encompasses a FEHA claim is the only issue that turns on which state's law governs, the choice of law does not impact the other arguments in this Motion for why the Arbitrator should grant the requested interim award.

California has an overwhelmingly strong public policy interest in enforcing FEHA, including in prohibiting employers from mandating arbitration of potential FEHA claims in which employees must pay the arbitration costs. *See, e.g.*, *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1076, 63 P.3d 979, 987 (2003) (holding that *Armendariz* requirements allow employee to vindicate "unwaivable" FEHA rights); *Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 221, 207 Cal. Rptr. 3d 473, 487 (2016) (extending *Armendariz* costs rule to find unconscionability where costs sharing was imposed in housing arbitration); *Mills v. Facility Sols. Grp., Inc.*, 84 Cal. App. 5th 1035, 1055, 300 Cal. Rptr. 3d 833, 848 (2022) (finding unconscionable a provision in which fee sharing in an arbitral appeal process).

New York, in contrast, has no countervailing public policy *against* mandating that an employer pay arbitration fees where an arbitration agreement implicates statutory claims; it simply does not require it. *See*, *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (holding arbitration agreement not unconscionable and enforceable where agreement called for employer to pay fees). *See*, *Certain Underwriters at Lloyd's v. Expeditors Int'l of Washington, Inc.*, 584 F. Supp. 3d 860, 875 (C.D. Cal. 2022) (only necessary to decide which state has stronger interest if each state has interest in applying its own law); *Cf. Pac. Emps. Ins. Co. v. Indus. Accident Comm'n of State of California*, 306 U.S. 493 (1939) (courts of one state must give full faith and credit to applicable laws of another state unless the foreign state's law is "obnoxious to [the forum state's] policy"). And New York has no real interest in prohibiting enforcement of California's policy here, against a non-New York-based corporation and under a contract by which the parties did not affirmatively select New York law. Under these circumstances, a New York court applying New York choice of law principles would apply California law and require Respondents to pay the arbitration fees.

Nor would the analysis be different under the choice of law analysis applicable to contract claims. New York courts determining what law applies to contract claims apply the "center of

gravity" test, *see, e.g., Jimenez v. Monadnock Const., Inc.*, 109 A.D.3d 514, 516, 970 N.Y.S.2d 577, 580 (2013)**,** and in employment contexts that typically results in applying the law of the employee's home state to the contract with the employer. *Elliott v. Nestle Waters N. Am. Inc.*, No. 13 CIV. 6331 RA, 2015 WL 1611333, at \*1 (S.D.N.Y. Apr. 10, 2015).  But even where analyzing choice of law applicable to contracts, New York courts will enforce the law of another state "where the issue is of such overriding concern to the public policy of the other jurisdiction as to override the intent of the parties and the interest of [New York] in enforcing its own policies." *SG Cowen Sec. Corp. v. Messih*, No. 00CIV.3228(HB), 2000 WL 633434, at \*3 (S.D.N.Y. May 17, 2000), *aff'd*, 224 F.3d 79 (2d Cir. 2000). *See also Medtronic, Inc. v. Walland*, No. 21 CIV. 2908 (ER), 2021 WL 4131657, at \*5 (S.D.N.Y. Sept. 10, 2021) (New York courts will apply law of state with greater interest, despite choice of law clause, where that state has a fundamental policy interest in application of its law). And here, as noted above, enforcement of California's requirement that Respondents pay for this arbitration is of overriding public policy concern to California, and of no concern at all to New York. As such, application of the "center of gravity" approach would *still* require application of California law.

      c.   <u>Even applying New York law, the Arbitrator should direct Respondents to pay the fees</u>

        Finally, Respondents appear to be incorrectly presuming that if New York law applies, then Mr. Zhang agreed to – and therefore must – bear 50% of the arbitration costs despite JAMS' imposition of the Minimum Standards. But that is ***not*** what the DRA provides. Rather, the DRA provides that if applicable law doesn't *require* Respondents to pay all of the arbitration fees, those fees "will be apportioned between the parties in accordance with said applicable law." Cohen Dec Ex. 5 at ¶ 6. But no New York law *requires* that arbitration fees be split between the arbitrating parties, let alone split equally, in the absence of an express agreement to do so. To the contrary, the default rule in New York arbitration law is that the arbitrator determines how such fees and expenses are to be allocated. N.Y. C.P.L.R. § 7513. *See, e.g., 544 Bloomrest, LLC v. Harding*, 202

17

A.D.3d 499, 501, 162 N.Y.S.3d 53, 55 (2022) (holding that award of fees under specific AAA rule was proper, citing § 7513).

Thus, while New York law may not mandate that Mr. Zhang pay no fees, neither does it affirmatively require him to pay any fees at all, rendering Respondents' argument that application of the Minimum Standards violates the DRA entirely meritless in any event. And under JAMS' Rules, the Arbitrator may not allocate any such fees and expenses to Mr. Zhang beyond the case initiation fee he already paid. Indeed, Respondents agreed to arbitrate under the JAMS Rules. The JAMS Rules require the Arbitrator to allocate all costs and expenses against Respondents. New York law requires Respondents to pay those costs and expenses precisely as allocated by the Arbitrator. And Respondents agreed to pay such costs if required by law. Even assuming New York law applies, the DRA requires Respondents to proceed with arbitration and pay the costs invoiced to them.

## CONCLUSION

In sum, Respondents must abide by the Minimum Standards. They must do so because they agreed in the DRA that they would pay all the costs of arbitration. And Respondents must abide by the Minimum Standards because they expressly agreed to do so, and waived any contrary provision of the DRA, by proceeding with the arbitration after being provided with notice that the Minimum Standards were applicable. But Respondents refuse to do so absent an Award. Thus, the Arbitrator should issue an Interim Award, under Rule 24(e) of the Employment Arbitration Rules, declaring that the DRA requires Respondents to abide by the Minimum Standards, directing them to do so, and directing them to reimburse Claimant for fees advanced in connection with this motion.

Respectfully Submitted,
Dated: July 31, 2023

_/s/ Akiva M. Cohen_
Akiva M. Cohen

KAMERMAN, UNCYK, SONIKER &
KLEIN, P.C.
1700 Broadway
New York, New York 10019
(212) 400-4930
acohen@kusklaw.com
Dylan M. Schmeyer
dmschmeyer@kusklaw.com
Michael D. Dunford
mdunford@kusklaw.com