## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BURGIOUS FRAZIER, JR., YOSUB KIM, WAYNE KRUG, BEN PEREZ, VANESSA SZAJNBERG, NICHOLAS TAPALANSKY, and SHELLY YIP,<br><br>                Petitioners,<br><br>-against-<br><br>X. CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC.,<br><br>            **Respondents.** | C.A. NO. 1:24-CV-2135<br><br>REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION |

---

### REPLY IN FURTHER SUPPORT OF PETITIONERS'
### MOTION TO COMPEL ARBITRATION

---

Akiva Cohen
**KAMERMAN, UNCYK, SONIKER & KLEIN P.C.**
1700 Broadway, 16th Floor
New York, NY 10019
Tel: (212) 400-4930
acohen@kusklaw.com
*Counsel for Petitioners*

# **Table of Contents**

I.   ARBITRATION IN ACCORDANCE WITH THE TERMS OF THE PARTIES' AGREEMENT IS AN ARBITRATION IN WHICH TWITTER PAYS THE FEES.................1

A.   JAMS Correctly – and Unreviewably – Applied its Own Rules ....................................1

B.   The DRA and JAMS's Rules Do Not Conflict...............................................................3

    a.   The Court can preclude Respondents from denying their obligation to pay fees as it decides this Petition to compel arbitration. ..............................................4

    b.   Judge Maas's ruling has preclusive effect..........................................................5

        i.   Respondents consented to issuance of the Partial Final Award.....................5

        ii.   The Partial Final Award is sufficiently final........................................6

        iii.   Giving the award preclusive effect is fair and consistent with the DRA. ....................7

C.   The Fee Sharing Provisions of JAMS Minimum Standards and Rule 31(c) Are Entirely Compatible With Section 6 of the DRA.........................................................8

II.   CONCLUSION ...............................................................................................10

# <u>Table of Authorities</u>

**Page(s)**

**Cases**

*Benedict P. Morelli & Assocs., P.C. v. Shainwald*, 49 A.D.3d 476 (1st Dep't 2008) .....................................12

*Billie v. Coverall N. Am.*, 594 F. Supp. 3d 479 (D. Conn. 2022) ..........................................................4

*Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023) .................12

*Brown v. Twenty-First Century Fox, Inc.*, 59 Misc. 3d 1201(A) (N.Y. Sup. Ct. 2017) ...............................4

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126 (2d Cir. 2015) ...................................................8

*Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49 (2d Cir. 1993) ...................................5

*d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 116 F. Supp. 3d 349 (S.D.N.Y. 2015) ...........................9

*Delano v. Mastec, Inc.*, , 2010 WL 4809081 (M.D. Fla. Nov. 18, 2010).................................................12

*Giordano v. Sparrow Healthcare, LLC*, 2022 WL 3597084 (M.D. Fla. May 13, 2022) .............................4

*Goobich v. Excelligence Learning Corp.*, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020)...........................12

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, (2002) ............................................................4

*In re Platinum-Beechwood Litig.*, 389 F. Supp. 3d 270 (S.D.N.Y. 2019) ..............................................8

*Kessler v. Oakwood Worldwide (US) LP*, 2021 WL 5414323 (N.D. Cal. Mar. 10, 2021)...........................5

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004)......................................12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129 (2d Cir. 1996) .................8

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).......................................................................10

*rady v. Williams Cap. Grp., L.P.*, 14 N.Y.3d 459 (2010) ..................................................................12

*Rodriguez v. Four Seasons Hotels, Ltd.*, 2009 WL 2001328 (S.D.N.Y. July 10, 2009) .............................6

*Selman v. FCB Worldwide Inc.*, 2004 WL 2729656 (Cal. Ct. App. Dec. 1, 2004) ...................................6

*Simeon v. Domino's Pizza LLC*, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019).........................................6

*Sistem Muhendislik InSaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 741 F. App'x 832 (2d Cir. 2018) .....9

*Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62 (2d Cir. 2023) ......................................................9

*Staley v. Hotel 57 Servs., LLC*, 680 F. Supp. 3d 440 (S.D.N.Y. 2023).................................................11

*Tesla Wall Sys., LLC v. Related Companies, L.P.*, 2018 WL 4360777 (S.D.N.Y. Aug. 15, 2018)...............5

*This Is Me, Inc. v. Taylor*, 157 F.3d 139 (2d Cir. 1998) ..................................................................5

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813 (2d Cir. 1996) .................................................8

*U.S. v. Cannons Eng'g Corp.*, 720 F. Supp. 1027 (D. Mass. 1989) ...................................................9

**Rules**

JAMS Rule 24(e).......................................................................................................................8

JAMS Rule 31(c).......................................................................................................................4

I.      **ARBITRATION IN ACCORDANCE WITH THE TERMS OF THE PARTIES' AGREEMENT IS AN ARBITRATION IN WHICH TWITTER PAYS THE FEES**

The parties agree the Court can order arbitration in accordance with the terms of the DRA. Respondents do not contest they agreed to arbitrate with Petitioners, or that Petitioners are aggrieved by Respondents' refusal to arbitrate under the JAMS Rules. Rather, Respondents argue: (1) JAMS misunderstands its own rules; and (2) they can re-raise their already rejected argument that the JAMS Rules conflict with the DRA because the DRA delegates such disputes to the arbitrator and, in their view, Judge Maas's decision cannot have preclusive effect. They are wrong in every particular.

A.      **JAMS Correctly – and Unreviewably – Applied its Own Rules**

Respondents' argument that JAMS incorrectly interpreted and applied its own rules, Dkt. No. 13 ("Opp") at 22-23, is as impermissible as it is incoherent. Arbitration associations are the masters of their own rules, and parties cannot ask courts to find that an arbitration association was wrong about their rules' meaning and application. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002); *Giordano v. Sparrow Healthcare, LLC*, 2022 WL 3597084, at *2 (M.D. Fla. May 13, 2022); *Billie v. Coverall N. Am.*, 594 F. Supp. 3d 479, 488 (D. Conn. 2022), *vacated and remanded* 2023 WL 2487334 (2d Cir. Mar. 14, 2023), and *vacated and remanded* 2023 WL 2531396 (2d Cir. Mar. 15, 2023). So JAMS's (and Judge Maas's) determination that Rule 31(c) and the Minimum Standards apply are not reviewable by this Court. But even were they reviewable, they are clearly correct.

Rule 31(c) and the Minimum Standards each require the employer to pay the forum fees, other than a small amount apportioned to the employee, if the arbitration is based on a "clause or agreement" required as a condition of employment. Respondents argue that an opt-out procedure means that Twitter's DRA was not a condition of employment. But that argument confuses whether *arbitration* was mandatory with whether *executing the arbitration agreement* was mandatory. Rule 31(c) and the Minimum Standards apply in the latter case. JAMS Rule 31(c); *see also Brown v. Twenty-First Century*

*Fox, Inc.*, 59 Misc. 3d 1201(A) at *4, (N.Y. Sup. Ct. 2017). And – in a client declaration of the type conspicuously absent from Respondents' filing in *this* action – Twitter has previously insisted to other courts that it was mandatory for employees to execute the DRA. *See* Cohen Dec. Ex. 1 at ¶ 4; Reply Declaration of Akiva M. Cohen ("Cohen Reply Dec"), Ex. 1 at ¶ 4; *cf.* Cohen Reply Dec Ex. 2 at 3 (directing the employee to "sign and date this offer letter, and [*inter alia*] the [DRA]") and warning the employee that "the offer will expire if the signed documents are not returned" by the deadline.) Not only is that an admission, but Twitter made that representation as part of a successful motion to compel arbitration. Respondents cannot now argue for the contrary version of the facts. *Tesla Wall Sys., LLC v. Related Companies, L.P.*, 2018 WL 4360777, at *3 (S.D.N.Y. Aug. 15, 2018).

