**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BURGIOUS FRAZIER, JR., YOSUB KIM, WAYNE KRUG, BEN PEREZ, VANESSA SZAJNBERG, NICHOLAS TAPALANSKY, and SHELLY YIP,<br><br>Petitioners,<br><br>-against-<br><br>X CORP f/k/a TWITTER, INC. and X HOLDINGS CORP f/k/a X HOLDINGS I, INC.,<br><br>Respondents. | C.A. NO. 1:24-CV-2135-JSR |

**AMENDED[*] OPPOSITION TO PETITION TO COMPEL ARBITRATION**

---

[*] Respondents submit this amended Opposition in response to Petitioners' service of a Rule 11 notice of motion on May 15, 2024. Petitioners' argument for sanctions is unfounded, but Respondents are making the amendments in this filing in an effort to avoid unnecessary motions practice, over issues that are in any event irrelevant to the outcome of the underlying Petition, to conserve resources for the parties and the Court. This amended Opposition is intended to replace the Opposition filed on April 26, 2024 at Dkt. 13.

# TABLE OF CONTENTS

**Page**

I.  Introduction .................................................................................................... 1

II. Background ..................................................................................................... 2

    A.  Petitioners enter binding arbitration agreements with Twitter. ............................ 2

    B.  Petitioners and others file arbitrations. ................................................. 3

    C.  JAMS announces its Minimum Standards apply regardless of the DRA. ............. 4

    D.  The *Zhang* arbitrator issues a decision siding with JAMS. ............................. 5

III. Argument ....................................................................................................... 5

    A.  Petitioners' argument must be resolved by their individual arbitrators. ................ 6

    B.  The *Zhang* decision lacks preclusive effect. ......................................... 12

        1.  The *Zhang* decision is not a final judgment entitled to estoppel effect. ................................................................. 13

        2.  Principles of fairness and the FAA preclude binding Twitter to the *Zhang* decision in this dispute. ................................... 16

    C.  Twitter is not required to pay the full cost of Petitioners' arbitrations. ................ 20

        1.  Section 6 of the DRA requires fee apportionment. .......................... 20

        2.  JAMS Rule 31(c) and the JAMS Minimum Standards do not apply. ........ 22

        3.  The JAMS Minimum Standards and Rule 31(c) do not override Section 6 of the DRA. ....................................................... 24

IV. Conclusion ................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.J. Taft Coal Co. v. Connors*,
  829 F.2d 1577 (11th Cir. 1987) ............................................................14

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)................................................................7, 19, 20

*Am. Int'l Specialty Lines Ins. Co. v Allied Capital Corp.*,
  149 N.E.3d 33 (N.Y. 2020).............................................................14, 15

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
  754 F.3d 109 (2d Cir. 2014)...............................................................9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)........................................................................19

*AT&T Techs., Inc. v. Commc'ns Workers*,
  475 U.S. 643 (1986)....................................................................11, 12

*Bear, Stearns & Co. v. 1109580 Ontario, Inc.*,
  409 F.3d 87 (2d Cir. 2005)..........................................................11, 13, 16

*Borodaenko v. Twitter, Inc.*,
  No. 4:22-cv-7226, Dkt. 14 (N.D. Cal. Dec. 21, 2022)...........................22

*Brady v. Williams Cap. Grp., L.P.*,
  928 N.E.2d 383 (N.Y. 2010).........................................................21, 22

*Brown v. Peregrine Enters., Inc.*,
  No. 22-2959, 2023 WL 8800728 (2d Cir. Dec. 20, 2023)......................25

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.*,
  776 F.3d 126 (2d Cir. 2015).............................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)......................................................................7

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002)..........................................................14

*Emps. Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*,
  744 F.3d 25 (1st Cir. 2014).........................................................10

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018)........................................................................................19

*Essex v. Children's Place, Inc.*,
  No. 15-cv-5621, 2017 WL 6000347 (D.N.J. Dec. 4, 2017)......................................17

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)..........................................................................................8

*Giles v. City of New York*,
  41 F. Supp. 2d 308 (S.D.N.Y. 1999)...................................................................12

*Goobich v. Excelligence Learning Corp.*,
  No. 19-6771, 2020 WL 5593011 (N.D. Cal. Sept. 18, 2020)............................24, 25

*Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*,
  No. 22-5212, 2023 WL 2138693 (S.D.N.Y. Feb. 21, 2023)...................................21

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
  561 U.S. 287 (2010)...........................................................................................7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)...........................................................................................21

*Hafer v. Vanderbilt Mortg. & Fin., Inc.*,
  793 F. Supp. 2d 987 (S.D. Tex. 2011) ...............................................................10

*HDI Glob. SE v. Phillips 66 Co.*,
  No. 22-807, 2022 WL 3700153 (S.D.N.Y. Aug. 26, 2022)...............................13, 15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019)......................................................................................11, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)............................................................................................7

*Int'l Bhd. of Elec. Workers, Loc. Union 43 v. NLRB*,
  9 F.4th 63 (2d Cir. 2021) ................................................................................24

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019)......................................................................................7, 18

*Law Debenture Trust Co. of New York v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010)..............................................................................25

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
  363 F.3d 1010 (9th Cir. 2004) ...........................................................................6

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ...............................................................................17

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ..................................................................................................9

*N. River Ins. Co. v. Allstate Ins. Co.*,
  866 F. Supp. 123 (S.D.N.Y. 1994) .......................................................................10

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*,
  88 F.3d 129 (2d Cir. 1996)............................................................................8, 9, 10

*Pacnav S.A. v. Effie Bus. Corp.*,
  909 N.Y.S.2d 880 (N.Y. Sup. Ct. 2010) ..............................................................13

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979)..................................................................................12, 17, 18

*Persaud v. City of New York*,
  No. 22-2919, 2023 WL 2664078 (S.D.N.Y. Mar. 28, 2023) ...............................13

*In re Platinum-Beechwood Litig.*,
  389 F. Supp. 3d 270 (S.D.N.Y. 2019) (Rakoff, J.) ...............................................9

*Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*,
  No. 87-7560, 1993 WL 42786 (S.D.N.Y. Feb. 17, 1993).....................................12

*Rodriguez v. Four Seasons Hotels, Ltd.*,
  No. 09-cv-2864, 2009 WL 2001328 (S.D.N.Y. July 10, 2009)..................17, 23, 24

*Rosa v. Triborough Bridge & Tunnel Auth.*,
  218 A.D.3d 810 ( N.Y. 2d Dep't 2023) .................................................................13

*Selman v. FCB Worldwide Inc.*,
  No. B168315, 2004 WL 2729656 (Cal. Ct. App. Dec. 1, 2004) ...........................22

*Siegel v. Apergis*,
  610 F. App'x 15 (2d Cir. 2015) ..............................................................................9

*Simeon v. Domino's Pizza LLC*,
  No. 17-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) .......................17, 22, 23

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
  201 F. Supp. 2d 291 (S.D.N.Y. 2002)...................................................................20

*Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*,
  931 F.2d 191 (2d Cir. 1991)..................................................................................15

*Triumph Const. Corp. v. New York City Council of Carpenters Pension Fund*,
    29 F. Supp. 3d 373 (S.D.N.Y. 2014)....................................................................10

*U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*,
    101 F.3d 813 (2d Cir. 1996)..........................................................................8, 9

*United Indus. Workers v. Gov't of Virgin Islands*,
    987 F.2d 162 (3d Cir. 1993)...........................................................................10

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)......................................................................................18

*Walton Ave. Assocs., LLC v. Bragg as Tr. of 32 BJ N. Health Fund*,
    No. 19-10245, 2020 WL 6807353 (S.D.N.Y. Nov. 18, 2020)............................10

*Estate of Weisberg*,
    No. 2012-3470, 2014 NYLJ LEXIS 7431, at *1 (N.Y. Surr. Ct. Apr. 21, 2014)..................14

*Wills v. RadioShack Corp.*,
    981 F. Supp. 2d 245 (S.D.N.Y. 2013)............................................................18

*Young v. Refined Techs., Inc.*,
    No. 22-cv-1032, 2022 WL 3012536 (C.D. Cal. June 17, 2022)............................17

**Statutes**

9 U.S.C. § 4.......................................................................................1, 6, 7, 8

Federal Arbitration Act ............................................................................3

**Other Authorities**

*JAMS, Employment Arbitration Rules & Procedures* (June 1, 2021),
    https://tinyurl.com/5u9wekb ......................................................................21

*JAMS Policy on Employment Arbitration Minimum Standards of Procedural
    Fairness* (July 15, 2009), https://tinyurl.com/3zwytnb9.........................................22

*Oxford English Dictionary* 579 (2d ed. 1989) ............................................21

Restatement (Second) Judgments § 13 .........................................................13

Restatement (Second) of Judgments § 84......................................................16, 19

Rule 31(a).............................................................................................21

Rule 31(c)...................................................................................... *passim*

*Webster's New International Dictionary* (2d ed. 1955)..................................21

## I.      INTRODUCTION

Petitioners request an order compelling arbitration under 9 U.S.C. § 4. That statutory provision limits courts to compelling arbitration only "in the manner provided for in [the parties'] agreement" and only "in accordance with the terms of the agreement." 9 U.S.C. § 4. The Petition (Dkts. 4, 6) tries to sidestep that rule. Petitioners request an order that rewrites the parties' agreements by (a) requiring this Court to answer questions reserved for each Petitioner's individual arbitrator and (b) requiring Twitter to pay fees it is not contractually obligated to pay.[1]

Petitioners' arbitration agreements expressly address the payment of arbitral fees, stating: "If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." Dispute Resolution Agreement ("DRA"), § 6.[2] Twitter has fully complied with this provision by paying arbitral fees in arbitrations where applicable law requires it. Petitioners, on the other hand, refuse to follow this provision. They seek an order obligating Twitter to pay vastly more in fees than what applicable law in the relevant jurisdictions would require—without any order by *their* individual arbitrators to do so—merely because a *different* claimant's arbitrator (in the *Zhang* decision) disregarded that claimant's DRA in favor of JAMS' policy without any supporting case law.

Petitioners' argument that the *Zhang* decision collaterally estops Twitter from disputing Petitioners' position on fee-sharing fails for numerous reasons. First, the *Zhang* arbitrator's ruling regarding fees is irrelevant to Petitioners because the DRA expressly gives exclusive authority over Petitioners' fees, and also over the collateral estoppel argument Petitioners raise here, to each

---

[1] For simplicity, the Opposition refers to Defendants X Corp and X Holdings Corp. collectively as "Twitter."

[2] Petitioners attach copies of their Demands, which included the DRAs that all seven of them signed, at docket numbers 6-5 to 6-11.

Petitioner's individual arbitrator. This Court should not decide the merits of the fees dispute or Petitioners' supporting collateral estoppel argument because to do so would violate the terms of Petitioners' DRAs. Rather, this Court should rule that both matters are reserved exclusively for each Petitioner's individual arbitrator and on that basis deny the Petition's requested relief.

Were Petitioners' arguments for this Court to decide (and they are not), both arguments would fail. Collateral estoppel does not apply here because there was no final judgment on the merits in the *Zhang* arbitration and the *Zhang* arbitrator's ruling regarding fees was not necessary to any final judgment on the merits. In addition, applying offensive non-mutual collateral estoppel would offend bedrock principles of fairness, as well as the Federal Arbitration Act ("FAA"), by imbuing the individual *Zhang* decision with massive and undue broader significance. To do so would be particularly inappropriate given the clear error in the *Zhang* decision. Specifically, contrary to the *Zhang* arbitrator's ruling, the JAMS Minimum Standards and Rule 31(c) do *not* apply because Petitioners had a meaningful opportunity to opt out of—and not be bound by—the DRA. As a result, arbitration was not required as a condition of employment. For all of these reasons, the Petition should be denied.

## II.     BACKGROUND

### A.     Petitioners enter binding arbitration agreements with Twitter.

Petitioners Burgious Frazier, Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, and Shelly Yip concede that they each electronically signed a DRA with Twitter. *See generally* Dkts. 6-5 to 6-11. In pertinent part, the DRA contains the following terms. *See, e.g.*, Dkt. 6-5 at 37-39 (Frazier's DRA, which does not materially differ from the others).

***Not a Condition of Employment.*** The DRA's introductory paragraph contains bolded language that states: "**You can choose to opt out of this Agreement – you have 30 days to opt out.**" Dkt. 6-5 at 37. The DRA stresses that "**[a]rbitration is not a mandatory condition of**

**Employee's employment at the Company**." DRA § 8 (emphasis in original). An employee could opt out of the DRA by "submit[ting] a signed and dated statement on a 'Dispute Resolution Agreement Opt Out Form' ('Form') … within 30 days of the Employee's receipt of this Agreement." *Id.* Timely opting out would have permitted the employee to "**not be subject to this Agreement**." *Id.* Otherwise, "continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement." *Id.*

> ***Governing Law.*** The DRA expressly states that it is "governed by the [FAA] and evidences a transaction involving commerce." DRA § 1.

> ***Covered Claims.*** The DRA states that it applies to "any dispute arising out of or related to Employee's employment with Twitter, Inc. … or termination of employment," including "all … state statutory and common law claims." *Id.* The DRA further authorizes the arbitrator to resolve all "disputes arising out of or relating to [the] interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." *Id.*

> ***JAMS Rules.*** The DRA states that the "Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ("JAMS"), pursuant to the then-current JAMS Rules."

> ***Arbitration Fees.*** The DRA addresses arbitration fees in DRA § 6 as follows:

> "[I]n all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, ***such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator***." DRA § 6 (emphasis added).