And Respondents' argument is dead in the water regardless. "[A]ll writings forming part of a single transaction are to be read together." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998). Indeed, such separate writings are "construed as one agreement if they relate to the same subject matter and are executed simultaneously." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993). JAMS's rules require Respondents to pay the forum fees where the arbitration is based on an agreement that was a mandatory condition of employment, even if the arbitration clause itself was not mandatory. *Kessler v. Oakwood Worldwide* (US) LP, 2021 WL 5414323, at *5 (N.D. Cal. Mar. 10, 2021) ("JAMS Rule 31(c) states that an employee need only pay the initial JAMS Case Management Fee when the arbitration agreement is required as a condition of employment, or $400."). Pulling the arbitration clause out into a "separate contract" does not exempt that clause from the application of JAMS's rules when the company requires the employee to sign and return that 'separate agreement' and offer letter together in order to accept employment with the company.[1]

---

[1] Respondents' claim that the DRA "indicates" it was not effective until after the close of the opt-out window, Dkt. No. 13 ("Opp") at 24, is unsupported by any citation to the DRA itself, for good reason. The quoted language refers to employees who were provided with the DRA after already beginning employment with Twitter and did not sign the agreement; if Twitter chose not to terminate the employee, the employee's "continuing employment" would be acceptance

Finally, the cases Respondents cite are not on point. *Selman v. FCB Worldwide Inc.*, 2004 WL 2729656 (Cal. Ct. App. Dec. 1, 2004), did not involve an employer-imposed DRA or an opt-out (though Respondents' description appears to imply otherwise). Rather, the *Selman* plaintiff requested and individually negotiated an employment agreement that included an arbitration clause. *Id.* at *3. Both *Simeon v. Domino's Pizza LLC*, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) and *Rodriguez v. Four Seasons Hotels, Ltd.*, 2009 WL 2001328 (S.D.N.Y. July 10, 2009) involved unconscionability challenges, in which the question was whether **arbitration** (not the agreement itself) was mandatory. And although Twitter asserts that *Simeon* "held that having '30 calendar days … to opt out of the duty to arbitrate' meant the arbitration **agreement** 'is not a mandatory condition of [] employment.'" Opp at 23 (emphasis altered), that is flatly untrue. *Simeon* **expressly** recited that "Simeon entered into an Arbitration Agreement with Domino's as a condition of his employment." *Simeon*, 2019 WL 7882143 at *4. The portion of the case Twitter misquoted states that "**dispute resolution by arbitration** is not a mandatory condition of Simeon's employment" *Id.*, *5 (emphasis added). That is a critical distinction where the issue before the court was unconscionability, not JAMS's Rules. Unconscionability is not in issue here, and JAMS can (and does) provide additional protection under its rules. No case holds anything different, and Respondents' contrary argument is exactly as frivolous as their need to misrepresent and misquote the cited cases suggests.

### B.    The DRA and JAMS's Rules Do Not Conflict

Nor does the DRA conflict with the JAMS Rules Twitter agreed to. Respondents argue that preclusion itself is a matter for the arbitrator. But the cases Respondents cite involve claim preclusion or a party seeking to entirely remove an issue from the arbitration's scope, while this application seeks to *compel* arbitration; to the extent Respondents wish to raise their arguments to an arbitrator in each

---

through conduct. Dkt. No. 6-5 at 37-39 ("DRA"), § 8. For employees that actually **executed** the DRA – as Twitter required all new hires to do – the signature block recited that the employee "acknowledge[d] and agree[d] to the terms" of the DRA, rendering such "acceptance by conduct" irrelevant and inapplicable. *Id.*

of Petitioners' cases, grant of the requested relief will facilitate that, not foreclose it.[2] Respondents also argue that Judge Maas had no authority to issue a partial final award, that the award is insufficiently final, and that preclusion would be unfair, arguments that do not bear scrutiny. Finally, Respondents attempt to argue the substance of the DRA, suggesting that fees "apportioned" between the parties must be "apportioned equally between the parties." Not even the dictionaries Respondents rely on support such a position, and cases Respondents cite confirm that the Petition should be granted.