### B.    Petitioners and others file arbitrations.

In October 2022, X Holdings I, Inc. and X Holdings II, Inc. completed their purchase of Twitter, Inc. Afterward, Twitter began restructuring its workforce and operations, resulting in

multiple reductions in force that affected Petitioners. As part of these reductions in force, each Petitioner was offered significant severance benefits, in exchange for a general release of claims, but they declined these severance offers. Instead, they—and over 2,200 other former employees—filed demands for arbitration against Twitter. *See* Dkts. 6-5 to 6-11; Meckley Decl., ¶ 2.

      **C.**      **JAMS announces its Minimum Standards apply regardless of the DRA.**

On June 2, 2023, Twitter requested, consistent with the DRA's terms, that arbitration costs be apportioned between the Parties for any arbitrations pending in jurisdictions where fee-sharing is lawful. Meckley Decl., ¶ 3, Ex. 1. Twitter cited Section 6 of the DRA, which requires fee sharing, but on June 21, 2023, JAMS' General Counsel stated that JAMS' Policy on Employment Arbitration Minimum Standards of Procedural Fairness (the "Minimum Standards") would apply to each arbitration proceeding, "notwithstanding any contrary provision in the parties' arbitration agreement." *Id.*, ¶ 4, Ex. 2. The June 21 statement further stated that while "[t]he Minimum Standards do not prevent an employee from contributing to JAMS fees," JAMS would continue to issue invoices in accordance with the Minimum Standards absent employee agreement. *Id.* Finally, JAMS stated that, although the parties could direct any further dispute about the applicability of the Minimum Standards to the assigned arbitrator in each case, JAMS would retain the right to "make a final determination" on the issue. *Id.* This position contradicted the plain language of the DRA, which expressly states that the arbitrator shall resolve any disputes relating to fee-sharing.

On June 28, 2023, Twitter notified JAMS: (1) that the Minimum Standards are separate and distinct from the JAMS Rules; (2) that the parties did not agree to abide by the Minimum Standards in the DRA; (3) that the Minimum Standards apply only where arbitration is mandated as a condition of employment, unlike here where the DRA expressly gave employees the right to opt out; and (4) that the DRA required apportionment of fees in accordance with applicable law. *Id.*, ¶ 5, Ex. 3. The view JAMS articulated on June 21 thus "prevent[ed] Twitter from exercising

its contractual rights and improperly negate[d] a material provision in the dispute resolution agreements." *Id.* Rather than abandon its contractual rights, Twitter declined to proceed under the Minimum Standards—but it did not decline to arbitrate—for arbitration demands in jurisdictions where fee-sharing is lawful. *Id.*

In response, on June 30, 2023, JAMS' General Counsel wrote to the parties observing that employees could elect to contribute to JAMS fees. *Id.*, ¶ 13, Ex. 11. The letter stated that if a claimant was willing to "share JAMS fees according to the underlying arbitration clause, they should advise JAMS and Respondent accordingly." *Id.*

**D.      The *Zhang* arbitrator issues a decision siding with JAMS.**

One claimant, Zhang Yunfeng, took up JAMS' suggestion, at least in part. He fronted part of his share of the fees (with Twitter paying its corresponding share) and moved "for an interim award" declaring the DRA requires Twitter to pay all JAMS' costs under the Minimum Standards. *See* Dkt. 6-1. Twitter opposed. Dkt. 6-2.

The *Zhang* arbitrator ruled that Twitter would "be required to pay all the JAMS fees and arbitrator fees (other than the initial case management fee) incurred in connection with" the *Zhang* arbitration. Dkt. 6-5 at 5-6.[3] Independently and without any legal analysis, the arbitrator ignored Zhang's request for an "interim award" and "captioned [the] award a 'Partial Final Award.'" *Id.* at 5. Zhang has not sought confirmation of the decision in any court.

**III.      ARGUMENT**

Petitioners ask this Court to resolve a question that is expressly reserved for their respective individual arbitrators: how the parties should share fees in each of Petitioners' arbitrations, including whether the JAMS Minimum Standards apply. Petitioners argue (incorrectly) that the

---

[3] Twitter respectfully disagrees with the *Zhang* arbitrator's decision, which disregarded the plain language of the DRA.

JAMS Minimum Standards do apply because of nonmutual collateral estoppel from the *Zhang* decision—an interim and unconfirmed arbitration ruling between Twitter and a different employee. That argument fails for at least three reasons.  First, given the DRAs' express delegation of the fee issue to their individual arbitrators, Petitioners' contention must be resolved in their individual arbitrations, not here. Second, the *Zhang* decision does not support nonmutual collateral estoppel here because it is not a final judgment and because the preclusion doctrine and the FAA foreclose binding Twitter to the result of one individual arbitration, let alone one that did not even address directly on-point case law supporting Twitter's position. Third, on the merits, the JAMS Minimum Standards (and Rule 31(c)) do not apply because neither arbitration nor the DRA was required as a condition of Petitioners' employment, and the DRA's express terms take precedence over JAMS' policies.

### A.    Petitioners' argument must be resolved by their individual arbitrators.

The Petition should be denied because it asks this Court to resolve a question that the DRA reserves for the arbitrator. As Petitioners concede, "the DRA is a valid and binding arbitration agreement that covers the claims in Petitioners' demands for arbitration." Pet. 7. They also concede that "the DRA delegates all fee issues to the arbitrator." Pet. 12; *see* DRA § 6 ("any disputes [regarding the apportionment of fees] will be resolved by the Arbitrator"). Despite this, Petitioners insist that "*the Court* must give [the *Zhang* decision] preclusive effect" for the purpose of ordering Twitter to pay disputed fees in *Petitioners'* arbitrations. Pet. 12 (emphasis added). Petitioners never explain by what authority the Court could ignore the DRA's delegation of fee issues to the arbitrator to decide the issue of whether the *Zhang* decision precludes Twitter's arguments against paying Petitioners' fees. The Court has no such authority because the parties delegated the issue to their individual arbitrators, and Section 4 authorizes courts to compel arbitration in accordance with the agreement's terms but not in conflict with the agreement's terms. *See, e.g.*, *Lifescan, Inc.*

*v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012-13 (9th Cir. 2004) (trial court erred by granting Section 4 petition to require payment of fees contrary to agreement).

Arbitration is "strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). Accordingly, "arbitrators wield only the authority they are given." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Parties "may generally shape [arbitration] agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes." *Id.* "Whatever they settle on, the task for … arbitrators at bottom remains the same: 'to give effect to the intent of the parties.'" *Id.* (citation omitted).

Correspondingly, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985) ("the purpose behind [the FAA] was to ensure judicial enforcement of privately made agreements to arbitrate"). Section 4 of the FAA expressly incorporates this requirement to strictly adhere to the terms of the parties' agreement. Courts must direct arbitration "*in the manner provided for in [the parties'] agreement.*" 9 U.S.C. § 4 (emphasis added). If the other party has failed to comply with the agreement, "the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof." *Id.*

Here, the parties' agreement states that "any disputes" over how arbitration fees are "apportioned" must "be resolved by the Arbitrator." DRA § 6. The agreement also explains: "Disputes covered by this Agreement include, without limitation, disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." DRA § 1; *see Howsam v. Dean Witter*

7

*Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("the presumption is that the arbitrator should decide ... defense[s] to arbitrability" (citations omitted)). Under FAA § 4, then, this Court may not resolve a dispute over fee apportionment (or anything else covered by the DRA). That question must be decided by each individual arbitrator, as it was for Zhang.