### a. The Court can preclude Respondents from denying their obligation to pay fees as it decides this Petition to compel arbitration.

Respondents' argument that the preclusive effect of Judge Maas's ruling is for later arbitrators is misplaced, because it gets the order of operations wrong. After this Court compels Respondents to pay the fees invoiced to them by their chosen arbitration provider, enabling the appointment and service of the arbitrators in Petitioners' cases, Respondents will be free to challenge the apportionment of fees in a motion to those arbitrators. Indeed, JAMS has invited Respondents to do so, and Respondents fought bitterly to avoid arbitral consideration of their arguments in *Zhang*. What Respondents **cannot** do is unilaterally stay the arbitration by refusing to pay invoiced fees and refusing to bring its purported construction of the DRA to the arbitrator for resolution. Because they have attempted – and for a year, accomplished – just that, the Court should grant the motion to compel.

---

[2] Respondents do not address the contradiction between (1) their claim here that they are entitled to have an arbitrator rule on their purported construction of the DRA and (2) their vehement opposition in *Zhang* to having an arbitrator rule on that. That is unsurprising; at no point in these litigations have Respondents seemed appreciably burdened by a need to make consistent legal arguments across tribunals. *Compare* Defendants' Motion to Compel Arbitration, D.I. 12 in *Woodfield v. Twitter*, Case No. 1:23-cv-00780-CFC (D. Del. 2023), at 11 ("[A motion to compel arbitration under Section 4 of the FAA] **would enable the Court to address Plaintiff's arguments about the meaning of the DRA's arbitration fees provision**") and 18 ("If Plaintiff wishes for the Court to adjudicate the fee sharing issue […] **he may do so in connection with a petition to compel arbitration under Section 4 of the FAA,**" citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004) *and* Respondents' Opposition in *Zhang v. Twitter* ("**[A] claimant could […] argue under 9 U.S.C. § 4 for an order compelling arbitration under the terms of the agreement**[,]" citing *Lifescan* **at 1013**); *with* Opp at 5-7 ("Petitioners ask this Court to resolve a question that is **expressly reserved for their respective individual arbitrators**: how the parties should share fees in each of Petitioners' arbitrations," citing *Lifescan* **at 1013**) *and* Respondents' Opposition to Petitioner's Motion to Compel, D.I. 35 in *Ma v. Twitter, et al,* Case No. 4:23-cv-03301-JST (N.D. Cal. 2023) ("Petitioners request an order compelling arbitration under 9 U.S.C. § 4. That statutory provision limits courts to compelling arbitration only 'in the manner provided for in [the parties'] agreement' and only 'in accordance with the terms of the agreement,'" citing *Lifescan* at 1012) (emphasis supplied throughout). *See* Cohen Reply Dec Exs. 3-4, Petition Ex. 2.

4

The cases cited by Respondents are not to the contrary. Unlike this case, each involved a party seeking to **avoid** arbitration by having a court, rather than the arbitrator, rule on the merits of the dispute as a matter of preclusion. *See, e.g., Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 (2d Cir. 2015) (rejecting attempt to enjoin arbitration); *U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 814 (2d Cir. 1996) (reversing injunction against arbitration issued on basis of collateral estoppel); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 132 (2d Cir. 1996) (affirming motion to compel arbitration over Belco's defense that issues to be arbitrated were precluded)[3]; *In re Platinum-Beechwood Litig.*, 389 F. Supp. 3d 270, 275 (S.D.N.Y. 2019). Here, in contrast, Federal law commits a motion to compel to the discretion of this Court, and its grant would not foreclose Respondents from presenting their arguments (including as to the preclusive effect of Judge Maas's ruling) to the arbitrator for substantive resolution. Indeed, the parties agreed in the DRA that a court may make a preliminary assessment of the merits of an issue committed to the arbitrators if necessary to facilitate arbitration. DRA, § 4 (allowing application for preliminary injunctive relief). Under these circumstances, the *Belco* rule has no application.