Petitioners cannot circumvent that delegation provision by asking this Court to decide the fees dispute based on the supposedly preclusive effect of the *Zhang* arbitrator's erroneous interpretation of JAMS' policies. Just as this Court lacks the authority to resolve the fee-apportionment issue on the merits, so too does it lack authority to do so using collateral estoppel.

Indeed, Second Circuit case law is clear that the preclusive effect, if any, of a prior arbitration award for a later arbitration is for *the later arbitrator* to decide. *See U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 817 (2d Cir. 1996) ("[T]he issue-preclusive effect of a prior arbitration is arbitrable and so must be arbitrated."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135-36 (2d Cir. 1996) ("both National Union's claim and the preclusive effect of the AIG Arbitration fall within the scope of the arbitration agreement" and must be decided by the subsequent arbitrator). In *Belco*, the Second Circuit held that the claim-preclusive effect of a prior arbitration award was an issue for a subsequent arbitrator to decide rather than the federal court. 88 F.3d at 135-36. The court rejected the argument—much like Petitioners' here—that "the preclusion issue [did] not require an interpretation" of the substance of the dispute delegated to the arbitrator and thus did not need to be arbitrated. *Id.* at 135. Rather, the "preclusion issue" was "itself a component of the dispute on the merits." *Id.* It certainly was not "a disagreement over 'whether [the parties] agreed to arbitrate the merits' of their dispute," such that a court could resolve the issue. *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)); *id.* at 136 (citing cases holding that other issues like claim preclusion, such

as limitations periods and laches, also are reserved for the arbitrator). Where there is "[n]othing in the arbitration clause [that] gives any indication that anyone other than the arbitrator should decide the preclusive effect of a prior arbitration," that is the result that must follow. *Id.* at 135.

The Second Circuit has consistently adhered to *Belco*. For instance, in *National Gypsum*, the court extended *Belco* to hold that the arbitrator must also resolve the preclusive effect of federal court judgments and federal confirmations of arbitration awards. *See Nat'l Gypsum*, 101 F.3d at 817 (holding "the issue-preclusive effect of the prior judgment," like a prior arbitration, "is part of the dispute on the merits" that must be decided by the arbitrator, and reversing district court decision to resolve issue preclusion); *see also, e.g.*, *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 131 (2d Cir. 2015) (relying on *Belco* to hold that "the determination of the claim-preclusive effect of a prior federal judgment confirming an arbitration award is to be left to the arbitrators"); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 754 F.3d 109, 114 (2d Cir. 2014) (reaffirming *Belco* rule); *cf. Siegel v. Apergis*, 610 F. App'x 15, 16 (2d Cir. 2015) (holding that issue "preclusion go[es] to the merits of a claim, which a court cannot adjudicate in the absence of jurisdiction," so even if a claim of issue preclusion was correct, a "district court [i]s powerless to decide that issue" if it lacks jurisdiction over the claim). The Second Circuit has even said that if it "harbored some doubt as to whether the claim-preclusion dispute in this case is arbitrable, [it] would resolve that doubt in favor of arbitration." *Citigroup*, 776 F.3d at 131 (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)); *id.* at 134 (the "better rule" is for "arbitrators to determine [all prior arbitrations'] preclusive effect").

This Court and others have faithfully applied the Second Circuit's guidance in referring collateral estoppel arguments to subsequent arbitrators. *In re Platinum-Beechwood Litig.*, 389 F. Supp. 3d 270, 275 (S.D.N.Y. 2019) (Rakoff, J.) (citing *Belco* and *Citigroup* and holding "the

arbitration panel must decide in the first instance whether its prior orders" preclude subsequent arguments); *see also, e.g.*, *Walton Ave. Assocs., LLC v. Bragg as Tr. of 32 BJ N. Health Fund*, No. 19-10245, 2020 WL 6807353, at *3 (S.D.N.Y. Nov. 18, 2020) ("Collateral estoppel goes to the <u>merits</u> of this dispute, not to [the arbitrator's] <u>authority</u>," so it is properly resolved by the arbitrator. (underlining in original)); *Triumph Const. Corp. v. New York City Council of Carpenters Pension Fund*, 29 F. Supp. 3d 373, 390-92 (S.D.N.Y. 2014) (preclusion "argument may only be properly considered by the arbitrator, not by the Court, and the Court will not entertain it" because there is "no principled categorical distinction" between preclusion and other merits issues "going to the substance of the dispute"); *N. River Ins. Co. v. Allstate Ins. Co.*, 866 F. Supp. 123, 129-30 (S.D.N.Y. 1994) (Sotomayor, J.) (the "question of whether to apply collateral estoppel … is no different from an adjudication by the arbitrators of any other matter in dispute between the parties," and courts must resist the "considerable temptation … to pass on the validity" of collateral defenses such as collateral estoppel) (collecting cases).[4]

Here, *Belco* and its progeny dictate that Petitioners' argument about the supposed preclusive effect of the *Zhang* decision must be referred to each Petitioner's arbitrator. Petitioners offer no case law to the contrary. They identify no case where a court decided the preclusive effect of a previous arbitration for a substantive issue that was delegated to an arbitrator. On the contrary,

---

[4] The rule that the preclusive effect of a prior arbitration is for the arbitrator to decide is not unique to the Second Circuit. "[T]here is broad agreement among the circuit courts that the 'effect of an arbitration award on future awards … is properly resolved through arbitration.'" *Emps. Ins. Co. of Wausau v. OneBeacon Am. Ins. Co.*, 744 F.3d 25, 27-28 (1st Cir. 2014) (citation omitted) (collecting cases); *see also, e.g.*, *United Indus. Workers v. Gov't of Virgin Islands*, 987 F.2d 162, 169 (3d Cir. 1993) ("Absent a [contract] provision that requires arbitrators to be bound by earlier arbitration awards, the parties delegate to the arbitrator the power to decide the preclusive effect of prior arbitration awards."); *Hafer v. Vanderbilt Mortg. & Fin., Inc.*, 793 F. Supp. 2d 987, 998 (S.D. Tex. 2011) (applying Second Circuit's *National Gypsum* case to hold that assertion of offensive collateral estoppel was a question for the arbitrator).

they cite precedent where the collateral estoppel effect "of a previous arbitral decision" was properly resolved by the subsequent arbitration panel. *See Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 89, 92 (2d Cir. 2005) (affirming arbitration panel's decision not to apply offensive collateral estoppel based on prior arbitration). And Petitioners identify no reason this Court should—or even could—ignore Second Circuit case law directly on this point. Instead, they present two unsupported arguments.