### b.  Judge Maas's ruling has preclusive effect.

#### i.  Respondents consented to issuance of the Partial Final Award

Respondents' Opposition desultorily argues that Respondents never consented to Judge Maas's issuance of a partial final award. Opp at 14-15. That claim is frivolous. Twitter selected JAMS's Rules for its arbitrations, which provide arbitrators with unbounded discretion to issue partial final awards. JAMS Rule 24(e). Respondents thereby agreed that Judge Maas had authority to issue partial final awards. And Respondents waived any objection to Judge Maas issuing such an award on the fee issue by failing to raise such an objection at any time between the pre-motion conference (at which Judge Maas first raised the possibility of issuing a partial final award) and the issuance of the award.

---

[3] The other Second Circuit cases cited at page 9 of the Opp do not address this issue at all.

*See Sistem Muhendislik InSaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 741 F. App'x 832, 834 (2d Cir. 2018) (objection waived when party failed to raise it to the arbitrator). Respondents do not deny the facts described in Petitioners' initial submission, *see* Dkt. No. 5, ¶ 9, and merely argue that their general opposition to Judge Maas ruling on the substantive motion should be construed as such an objection. Opp at 15. That is not how objections work, *see, e.g., U.S. v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1053 (D. Mass. 1989) ("Other than their general opposition… the non-settling defendants have raised no objection to the decrees being entered as final judgments), *aff'd*, 899 F.2d 79 (1st Cir. 1990), and this Court is not a reviewing tribunal considering whether to reverse Judge Maas's decision to issue a partial final award. Having failed to raise for Judge Maas's consideration any argument that a partial final award was inappropriate, Respondents waived those arguments.

ii.   <u>The Partial Final Award is sufficiently final.</u>

In any event, Respondents' arguments are substantively meritless. The Zhang ruling did not finally resolve either liability or damages on the underlying dispute regarding severance, because it instead finally resolved an entirely different dispute about the meaning of Section 6 of the DRA. That the Zhang parties' dispute about the meaning of the DRA arose in the context of the severance dispute does not make it a part of the severance dispute, and Mr. Zhang sought and obtained a declaratory judgment about the meaning of Section 6 of the DRA. Petition Ex. 1 at 11-13, Ex. 3 at 1-2, Ex. 4 at 5. By virtue of Respondents' agreement to abide by Judge Maas's ruling in Mr. Zhang's case rather than seek vacatur, *see* Cohen Dec Ex. 2, that ruling is final. *Stafford v. Int'l Bus. Machines Corp.*, 78 F.4th 62, 68 (2d Cir. 2023) (confirmation is moot where there is no live dispute over compliance with the award), *cert. denied*, No. 23-834, 2024 WL 759830 (2024). As between Mr. Zhang and Respondents, there is and will be no further litigation over the meaning of the DRA's fees provision. That is sufficient. *See d'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*, 116 F. Supp. 3d 349, 358 (S.D.N.Y. 2015).

iii.   Giving the award preclusive effect is fair and consistent with the DRA.