First, Petitioners contend that "if the Court gives [the *Zhang* decision] preclusive effect then the DRA's delegation clause is irrelevant." Pet. 14. This contention hardly helps Petitioners. It merely proves Twitter's point. Of course, ignoring the parties' delegation of this issue to the arbitrator would make the delegation clause "irrelevant." But the FAA does not permit a court to make a delegation clause irrelevant. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). When the parties' contract delegates an argument to an arbitrator, "a court possesses no power to decide" it, "even if the court thinks that the argument … is wholly groundless." *Id.* So here, regardless of what the Court thinks about Twitter's argument on the fee issue (because of collateral estoppel or any other reason), the Court cannot override the parties' contract. *See id.*; *see also AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649-50 (1986) ("a court is not to rule on the potential merits of the underlying claim[]," which the contract assigns to the arbitrator, "even if it appears to the court to be frivolous").[5]

---

[5] Petitioners similarly claim that the fee issue "cannot be in dispute"—*i.e.*, there is nothing for their arbitrators to resolve—"if Respondents are estopped from" making their argument that the parties must share the fees because "that argument is acknowledged as resolved." Pet. 14. Not only does a dispute exist between the parties regarding the fee issue, but Petitioners put the cart before the horse by ignoring the fact that their individual arbitrators must decide that dispute (as well as the dispute regarding application of collateral estoppel).

Second, Petitioners claim that applying issue preclusion here is "ministerial" because Twitter is "precluded as a matter of law from denying" Petitioners' position on fee sharing or disputing the *Zhang* decision's rationale. Pet. 14-15. This logic again is circular because it assumes that the Court *may* apply issue preclusion. Not so—not even if the Court thinks resolving the preclusion question is a ministerial task. *See Henry Schein*, 586 U.S. at 68; *AT&T*, 475 U.S. at 649-50. In any event, as shown below, *infra* Section II.B.2, the decision of whether to apply issue preclusion in this case is the opposite of "ministerial." Applications of nonmutual offensive collateral estoppel require the adjudicator to weigh fairness considerations, including at least eight questions posed by the *Restatement of Judgments*. *See Pompano-Windy City Partners, Ltd. v. Bear, Stearns & Co.*, No. 87-7560, 1993 WL 42786, at *8 (S.D.N.Y. Feb. 17, 1993); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331-33 (1979) (permitting offensive collateral estoppel but granting broad discretion to determine when it should be applied). Moreover, any issue preclusion based on previous arbitrations is a matter "within the broad discretion" of the adjudicator. *Giles v. City of New York*, 41 F. Supp. 2d 308, 313-14 (S.D.N.Y. 1999) ("Issue preclusion based on a prior arbitration is permissible, but not mandatory[.]").

These discretionary rules confirm that whether to apply issue preclusion in this case—nonmutual offensive collateral estoppel based on a prior arbitration—is a question left to the discretion of the ultimate adjudicator of the fees question. It is not a ministerial act. And because "any disputes in … regard [to fees apportionment] will be resolved by the Arbitrator," DRA § 6, the question of whether to apply issue preclusion in each Petitioner's case must be as well.

B.    **The *Zhang* decision lacks preclusive effect.**

If this Court could decide the preclusive effect of the *Zhang* arbitration ruling for Petitioners' separate arbitrations, the correct answer would be "no," the *Zhang* decision does not have that preclusive effect. There are at least two reasons: first, the *Zhang* decision is not a "final

judgment" and, second, principles of fairness and the FAA itself foreclose nonmutual offensive collateral estoppel in this case.

### 1. The *Zhang* decision is not a final judgment entitled to estoppel effect.

Petitioners do not meet the requirements for collateral estoppel—and they are wrong to suggest that it is undisputed that they do (Pet. 10). Under both federal and state law, collateral estoppel requires (among other things) a valid and final judgment. *See, e.g.*, *Bear, Stearns & Co.*, 409 F.3d at 91; *Rosa v. Triborough Bridge & Tunnel Auth.*, 218 A.D.3d 810, 812 (N.Y. 2d Dep't 2023). The party asserting collateral estoppel bears the "burden of demonstrating that the [prior] determination … 'was necessary to support a valid and final judgment on the merits.'" *Rosa*, 218 A.D.3d at 813 (citation omitted); *Persaud v. City of New York*, No. 22-2919, 2023 WL 2664078, at *3 (S.D.N.Y. Mar. 28, 2023) ("An issue that is 'necessarily decided' must have been … 'necessary to support a valid and final judgment on the merits.'" (citation omitted)).

A final arbitration award is one that "address[es] the ultimate issue before the" arbitrator. *See Pacnav S.A. v. Effie Bus. Corp.*, 909 N.Y.S.2d 880, 884 (N.Y. Sup. Ct. 2010) (holding arbitrators' decision ordering respondent "to post security … for potential arbitrators' fees" was "not a final arbitration award," where it "[did] not address the ultimate issue before the panel"); *see also HDI Glob. SE v. Phillips 66 Co.*, No. 22-807, 2022 WL 3700153, at *3-4 (S.D.N.Y. Aug. 26, 2022) ("[f]or an award to be final and definite [under the FAA], the award must both resolve all the issues submitted to arbitration, *and* determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award"; decision interpreting a "contractual clause" was "an intermediate procedural decision" that "merely decide[d] issues that bear on future determinations [needed] to establish liability"); Restatement (Second) Judgments § 13 cmt. b (judgment considered final if not contingent and represents all steps in the adjudication short of execution and enforcement).

Here, Petitioners cannot demonstrate that the *Zhang* arbitrator's ruling was necessary to a valid and final judgment on the merits because there has been no final judgment on the merits. The *Zhang* arbitrator's ruling was a preliminary, administrative determination as to fees due in that arbitration. It indisputably was not a determination on the merits of Zhang's claims or Twitter's defenses—there has been no such determination on the merits in that arbitration. Regardless of who bears responsibility for the arbitration fees, the arbitration remains pending.

Nor does the captioning of the award as a "Partial Final Award" make it a final award. *See Am. Int'l Specialty Lines Ins. Co. v Allied Capital Corp.*, 149 N.E.3d 33, 38 (N.Y. 2020) ("[D]espite its name, the Partial Final Award was not, in fact, final."). The award is plainly an interim award—it resolves none of the Claimant's demands or claims in that arbitration.

Indeed, "it has always been the rule that although an issue was fully litigated and a finding made on the issue in prior litigation, the prior judgment will not act as collateral estoppel as to the issue if the issue was not necessary to the rendering of the prior judgment, and hence is incidental, collateral, or immaterial to that judgment." *A.J. Taft Coal Co. v. Connors*, 829 F.2d 1577, 1580 (11th Cir. 1987) (quotation marks and brackets omitted); *see also In re Diet Drugs*, 282 F.3d 220, 240 (3d Cir. 2002) ("interlocutory orders on matters that are simply collateral or incidental to the main suit do not operate as res judicata or collateral estoppel" (cleaned up)).