Last, Respondents protest that it would be unfair – and contrary to the DRA - to afford Judge Maas's decision preclusive effect and direct Respondents to pay the invoiced arbitration fees and make any substantive arguments on this issue in the arbitrations themselves. But that position is self-refuting. First, Respondents complain that Judge Maas – a respected jurist selected by the parties as the arbitrator in *Zhang* – was "cherry picked." Not so. When Respondents unilaterally stopped the arbitrations, there were only four arbitrations in which the application could have been brought. Cohen Reply Dec, ¶ 4. Counsel brought the application in Mr. Zhang's litigation for convenience; Mr. Cohen, like Judge Maas and Mr. Zhang, is located in New York. *Id.* To the extent Respondents believe that Judge Maas's ruling was somehow idiosyncratic, they are free to – but pointedly will not – pay the invoiced fees in *any* of the stalled arbitrations they prefer and seek to obtain a different ruling from a different arbitrator. Indeed, Respondents' invocation of *Parklane Hosiery* makes no sense at all in this context; none of the other claimants had any means to intervene, Respondents**,** not those claimants, were the reason those claimants' cases were on hold, Respondents vigorously litigated the *Zhang* case, and no other decision has agreed with Respondents' proposed construction of the DRA's fees provision - precisely the situation in which the Supreme Court held offensive non-mutual estoppel was appropriate. *Cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-32 (1979).

Nor does giving Judge Maas's decision preclusive effect conflict with either the DRA or the FAA. The parties **expressly** agreed that Petitioners would have access to the same remedies that would have been available in a court of law, DRA Section 7, and as Respondents noted elsewhere in their submission, arbitrators generally have authority to rule on the basis of issue preclusion. Opp at 8-11 (collecting cases). Respondents cite no case construing an "individual arbitration" as preventing issue preclusion, and even if such a construction were possible in the abstract, it is impossible given the specific language of the parties' DRA, which makes clear that "individual arbitration" is in contrast

to "class, collective, or private attorney general representative action." DRA Section 5. And were there any ambiguity, that would need to be resolved in favor of Petitioners. *Staley v. Hotel 57 Servs., LLC*, 680 F. Supp. 3d 440, 448 (S.D.N.Y. 2023) ("[A]mbiguities in a contract must be construed against the drafter"), *aff'd in part, appeal dismissed in part*, No. 23-770, 2024 WL 1090816 (2d Cir. Mar. 13, 2024)**.**

Simply put: Respondents had their chance to argue their view of the DRA – arguments they made vigorously to a well-respected judge, who rejected them. And they did so in an arbitration they agreed would proceed under New York law, which affords such rulings preclusive effect. There is no unfairness to holding Respondents to the consequences of that loss and requiring them to pay the arbitral fees invoiced to them unless and until an arbitrator rules they need not in a particular case.

**C.    The Fee Sharing Provisions of JAMS Minimum Standards and Rule 31(c) Are Entirely Compatible With Section 6 of the DRA.**

Finally, Respondents' substantive argument that the DRA requires fees to be split equally is frivolous. The DRA requires that fees "be apportioned between the parties in accordance with…applicable law." DRA Section 6. This provides the drafting party with considerable flexibility by allowing the DRA to remain enforceable in the face of potential shifts in state law or arbitration provider rules, and Twitter's argument that interpreting the clause as compatible with the arbitration rules Twitter selected would render the provision somehow "superfluous" is simply misplaced. But it does not mandate any **particular** split unless that split is required by state law. And neither New York law nor the DRA require a 50/50 split.

Faced with that reality, Respondents turn to dictionary definitions that they appear not to have actually read. Opp at 21. The Oxford English Dictionary definition refers to "assign[ing] in **proper** proportions," while Webster's New International Dictionary refers to "divid[ing] and assign[ing] in **just** proportion." *Id.* Both dictionaries thus reflect that "apportionment" involves an element of judgment and discretion – determining what a "just" and "proper" division of fees looks like in a particular case. That meaning is also reflected in the use of "apportion" in the case law. *See*, *e.g.*, *Lifescan,*

*Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (discretion to "apportion" arbitral fees included discretion to require one party to advance 100% of the fees); *Benedict P. Morelli & Assocs., P.C. v. Shainwald*, 49 A.D.3d 476, 476 (1st Dep't 2008) (arbitrator was free to "apportion the arbitration fees, expenses, and compensation between the parties as they found appropriate" in order to "achieve a just result"); *Delano v. Mastec, Inc.*, , 2010 WL 4809081, at *6 (M.D. Fla. Nov. 18, 2010) ("provision that arbitrator and arbitration fees 'will be apportioned between the parties by the Arbitrator in accordance with ... applicable law' []is not informative as to the likely allocation of arbitration fees'") (citation omitted).[4] Here, the JAMS Rules provide for how those fees are to be apportioned: to Respondents, other than a small portion of the initial filing fee. That Respondents *dislike* that apportionment does not make it inconsistent with the DRA.