In one case, a movant argued that the "court [was] bound by a judicial finding in Family Court that she and decedent were married." *Estate of Weisberg*, No. 2012-3470, 2014 NYLJ LEXIS 7431, at *1 (N.Y. Surr. Ct. Apr. 21, 2014). Collateral estoppel did not apply because that finding was an "administrative determination" that was "merely incidental" to the main dispute and thus had "no preclusive effect." *Id.* at *4.

Petitioners' assertion that Twitter "consented" to the issuance of a "partial final award"

(Pet. 10) is false. Just the opposite: Twitter objected that the *Zhang* arbitrator could *not* issue any ruling at all because it would be "advisory"—for JAMS had already stated it would necessarily follow the decision of the arbitrator. *See* Dkt. 6-2 at 8-10. Twitter cannot have "consented" to the issuance of a ruling when it expressly objected that the arbitrator could not issue a ruling at all. And all Petitioners cite for the supposed consent is that the DRA refers to JAMS rules, and the JAMS rules allow "Partial Final Awards" in some circumstances. Pet. 11. That *obviously* does not represent Twitter's consent to issuing a final award on the fee-sharing issue.

Moreover, an *express* agreement is required to consent to issuance of a final award. *See Am. Int'l Specialty*, 149 N.E.3d at 39 ("Absent an express, mutual agreement between the parties to the issuance of a partial and final award, the functus officio doctrine would have no application in this case."). An "express" agreement requires "both parties" to affirmatively ask for a final award, demonstrating a "mutual understanding" regarding finality. *Id.* at 38-39. The mere fact that Twitter did not ask to file additional briefing after the arbitrator mentioned the possibility of a Partial Final Award at oral argument, Dkt. 5 ¶¶ 8-9, does not represent express consent.

In any event, the award was not a partial final award because it did not determine whether Twitter is liable on Zhang's claims. *See HDI*, 2022 WL 3700153, at *4 n.8 (an "exception" allowing the parties to "ask[] the arbitrators to make a final partial award as to a particular issue … has only been recognized when the parties expressly bifurcated issues of liability and damages"; arbitrators' decision was "an interlocutory award" that could not be confirmed because it "[did] not concern liability in the first place," but "simply resolve[d] the procedural issue of when [respondent could] present its claims"). The case on which Petitioners rely (at 11) is distinguishable because the partial final award there resolved the issue of *liability*, not a preliminary matter (like payment of fees) not touching on the merits or liability at all. *See Trade*

*& Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).

> **2.      Principles of fairness and the FAA preclude binding Twitter to the
> *Zhang* decision in this dispute.**

Even if the *Zhang* decision were final, collateral estoppel still would be inappropriate.
While the "four [preclusion] factors are required," they are "not sufficient." *Bear, Stearns & Co.*,
409 F.3d at 91. As mentioned above, both the application of nonmutual offensive collateral
estoppel *and* finding preclusion based on a prior arbitration award are discretionary because they
present unique potential for unfairness. *See supra* p. 12; *see also* Restatement (Second) of
Judgments § 84 cmt. f ("The general rules of claim and issue preclusion are themselves subject to
many exceptions and qualifications. These exceptions and qualifications are particularly pertinent
in considering the preclusive effect of an arbitration award. … [T]he terms of these rules may more
often result in denying preclusive effect to determinations reached in arbitration proceedings.").
Both situations are present here.

Granting Petitioners' request for nonmutual offensive collateral estoppel based on the
interim *Zhang* decision would be inappropriate for several reasons. As an initial matter,
Petitioners' counsel unilaterally selected (*i.e.*, "cherry picked") one out of dozens of arbitrators to
seek a ruling on whether Twitter should pay arbitration fees, and they did so knowing (given
JAMS' refusal to honor the fee-sharing provision in Twitter's arbitration agreement and its pledge
not to treat the arbitrator's ruling as controlling even for that arbitration) that this strategy gave
them nothing to lose. While Twitter would have no ability to estop other claimants if it prevailed
before the *Zhang* arbitrator, Petitioners' counsel intended all along to argue for nonmutual
offensive collateral estoppel if Twitter lost. *See* Dkt. 6-1 at 7 n.2. This gambit—which sought to
give a single arbitrator undue and improper authority over other arbitrations, and only if the
claimant, not Twitter, prevailed—is exactly the sort of gamesmanship that the Supreme Court has

warned may make nonmutual offensive collateral estoppel improper. *See Parklane Hosiery*, 439 U.S. at 329-30. This Petition confirms Petitioners' intent for "heads we win, tails you lose" gamesmanship by insisting that the Court can address the issue of fees only if it rules for Petitioners, but cannot pass on the issue if it would rule in Twitter's favor. *See* Pet. 14.

Binding Twitter in future arbitrations to the *Zhang* decision would also be improper because it conflicts with numerous judicial decisions (including from courts in this circuit), without even citing those cases. Without support, the *Zhang* arbitrator held that employees' being "required to sign" an arbitration agreement with the option to opt out of arbitration makes agreeing to arbitrate a "condition of employment." Dkt. 6-4 at 5. That holding directly conflicts with *Simeon v. Domino's Pizza LLC*, which held that this type of opt-out provision—*i.e.*, requiring a signature on the agreement but allowing a later opt out—is a quintessential example of an arbitration agreement that is *not* a condition of employment. No. 17-5550, 2019 WL 7882143, at *5 (E.D.N.Y. Feb. 6, 2019) ("[T]he Arbitration Agreement … makes clear that dispute resolution by arbitration is not a mandatory condition of Simeon's employment. The cover letter to the Arbitration Agreement states: 'You have 30 calendar days from the date you sign the Arbitration Agreement to opt out of the duty to arbitrate through the procedures described in the Agreement.'"); *see also Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09-cv-2864, 2009 WL 2001328, at *4 (S.D.N.Y. July 10, 2009) ("[Plaintiff] was not required to submit to the … mediation/arbitration provisions as a condition of employment, but was provided with the choice of opting-out.").[6]

---

[6] Other courts are in accord. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it."); *Young v. Refined Techs., Inc.*, No. 22-cv-1032, 2022 WL 3012536, at *5 (C.D. Cal. June 17, 2022) (referring to "an opt-out provision" as "[o]ne of the typical indicia that a contract is not a condition of employment"); *Essex v. Children's Place, Inc.*, No. 15-cv-5621, 2017 WL 6000347, at *5 (D.N.J. Dec. 4, 2017) ("Plaintiffs were not required to participate in TCP's arbitration program as a condition of employment with TCP. … [T]he Arbitration Agreement expressly state[s] that

Petitioners are not entitled to offensive collateral estoppel based on a clearly erroneous award that conflicts with on-point case law it ignored. *See Parklane Hosiery*, 439 U.S. at 330 ("Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant."); *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 265 (S.D.N.Y. 2013) (citing *Parklane Hosiery* to hold offensive collateral estoppel unfair when other cases have decided the issue differently). Nor can they use one citation-free preliminary arbitration decision to overrule all prior case law for every arbitration against Twitter going forward.