Indeed, Respondents' treatment of *Delano* is remarkable. Twitter maintains that *Delano* "accept[ed] that language requiring fees to "be apportioned between the parties by the Arbitrator in accordance with … applicable law" "means in effect that Plaintiffs must pay their share of the arbitration fees upfront, even though the arbitrator may ultimately apportion costs unequally or tax them all against Defendants." But that is an egregious misrepresentation:

> Second, and more important, the arbitration agreement's provision that arbitrator and arbitration fees "will *be apportioned between the parties by the Arbitrator in accordance with ... applicable law*" (Dkt. 8–2 at 2) **is not informative as to the likely allocation of arbitration fees. Plaintiffs plausibly argue that this language is intentionally vague and that it** *means in effect that Plaintiffs must pay their share of the arbitration fees upfront, even though the arbitrator may ultimately apportion costs unequally or tax them all against Defendants.* **The DRP's virtual silence as to the ultimate cost allocation renders Plaintiffs' estimate of likely costs too speculative to sustain their**

---

[4] The cases cited by Respondents are not to the contrary. Each of *Goobich v. Excelligence Learning Corp.*, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020), *Brown v. Peregrine Enterprises, Inc.*, No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023), and *Brady v. Williams Cap. Grp., L.P.*, 14 N.Y.3d 459 (2010) involved arbitration agreements in which the parties expressly agreed to equally split the forum fees; in such circumstances, a provider's rules requiring a different split would conflict with that agreement. And Respondents' discussion of the "effective vindication" doctrine, Opp at 20-21, is purely academic; that doctrine provides a test for assessing claims that an arbitration agreement's provisions are unenforceable as unconscionable – which Petitioners have not argued. To the contrary, they want the DRA enforced according to its terms.

> **burden under Green Tree.** (Respondents' selective quotation italicized; omissions boldfaced.)

*Delano* did not say that a provision like the one at issue here "means" Petitioners must pay upfront; it said that was the argument the *Delano* plaintiff made, which the court declined to adopt or reject. Even worse, *Delano* directly refutes Respondents' position, including by confirming that a provision providing for "apportionment in accordance with applicable law" does **not** mandate a rote 50/50 split. JAMS has said that Respondents are obligated to make the up-front payment, and can then take the matter to the arbitrator, and have invoiced Respondents for those fees. Under the *Delano* rule, the Court should compel Respondents to pay the invoices and take its DRA argument to the arbitrators.

## II.    CONCLUSION

As shown herein, there is no basis to deny the requested relief. Respondents should be compelled to abide by their agreement to arbitrate, and to pay the invoiced fees. To the extent that they believe the DRA compels a different conclusion, they can make that argument to the arbitrator. But Respondents cannot "take their ball and go home," preventing arbitration by refusing to pay invoiced fees on their unilateral – and incorrect, and rejected by the adjudicator they chose – assertion that the arbitrator is misapportioning them. The Petition should be granted.


Dated:  May 9, 2024
      New Brunswick, New Jersey                 Respectfully Submitted,

                                           Kamerman, Uncyk, Soniker & Klein P.C.

                                        *   /s/ Akiva M. Cohen*

                                        Akiva M. Cohen
                                        Attorneys for Defendants
                                        1700 Broadway
                                        New York, New York 10019
                                        (212) 400-4930
                                        acohen@kusklaw.com