Next, applying estoppel would violate the FAA, which entitles parties to set the rules that will apply to their arbitrations. *See, e.g.*, *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 659 (2022). Here, the parties agreed to arbitration "on an individual basis only" with "any arbitration … limited to the claims between [each] Employee and the Company individually." DRA § 5. Yet Petitioners seek to treat the *Zhang* arbitration as outcome-determinative for other arbitrations— indeed, *every* other employee arbitration against Twitter conducted with JAMS—contrary to the parties' agreement.

Ironically, Petitioners claim that estoppel is warranted due to the perceived unfairness of Twitter's insistence on its contractual right to *individual* arbitrations, rather than allowing "the creation of a single mass litigation." Pet. 12. But individual arbitration is a feature, not a bug, of the DRA. *See* DRA § 5. And the Supreme Court has repeatedly held that such waivers of class actions and contractual rights to individual arbitrations must be enforced. *See Lamps Plus*, 587 U.S. at 187 ("'Class arbitration, to the extent it is manufactured by state law rather than consent,

---

signing the Arbitration Agreement is not a mandatory condition of employment. … To the contrary, the Arbitration Agreement has a clear 'opt out' provision.").

is inconsistent with the FAA.' We recently reiterated that courts may not rely on state contract principles to 'reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent.'" (cleaned up) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018))). The Court should "rigorously enforce" the parties' agreement according to its terms. *Am. Exp.*, 570 U.S. at 233; *see* Restatement (Second) of Judgments § 84(4) (1982) ("If the terms of an agreement to arbitrate limit the binding effect of the award in another adjudication … , the extent to which the award has conclusive effect is determined in accordance with that limitation.").

Petitioners' thinly veiled attempt to overcome that contractual provision through use of offensive collateral estoppel, if accepted, would severely undermine—if not vitiate—such provisions going forward. Attorneys representing multiple claimants against the same defendant could proceed with one individual arbitration against that defendant and then, if they achieve a favorable result, insist in court on behalf of other claimants that offensive nonmutual collateral estoppel bars the defendant from asserting the same defenses and arguments in subsequent arbitrations. Such a process would completely deprive the defendant of its contractual right to *individual* arbitrations with each *individual* arbitrator deciding the issues presented. It would result in mass arbitrations or class actions by another name—just what Petitioners admit that they want (Pet. 12) and just what the DRA expressly states they cannot do (DRA § 5).[7]

---

[7] Even this Petition violates the DRA's requirement that Petitioners "bring any dispute in arbitration on an individual basis only." DRA § 5. Not only must a fees dispute be brought in arbitration, but it cannot be brought by *seven* claimants at once—it must be "individual." In an apparent Freudian slip, Petitioners state their plan all along was to piggyback on the *Zhang* arbitration award instead of arbitrating all issues individually. Indeed, they claim "the sums at stake and *the number of arbitrations* naming Respondents under this DRA" must have influenced Twitter's incentives in the *Zhang* arbitration. Pet. 12 (emphasis added). Not only is that claim irrelevant, but it is factually wrong. Precisely one individual arbitration was at issue in the *Zhang* proceeding regarding fees—the *Zhang* arbitration.

If nothing else, however, the *Zhang* arbitration does refute Petitioners' claim to be "unable to access arbitration" on account of Twitter insisting on its contractual rights to fee sharing. Pet. 11. Petitioners can simply do what they agreed to do in the DRA and what Zhang actually did: pay their share of the initial case-filing fees to allow arbitration to commence and to allow the arbitrator to decide fee apportionment at the outset.

The *Zhang* decision should not be given preclusive effect in Petitioners' arbitrations.

**C.    Twitter is not required to pay the full cost of Petitioners' arbitrations.**

While the fee issue is reserved for the arbitrator, the correct answer is that the DRA requires the parties to split the arbitration fees regardless of JAMS' policies or arbitration rules.

**1.    Section 6 of the DRA requires fee apportionment.**

Section 6 of Petitioners' DRAs obligates Twitter to "pay the Arbitrator's and arbitration fees" only in those "cases where required by law." DRA § 6. In contrast, "If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law" with disputes "resolved by the Arbitrator." *Id.*

Here, applicable law does not require Twitter to pay all Petitioners' fees. Under the FAA, which expressly governs this agreement, an arbitration agreement could conceivably operate as an invalid "prospective waiver of a party's right to pursue statutory remedies" if "filing and administrative fees attached to arbitration … are so high as to make access to the forum impracticable." *Am. Exp.*, 570 U.S. at 236 (citation omitted). Yet the Court warned that "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Id.* (italics in original). At a minimum, "some showing of individualized prohibitive expense is necessary to invalidate an arbitration agreement." *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002).

This standard requires the Claimant to make an individualized showing of an inability to pay. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90-91 (2000) ("the record does not show that [plaintiff] will bear [prohibitively large] costs if she goes to arbitration"). Without such a showing about the employee's individual financial situation, on a case-by-case basis, courts refuse to strike down fee-splitting agreements. *See Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP*, No. 22-5212, 2023 WL 2138693, at *6 (S.D.N.Y. Feb. 21, 2023). New York follows the same basic approach and does not prohibit the sharing of fees. *See Brady v. Williams Cap. Grp., L.P.*, 928 N.E.2d 383, 387 (N.Y. 2010). Petitioners must put forward meaningful evidence—to the arbitrator—of an inability to pay to avoid their obligation to bear a portion of the arbitration costs. Then the individual arbitrator needs to resolve "any disputes in that regard," DRA § 6—including how much Claimant can pay based on individual finances—and apportion fees accordingly.

Accordingly, Section 6 requires that the arbitrator and arbitration fees "be apportioned between the parties in accordance with said applicable law." DRA § 6. The ordinary meaning of "apportion" is divide proportionally. *See Oxford English Dictionary* 579 (2d ed. 1989) ("To assign in proper portions or shares; to divide and assign proportionally; to portion out, to share"); *Webster's New International Dictionary* 132 (2d ed. 1955) ("To divide and assign in just proportion; to divide and distribute proportionally; to make an apportionment of; portion out; to allot"). That is also the default fee arrangement under the JAMS arbitration rules, to the extent they are relevant. JAMS, *Employment Arbitration Rules & Procedures*, Rule 31(a) (June 1, 2021), https://tinyurl.com/5u9wekb ("[E]ach Party shall pay its pro rata share of JAMS fees and expenses"). So, where the arbitration involves one claimant and one respondent, apportionment would be a 50/50 allocation, subject to a claimant's ability to persuade an arbitrator, on an individual "case-by-case" basis under the effective-vindication doctrine, that a different proportion

is appropriate based on individualized evidence of hardship or deterrence. *Brady*, 928 N.E.2d at 387-88.

### 2.   JAMS Rule 31(c) and the JAMS Minimum Standards do not apply.

Petitioners contend that JAMS Rule 31(c) and the JAMS Minimum Standards override Section 6. By their terms, however, neither JAMS Rule 31(c) nor the Minimum Standards apply. Rule 31(c) applies only "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment." JAMS Employment Rule 31(c). Similarly, the Minimum Standards apply only when arbitration is "based on pre-dispute agreements that are required as a condition of employment." *JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness* at 2 (July 15, 2009), https://tinyurl.com/3zwytnb9.

Here, however, the DRA was *not* required as a condition of employment. It expressly stated in bolded text, "**Arbitration is not a mandatory condition of Employee's employment at the Company**." DRA § 8. Rather, employees had 30 days after their receipt of the DRA "**to opt out and not be subject to this Agreement**." *Id.* Such employees would "not be subject to any adverse employment action as a consequence of that decision and [could] pursue available legal remedies without regard to [the DRA]." *Id.* Numerous Twitter employees made use of this opportunity to opt out of the DRA while continuing their employment, proving that the DRA was *not* a condition of employment. Indeed, some employees who opted out are now pursuing litigation in federal court. *See, e.g.*, *Borodaenko v. Twitter, Inc.*, No. 4:22-cv-7226, Dkt. 14 (N.D. Cal. Dec. 21, 2022) (Twitter not moving to compel as to plaintiff who "timely opted out"). Petitioners chose not to.

This type of opt-out provision is a quintessential example of an arbitration agreement that is *not* a condition of employment, as demonstrated *supra* p. 17 (citing, *e.g.*, *Simeon*, 2019 WL 7882143, at *5). Because the DRA had an opt-out provision, it was not required as a condition of Petitioners' employment. JAMS Rule 31(c) and the Minimum Standards therefore do not apply.

*See Selman v. FCB Worldwide Inc.*, No. B168315, 2004 WL 2729656, at *3 (Cal. Ct. App. Dec. 1, 2004) (unpublished) (holding that the JAMS Minimum Standards and prior version of JAMS Rule 31(c) were limited to "arbitration agreements that are required as a condition of employment" and did not apply to an "arbitration agreement [that] was not mandatory"). The *Zhang* arbitrator totally disregarded the long line of cases recognizing that an arbitration agreement is not mandatory or a condition of employment when the employee can opt out of it. Instead, he reasoned that because Petitioners had to sign their onboarding packet (which included the DRA) before exercising their option to opt out of the DRA, the DRA somehow became a condition of their employment. New York district courts have rejected the suggestion that an upfront signature makes an arbitration agreement a condition of employment. For example, *Simeon*, one of the cases the *Zhang* arbitrator ignored, held that having "30 calendar days *from the date you sign the Arbitration Agreement* to opt out of the duty to arbitrate" meant "dispute resolution by arbitration is *not* a mandatory condition of [] employment." 2019 WL 7882143, at *5 (first emphasis added); *see also Rodriguez*, 2009 WL 2001328, at *4 (plaintiff's submission to arbitration provision was not "condition of employment" where employee had "choice of opting-out," even though employee had to sign his employment contract). The *Zhang* arbitrator gave no reason to reject this on-point precedent.

Even on its own terms, Petitioners' argument makes no sense. Exercising the opt-out option would have ensured that the employee would "**not be subject to this Agreement**." DRA § 8. Even if a signature was required, the DRA itself was not. Nor were employees required to be temporarily bound by the DRA. Employees could return the opt-out form to Human Resources at the same moment they executed the DRA or even before executing it—any time "within 30 days of the Employee's *receipt* of [the] Agreement." *Id.* (emphasis added). And the DRA indicates that it did

not become effective upon signature, but rather only after the 30-day opt out window had closed: "mutual acceptance of the terms of this Agreement" would be inferred after the employee did not "opt out of this Agreement within 30 days" and continued her employment for those 30 days. *Id.* There is no basis for Petitioners' argument.

### 3.     The JAMS Minimum Standards and Rule 31(c) do not override Section 6 of the DRA.

The *Zhang* arbitrator found that JAMS Rule 31(c) and the JAMS Minimum Standards require Twitter to pay nearly all arbitration fees regardless of Section 6 and the opt out provision. But applying the JAMS policy across the board, regardless of whether Twitter is "required to pay" those fees "under applicable law"—which itself requires an individualized inquiry—would nullify the terms of DRA § 6 and thus must be rejected as an interpretation of the DRA.

The DRA does not incorporate the Minimum Standards; it states that arbitration will take place under the "then-current JAMS Rules." DRA § 5. But even if Rule 31(c) were to be construed as Petitioners favor, it still would not justify overriding the specific fees arrangement in Section 6. "It is a well-recognized tenet of contract interpretation that 'specific terms and exact terms are given greater weight than general language.'" *Int'l Bhd. of Elec. Workers, Loc. Union 43 v. NLRB*, 9 F.4th 63, 75 (2d Cir. 2021) (citation omitted). That means that even a general agreement to arbitrate under JAMS rules does not negate a contrary, explicit term addressing the payment of arbitration fees. Rather, a specific fee provision controls over a general reference to arbitration rules. *E.g.*, *Goobich v. Excelligence Learning Corp.*, No. 19-6771, 2020 WL 5593011, at *3 (N.D. Cal. Sept. 18, 2020) ("*While the parties may have intended to utilize the AAA rules, it does not follow that they intended those rules govern over express provisions in the [agreement] to the contrary*. Moreover, applying the fee schedule of the AAA Employment Rules 'would impermissibly render the more specific provisions in [the arbitration agreement] superfluous.'"

(emphasis added) (citation omitted)). Any other interpretation of the DRA would make the fee-apportioning language in DRA § 6 meaningless, in violation of basic contract principles. *See Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) ("the court should read the integrated contract as a whole to safeguard against adopting an interpretation that would render any individual provision superfluous").

In another recent dispute in which an arbitral body improperly tried to override an arbitration agreement's terms through its fee schedule, the Second Circuit aptly observed that the employer "cannot be faulted for standing on its contractual entitlements." *Brown v. Peregrine Enters., Inc.*, No. 22-2959, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023). The AAA "adher[ed] to its own Fee Schedule rather than the parties' bargained-for terms," and the employer had every right to insist on the arbitration agreement's terms being applied. *See id.* at *2-3. The same principle applies here. Twitter is simply standing on the terms of the DRA, and the FAA entitles Twitter to do so. Its contractual right to individual, case-by-case fee apportionment by the arbitrator trumps a general reference to the JAMS rules. *See Goobich*, 2020 WL 5593011, at *3.

## IV.   CONCLUSION

For all these reasons, the Court should deny the Petition.

Dated:      New York, New York             */s/ Melissa D. Hill*
             May 30, 2024                   Melissa D. Hill
                                      Morgan, Lewis & Bockius LLP
                                      101 Park Avenue
                                      New York, NY 10178
                                      (212) 309-6318
                                      melissa.hill@morganlewis.com

                                      Michael E. Kenneally (*pro hac vice*)
                                      1111 Pennsylvania Avenue, NW
                                      Washington, DC  20004
                                      (202) 739-5893
                                      michael.kenneally@morganlewis.com

                                      *Counsel for Respondents*