UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ BURGIOUS  FRAZIER,  JR.,  YOSUB           │
│ KIM,  WAYNE  KRUG,  BEN  PEREZ,           │
│ VANESSA  SZAJNBERG,  NICHOLAS             │
│ TAPALANSKY, and SHELLY YIP,               │
│                                           │
│              Petitioners,                 │
│                                           │
│     -against-                             │
│                                           │
│ X CORP f/k/a TWITTER, INC. and            │
│ X  HOLDINGS  CORP  f/k/a  X               │
│ HOLDINGS I, INC.,                         │
│                                           │
│              Respondents.                 │
└─────────────────────────────────────────┘
```

24-cv-02135(JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.:

Petitioners Burgious Frazier, Jr., Yosub Kim, Wayne Krug, Ben Perez, Vanessa Szajnberg, Nicholas Tapalansky, and Shelly Yip are former employees of respondents Twitter, Inc., X Corp., X Holdings I, Inc., and X Holding Corp. (collectively "Twitter"). Twitter and petitioners agreed at the commencement of petitioners' employment to arbitrate petitioners' employment-related claims against Twitter in accordance with Twitter's Dispute Resolution Agreement ("DRA"). After Twitter terminated petitioners' employment, petitioners initiated individual arbitrations with the Judicial Arbitration and Mediations Services ("JAMS"), alleging Twitter had not paid the full severance that petitioners were owed. JAMS then promptly informed Twitter that pursuant to JAMS' rules, Twitter would be required to pay all ongoing arbitration fees. Twitter initially participated in the arbitrations but then objected to paying all ongoing fees on the ground that JAMS'

rules did not apply or that, at a minimum, whether or not they applied had to be determined by the individual arbitrators in each of the individual cases. Rejecting this objection, the General Counsel of JAMS directed Twitter to pay, but Twitter refused, claiming that only the individual arbitrators in individual cases could force Twitter to pay, and the arbitrations ground to a halt.

Petitioners now seek an order compelling Twitter to pay all ongoing fees for their arbitrations at least until the individual arbitrators in the individual cases have been given the opportunity to rule on the question. For the reasons set forth below, the Court grants petitioners' motion to compel and orders Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary.

I.   Background

Petitioners are former Twitter employees who were recently laid off by the company. Petitioners allege that they were each offered less severance than Twitter was contractually obligated to provide. *See* Pet. Br. (Dkt. 4) at 5. Instead of accepting the proffered severance packages, petitioners each filed individual arbitration claims against Twitter. *Id.*

As a condition to originally accepting employment with Twitter, each of the petitioners was required to sign an arbitration agreement, the DRA, which committed both parties to arbitrate "without limitation,

disputes arising out of or relating to interpretation or application of this Agreement, including the enforceability, revocability or validity of the Agreement or any portion of the Agreement." DRA (Dkt. 6-11) § 1.[1] The DRA also incorporated JAMS Employment Arbitration Rules and Procedures (the "JAMS Rules") by reference, specifying that those rules would govern any arbitration that might be filed. *See* DRA (Dkt. 6-11) § 5 ("Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules."); *see also id.* § 3 ("[T]he dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ('JAMS Rules')."). The DRA also specified that any arbitration would be brought "**on an individual basis only, and not on a class, collective, or private attorney general representative action basis.**" *Id.* § 5 (emphasis in original).

After petitioners filed their individual cases with JAMS, JAMS invoiced Twitter for its share of the arbitration initiation fees and indicated that JAMS' Policy on Employment Arbitration Minimum Standards of Procedural Fairness (the "Minimum Standards") would apply to each arbitration governed by the DRA. Pet. Br. (Dkt. 4) at 5. The Minimum Standards, if applicable, would require Twitter, as the employer, to pay all ongoing fees associated with the arbitration. *See*

---

[1]    Each petitioner was required to sign a copy of the DRA that was substantively identical. *See* Pet. Br. (Dkt. 4) at 10. All citations to the DRA are made to the copy in Dkt. 6-11.

Minimum Standards No. 6, https://www.jamsadr.com/employment-minimum-standards/ ("The only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fees and all professional fees for the arbitrator's services."). By their terms, the Minimum Standards "apply to arbitrations based on pre-dispute agreements that are required as a condition of employment." Minimum Standards, at 1. JAMS Rule 31(c) contains a substantively identical requirement where arbitration is based on a pre-dispute agreement that is a condition of employment. *See* JAMS Rule 31(c), https://www.jamsadr.com/rules-employment-arbitration/english ("If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee.").

At the time the arbitrations were initiated, Twitter did not object to JAMS' statement that the Minimum Standards would apply. Cohen Decl. (Dkt. 5) ¶ 3. Instead, Twitter filed its answers and affirmative defenses to petitioners' claims, paid its portion of the case initiation fees, and began participating in the selection of arbitrators. *Id.* Several months after the arbitration commenced, however, Twitter requested that ongoing arbitration fees be evenly split between Twitter and each claimant, arguing that the Minimum Standards and JAMS Rule 31(c) were inapplicable and that, in any event, the DRA provided for even fee splitting, superseding (or at least

conflicting with) the Minimum Standards. *See* Petition (Dkt. 6) ¶¶ 44-46; Cohen Dec. Ex. 2 (Dkt. 5-2).

Twitter based this request on a provision of the DRA which states, "[i]f under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator." DRA (Dkt. 6-11) § 6. Twitter took the position that this clause requires petitioners to pay for half of ongoing arbitration fees based on the word "apportioned." Cohen Dec. Ex. 2 (Dkt. 5-2), at 1-2. Twitter further claimed that the Minimum Standards and JAMS Rule 31(c) did not apply in any event, because the DRA specified that "[y]ou can choose to opt out of this Agreement -- you have 30 days to opt out," and further stated that **"[a]rbitration is not a mandatory condition of Employee's employment at the Company."** DRA (Dkt. 6-11), at p.1 & § 8 (emphasis in original). Because petitioners could choose to opt out of arbitration, respondents argued, the arbitration provision was not a "condition of employment." JAMS Rule 31(c).

JAMS' General Counsel rejected both arguments in a formal letter to the parties and stated that the Minimum Standards would apply to each arbitration proceeding. *See* Cohen Decl. Ex. 3 (Dkt. 5-3). Thus, Twitter would have to pay all ongoing fees. Twitter wrote JAMS and indicated that they would refuse to proceed under the Minimum Standards, asserting that only each claimant's individual arbitrator could answer questions regarding the interpretation of the DRA. *See*

Cohen Dec. Ex. 4 (Dkt. 5-4). To support this latter argument, Twitter's referred back to its prior letter, which cited the DRA's requirement that disputes about arbitration fees "be resolved by the Arbitrator." DRA (Dkt. 6-11) § 6; *see* Cohen Decl. Ex. 2 (Dkt. 5-2) at 1-2.

This refusal to pay halted the progress of each of petitioners' ongoing arbitrations. To break this impasse, petitioners' counsel advanced half of the ongoing fees in the case of another former Twitter employee they represented, Zhang Yunfeng, to get an individual arbitrator's ruling on the matter. *See* Pet. Br. (Dkt. 4) at 6. The arbitrator, retired Magistrate Judge Frank Maas, found that "[t]he DRA, which contains mandatory arbitration language in Section 1, . . . constitutes 'an agreement . . . required as a condition of employment' within the meaning of JAMS Rule 31(c)." Pet. Ex. 4 (Dkt. 4) at 3-4. Thus, Judge Maas found the Minimum Standards were applicable to the DRA and Twitter was "required to pay all the JAMS fees and arbitrator fees (other than the initial case management fee) incurred in connection with this proceeding." *Id.*

Despite this ruling, Twitter refused to pay the arbitration fees in any of the petitioners' cases, arguing that Judge Maas's decision was wrong and applied, at most, to only Zhang's claim. In response, petitioners brought the action seeking to compel Twitter to arbitrate in accordance with the terms of the DRA by requiring Twitter to pay all ongoing fees.

II.  Applicable Legal Principles

Pursuant to Section 4 of the Federal Arbitration Act ("FAA"), "a party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. A court must grant such a petition if it finds the parties "enter[ed] into a contractually valid arbitration agreement" and their "dispute fall[s] within the scope of [that] agreement." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003). If, however, the issue falls outside the scope of the arbitration agreement, it is "subject to independent review by the courts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947 (1995).

A party who refuses to pay required arbitration fees, despite having the ability to do so, has refused to arbitrate within the meaning of Section 4. *See Hoeg v. Samsung*, 2024 WL 714566, at *7 (N.D. Ill. Feb. 20, 2024) ("[R]epeated failure to pay [initiation fees] after multiple deadlines, without any showing of hardship, is a classic refusal to pay scheme in violation of Section 4."); *Allemeier v. Zyppah*, 2018 WL 6038340, at *4 (C.D. Cal. Sept. 21, 2018) ("[B]y repeatedly refusing to pay its portion of the [initiation] filing fee . . . respondent has failed or refused to arbitrate."). In such circumstances, a court may order the recalcitrant party to arbitrate "in accordance with the terms of the [arbitration] agreement" by requiring the party to pay the required arbitration fees. 9 U.S.C. §

4; *see Hoeg*, 2024 WL 714566, at *7 ("[T]his Order can and does compel [respondent] to pay the requisite fees as set by the [arbitrator]."); *Allemeier*, 2018 WL 6038340, at *4 (similar); *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2015) ("If [respondent] had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate.").

## III. <u>Discussion</u>

The parties do not dispute that the DRA constitutes a valid arbitration agreement that applies to the substance of petitioners' underlying claims. Petitioners here initially sought an order resolving definitively whether Twitter was obligated to pay all ongoing fees. However, the DRA provides that "any disputes [regarding arbitration fees] will be resolved by the Arbitrator," DRA (Dkt. 6-11) § 6,[2] and in accordance with this provision, petitioners and

---

[2]    While the DRA does not expressly define the term "Arbitrator," it is clear from context that the term refers to the individual arbitrator appointed in each case (as opposed to JAMS as an organization). The DRA's arbitrator selection provision clearly contemplates that the "Arbitrator" is a natural person either agreed to by the parties or appointed in accordance with the JAMS Rules. *See* DRA (Dkt. 6-11) § 3 ("The Arbitrator shall be selected by mutual agreement of the Company and the Employee. . . . [T]he Arbitrator shall be an attorney . . . or a retired federal or state judicial officer who presided in the state where the arbitration will be conducted."). The JAMS Rules, in turn, set forth procedures for "JAMS" to select "an Arbitrator," making clear the rules similarly contemplate that the two are distinct entities. *See* JAMS Rule 15. In cases where an individual arbitrator has been appointed, this language is clear that the DRA delegates decisions about fee advancement to that person.

respondents now both agree that the ultimate decision of who is required to pay ongoing arbitration fees must be resolved by an individual arbitrator. *See* Resp. Am. Opp. (Dkt. 22) at 6 ("Petitioners' contention must be resolved in their individual arbitrations, not here."); Pet. Reply (Dkt. 15) at 3-4 ("[T]o the extent Respondents wish to raise their arguments to an arbitrator in each of Petitioners' cases, grant of the requested relief will facilitate that, not foreclose it.").[3]

Accordingly, rather than seeking a final resolution of the fee question, petitioners now seek an order requiring Twitter to pay all ongoing fees until such time as an individual arbitrator rules otherwise. The Court must therefore resolve two questions. First, can the Court grant such interim relief, requiring Twitter to pay such fees before an arbitrator has been given an opportunity to address the question? Second, if the Court has such authority, have petitioners

---

[3]     Petitioners ask the Court to use the *Zhang* decision to collaterally estop Twitter from contesting fee responsibility in each of their individual proceedings. However, insofar as resolution of the question of fees is for the individual arbitrator to decide -- as petitioners now concede is the case -- the decision of whether collateral estoppel applies is for the individual arbitrator, not the Court, to decide as well. *See National Union Fire Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135-36 (2d Cir. 1996) ("[P]reclusion is a legal defense" and "[a]s such, it is itself a component of the dispute on the merits . . . which are assigned to an arbitrator under a broad arbitration clause."); *United States Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 816 (2d Cir. 1996) (suggesting issue preclusive effects of prior judicial decision upon arbitration must be decided by future arbitrators since defenses to arbitrability like preclusion are arbitrable).

shown Twitter should in fact bear all such fees at this time (subject to re-allocation if an individual arbitrator so determines)? As explained below, the Court finds the answer to both questions is, yes.

    A. <u>Authority to Issue Relief</u>

    Twitter argues that only an individual arbitrator can order it to pay ongoing arbitration fees. *See* Resp. Am. Opp. (Dkt. 22) at 5 ("Petitioners ask this Court to resolve a question that is expressly reserved for their respective individual arbitrators: how the parties should share fees in each of Petitioners' arbitrations."). Twitter's position appears to be that, because the DRA provides that disputes regarding fees "will be resolved by the Arbitrator," DRA (Dkt. 6-11) § 6, neither JAMS nor the Court may require Twitter to pay all ongoing fees already incurred, because the DRA delegates exclusive authority regarding this matter to an individual arbitrator.

    While the Court agrees with Twitter, as apparently do petitioners, that ultimate resolution of any dispute over how fees should be allocated must be resolved by an individual arbitrator, the Court disagrees that the DRA precludes an interim allocation of fee responsibility until an individual arbitrator has ruled. The DRA provision specifying that fee disputes "will be resolved by the Arbitrator" does not answer the question of who is to resolve such fee disputes <u>before</u> an arbitrator has been appointed or been given a chance to address on the question. The contrary reading of this provision urged by Twitter would mean that <u>no one</u> has the power to order Twitter

to pay any ongoing arbitration fees already due until the point that an arbitrator has had a chance to rule.

The trouble with Twitter's interpretation, already evident from this very case, is that it would allow Twitter to effectively resist arbitration altogether. Indeed, on Twitter's theory, Twitter could refuse even to pay its case initiation fee -- which no one disputes it was required to pay -- and petitioners' only recourse would be to advance those sums until an arbitrator ordered to the contrary, even though courts routinely find such conduct constitutes an impermissible refusal to arbitrate. *See Hoeg*, 2024 WL 714566, at *7 (condemning party's attempt to avoid arbitration through a "refusal to pay scheme"); *Allemeier*, 2018 WL 6038340, at *4 (similar); *Polit v. Global Foods Int'l Corp.*, 2016 WL 632251, at *2 (S.D.N.Y. Feb. 17, 2016) (stating that a party may not "evade[] the possibility of liability by demanding arbitration and then defaulting in the arbitration proceeding" by failing to pay required fees); *Sarit v. Westside Tomato, Inc.*, 2019 U.S. Dist. LEXIS 202461 (S.D.N.Y. Nov. 20, 2019) (similar).

To be sure, an employee in the position of the petitioners here could in theory advance the ongoing arbitration fees and later seek reimbursement once the individual arbitrator had been assigned. But, at a minimum, this would allow Twitter to foist upon individual employees an arbitrary and often extreme financial burden. And if, as could often be the case, an individual employee lacked the funds necessary to assume such a burden, the result would be to allow Twitter to avoid arbitration entirely. Such an interpretation would frustrate

the "prime objective of an agreement to arbitrate . . . to achieve streamlined proceedings and expeditious results." *Preston v. Ferrer*, 552 U.S. 346, 357 (2008) (internal quotation marks omitted). Such an unreasonable interpretation cannot have been what was intended by the DRA.

Whereas the provision Twitter relies on -- and the DRA more generally -- is silent on the question of interim relief, the JAMS Rules and Minimum Standards, which are incorporated into the DRA,[4] contemplate that JAMS as an organization will have the power to make an initial ruling on this dispute. For example, the JAMS Rules provide that "[d]isputes concerning the appointment of the Arbitrator shall be resolved by JAMS," which suggests that JAMS has the authority to resolve disputes about application of the rules prior to the arbitrator's appointment. More importantly, where "an arbitration is based on an agreement that is required as a condition of employment" -- which, as discussed below, this Court has determined is the case here -- JAMS "Standards of Procedural Fairness for Employment Arbitration" apply. Minimum Standards § B. The Minimum Standards

---

[4]    DRA (Dkt. 6-11) § 3 ("[T]he dispute shall be heard by a neutral arbitrator chosen according to the procedures found in the then-current JAMS Employment Arbitration Rules and Procedures ('JAMS Rules')."); *id.* § 5 ("Employee and the Company agree to bring any claim in arbitration before Judicial Arbitration and Mediation Services ('JAMS'), pursuant to the then-current JAMS Rules."); JAMS Rule 2(a) ("The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with . . . JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31).").

expressly delegate to JAMS the authority to make an initial assessment of whether the Minimum Standards are being complied with:

> If JAMS becomes aware that an arbitration clause or procedure does not comply with the Minimum Standards, it will notify the employer of the Minimum Standards and inform the employer that the arbitration demand will not be accepted unless there is full compliance with those standards. In assessing whether the standards are met and whether to accept the arbitration assignment, JAMS, as the ADR provider, will limit its inquiry to a facial review of the clause or procedure. If a factual inquiry is required, for example, to determine compliance with Minimum Standards, it must be conducted by an arbitrator or court.

*Id.* at p.4. This provision grants JAMS the authority to do precisely what happened here: make an initial determination about whether the Minimum Standards apply. And Minimum Standard No. 6 states that "[t]he only fee that an employee may be required to pay is the initial JAMS Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fees and all professional fees for the arbitrator's services." *Id.* No. 6.

To be sure, JAMS's authority is "limit[ed] . . . to a facial review of the clause and procedures," and any disputes about compliance that turn on "a factual inquiry . . . must be conducted by an arbitrator or court," but that limitation does not strip any interim determination by JAMS of its force. *Id.* at p.4. Rather, the above-quoted provision clearly implies that interim fee determinations -- or at least those relating to the Minimum Standards -- will be made by JAMS in the first instance, and then later reviewed by an individual arbitrator or court.

The DRA must be read in conjunction with the JAMS' procedures that were incorporated therein, and, if possible, the two should be harmonized. *See Cedeno v. Sasson*, 100 F.4th 386, 394-95 (2d Cir. 2024) ("[C]ourts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." (internal quotation marks omitted)). This specific provision granting JAMS the authority to make an interim determination regarding the applicability of the Minimum Standards confirms that the more general provision, relied upon by Twitter, specifying fee disputes "will be resolved by the Arbitrator" applies only after an arbitrator has been appointed and had a chance to rule. *See Int'l Bhd. of Elec. Workers, Loc. Union 43 v. NLRB*, 9 F.4th 63, 75 (2d Cir. 2021) ("It is a well-recognized tenet of contract interpretation that specific terms and exact terms are given greater weight than general language." (internal quotation marks omitted)). The Court therefore rejects Twitter's argument that no one can require Twitter to pay fees up until an individual arbitrator has been given a chance to rule on the question.

> B. Whether Twitter Is Required to Advance Arbitration Fees

For the foregoing reasons, the Minimum Standards vest JAMS with discretion to make the initial determination about whether the Minimum Standards apply, and hence whether Twitter is obligated to pay all ongoing fees. Pursuant to this authority, JAMS, at the commencement of the arbitrations here, informed Twitter that the Minimum Standards

14

would apply and, after Twitter objected to this, JAMS's General Counsel sent Twitter a formal letter overruling its objection. *See* Cohen Decl. Ex. 3 (Dkt. 5-3). In making this determination, JAMS' General Counsel was authorized to act on behalf of JAMS as an organization and carry out its duty under the JAMS Rules. *See* JAMS Rule 1(c) ("[T]he authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by . . . the office of JAMS General Counsel or their designees.").

When asked at oral argument why this determination by JAMS' General Counsel did not control the outcome of this case, counsel for Twitter offered essentially two arguments. First, Twitter argued that the Minimum Standards do not apply, because the arbitration agreement here was not a condition of employment, and JAMS General Counsel got it wrong by finding otherwise. Second, Twitter argued that applying the Minimum Standards, and requiring Twitter to pay all ongoing fees, contradicts the terms of the DRA which Twitter argues require fees be apportioned equally between the parties.[5]

As a threshold matter, there is a strong argument that the Court should defer to the JAMS General Counsel's determination rejecting these arguments. Insofar as the parties agreed to have JAMS resolve

---

[5]   Twitter's counsel also observed that the JAMS General Counsel, in her letter, suggested only that JAMS would consider revising its position about the Minimum Standards' applicability in light of an individual arbitrator's ruling, but did not expressly concede that JAMS would defer to it. The speculative possibility that JAMS might refuse to comply with an individual arbitrator's ruling in Twitter's favor does not provide a basis for denying petitioners' request for relief here.

interim fee disputes, that delegation should be enforced in a similar manner as any other agreement to arbitrate. *Cf. Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("[A]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." (internal quotation marks omitted)).

Procedural questions relating to the rules of arbitration are generally matters for the arbitrator, and not for the court, to resolve. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002) ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." (internal quotation marks omitted)); *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Zaro Bake Shop, Inc.*, 2021 WL 2350094, at *14 (S.D.N.Y. June 8, 2021) ("As a general matter, in all areas of arbitration law, the court gives deference to an arbitrator's application of the procedural rules of the arbitral tribunal."). Whether the Minimum Standards apply is just such a procedural issue generally reserved for the arbitrator. *See Giordano v. Sparrow Healthcare, LLC*, 2022 WL 3597084, at *2 (M.D. Fla. May 13, 2022) (holding that dispute over which set of AAA rules applied was "a procedural dispute" which "the arbitrator is in the best position to" resolve). The same is generally true as to disputes over which party is obligated to pay arbitration fees. *See Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009)

(holding that "[p]ayment of fees is a procedural condition precedent" to be resolved by arbitrator); *see also Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 389 (S.D.N.Y. 2017) ("Generally, the interpretation of specific provisions of the arbitration agreement are not questions of arbitrability and are reserved for the arbitrator.")

While the Court is unaware of any case expressly extending such deference to determinations by the arbitration association itself, the Court sees no reason why such deference should not apply with equal force here. The JAMS General Counsel is, in effect, standing in the shoes of the individual arbitrator until one has ruled to the contrary, and so in that sense her decision is no different than that of an individual arbitrator. Further, the rationale behind this rule is that arbitrators are "comparatively more expert about the meaning of their own rule[s]," and this logic applies with equal (if not greater) force to decisions by the JAMS General Counsel. *Howsam*, 537 U.S. at 85.

Having said this, there is some authority that arguably suggests that a party may not be required to pay fees in a manner that is inconsistent with the parties' arbitration agreement, at least where an arbitration agreement clearly directs that fees be split in a particular manner. *See Brown v. Peregrine Enterprises, Inc.*, 2023 WL 8800728, at *3 (2d Cir. Dec. 20, 2023) (concluding party who refused to comply with AAA's directive to pay entirety of ongoing arbitration fees had not waived right to arbitrate where arbitration agreement expressly provided that fees would be split equally). If Twitter were correct that the DRA clearly requires fees be split in a particular

manner, arguably the Court lacks the authority under Section 4 of the FAA to order Twitter to pay those fees arbitration. *See* 9 U.S.C. § 4 (granting Court authority to direct parties to arbitration "in the manner provided for in such agreement"). Whatever the merits of this line of argument, it does not matter here because, as explained below, even were the Court to review Twitter's merits arguments *de novo*, the Court would reach the same conclusion as JAMS.

1. Applicability of Minimum Standards & JAMS Rule 31(c)

The Minimum Standards apply to "all arbitrations based on pre-dispute agreements that are required as a condition of employment." Minimum Standards at 1. If the Minimum Standards are applicable, "[t]he only fee that an employee may be required to pay is JAMS' initial Case Management Fee. All other costs must be borne by the company, including any additional JAMS Case Management Fee and all professional fees for the arbitrator's services." Minimum Standards No. 6. Similarly, JAMS Rule 31(c) provides that "[i]f an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee." JAMS Rule 31(c).

Twitter argues that arbitration is not a "condition of employment" because Twitter employees have the right to opt out of arbitration under the DRA. Resp. Am. Opp. (Dkt. 22) at 22. All Twitter employees are required to sign the DRA. However, the DRA specifies that "[y]ou can choose to opt out of this Agreement – you have 30 days to opt out," and states "**[a]rbitration is not a mandatory condition of**

**Employee's employment at the Company.**" DRA (Dkt. 6-11) § 8 (emphasis in original).

A close reading of the Minimum Standards and JAMS Rule 31(c) makes clear that this opt-out right does not remove the DRA from the rules' scope.[6] The question turns on what noun is modified by the phrase "is required as a condition of employment." In Twitter's view, this phrase modifies "Arbitration," such that if an employee is able to opt out of arbitration, the rule does not apply. However, if the phrase "is required as a condition of employment" modifies the phrase "pre-dispute agreements," JAMS Rule 31(c) would still apply, because all employees are required to sign the DRA as a condition of employment, whether or not they later opt out of arbitration. *See* Cohen Decl. (Dkt. 5) ¶ 2; Cohen Reply Decl. Ex. 1 (Dkt. 15-2) ¶¶ 2-4.

The Court finds the latter interpretation superior. Treating "a clause or agreement that is required as a condition of employment" as one unified phrase is by far the more natural reading of the provision, and is supported by the well-established grammatical rule of the last antecedent, which holds that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). By contrast, it is awkward to say that "Arbitration" is modified by "is required as a condition of employment" (i.e. "an Arbitration . . . is

---

[6]    The Court focuses its analysis on the text of JAMS Rule 31(c), although the language of both provisions appears substantively identical.

required as a condition of employment"), since "an Arbitration" is not really what is being agreed to as a "condition of employment." Rather, the condition of employment is an agreement itself (note that the rules does not refer to "an arbitration agreement" but rather "Arbitration based on a pre-dispute clause or agreement"). Further, if the phrase "that are required as a condition of employment" modified "arbitrations," then the intervening phrase "based on a pre-dispute clause or agreement" would be rendered utterly superfluous, because all "arbitrations . . . required as a condition of employment" would necessarily be "based on pre-dispute agreements."

To be sure, if the employee is not required to arbitrate, one might ask why it should matter that they are required to sign the agreement containing the right to opt out. But upon reflection, one can easily see why JAMS would draw this distinction. Ample empirical evidence in the context of consumer contracts demonstrates consumers rarely if ever read, let alone understand, contracts of adhesion they sign, and there is little reason to think the result is any different in the context of the employment agreements such as this. *See* Restatement of the Law, Consumer Contracts (Tentative Draft No. 2) § 2, Reporters' Notes (2022) ("[C]redible empirical evidence, as well as common sense and experience, suggests that consumers rarely read standard contract terms no matter how those terms are disclosed."); Ian Ayres & Alan Schwartz, *The No-Reading Problem in Consumer Contract Law*, 66 Stan. L. Rev. 545, 547-548 (2014) (collecting empirical evidence). The notion that employees read contracts of adhesion, such

as those at issue here is, at best, a legal fiction. While, inevitably such a fiction may sometimes be necessary, e.g., to promote commerce, nevertheless as a matter of policy it is entirely reasonable for JAMS to conclude that granting an employee the right to opt out of arbitration will have little practical effect in the overwhelming majority of cases, so that requiring the employee to enter into the agreement will as a practical matter be little different from forcing them to arbitrate.

This policy rationale confirms what is apparent from the plain text of the JAMS Rules. If an employee is required to sign an agreement containing an arbitration clause as a condition of employment, JAMS Rule 31(c) and the Minimum Standards apply, even if the employee has the opportunity to opt out of arbitration.

2. <u>Conflict with DRA</u>

Even if JAMS Rule 31(c) and the Minimum Standards apply to petitioners' employment agreements and arbitrations, Twitter still claims that requiring it to pay all ongoing fees conflicts the with express terms of the DRA. The relevant provision provides that "[i]f under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law." DRA (Dkt. 6-11) § 6. The parties agree that New York law, applicable here, does not expressly require Twitter to pay, although the parties also cite no New York law requiring a 50/50 split. *See* Resp. Am. Opp. (Dkt. 22) at 21; Pet. Reply (Dkt. 15) at 8. Nevertheless, Twitter argues that

the word "apportioned" in this provision means that the fees must be split 50/50 between the parties. *See* Resp. Am. Opp. (Dkt. 22) at 21. In support of argument, Twitter cites several dictionary definitions of "apportion." *See Oxford English Dictionary* 579 (2d ed. 1989) ("To assign in proper portions or shares; to divide and assign proportionally; to portion out, to share."); *Webster's New International Dictionary* 132 (2d ed. 1955) ("To divide and assign in just proportion; to divide and distribute proportionally; to make an apportionment of; portion out; to allot.").

But even these definitions do not require a 50/50 split. Thus, even using these definitions, the fact arbitration that fees must be "apportioned" does not dictate *how* the fees should be apportioned. *Cf. Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 934 (11th Cir. 2019) (concluding contract provision requiring each party pay "its own attorneys' fees and other costs of the arbitration" did not conflict with JAMS's Minimum Standards for consumer contracts, requiring the employer pay all ongoing costs, because the provision simply "suggests that the parties must pay their own costs as determined by that organization"); *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (suggesting arbitrator "apportion[ed]" ongoing arbitration fees by exercising its discretion to require one party to pay 100% of those fees). The dictionary definitions Twitter cites make reference to "divid[ing] and assign[ing] proportionally, or "distribut[ing] proportionally," but this says nothing about how large the respective portions should be. And other definitions of the

word in the very same dictionaries refer to allocating the "proper portions" or "just proportion," which of course begs the question of what is "proper" or "just." *See* Pet. Reply (Dkt. 15) at 8. Here, invoking the Minimum Standards, JAMS apportioned the case initiation fee to petitioners and all other ongoing fees to Twitter. This allocation is entirely consistent with, and indeed apparently mandated by, the DRA.

Twitter argues that, if the Minimum Standards were incorporated into the DRA, and it were required to pay all ongoing fees, this provision requiring fees be "apportioned" would be rendered superfluous, because in every case Twitter would be obligated to pay. *See* Resp. Am. Opp. (Dkt. 22) at 24-25. However, even if all ongoing fees must be apportioned to the employer, this still leaves open the possibility that the case initiation fee be apportioned to the employee. Further, the Minimum Standards specify that they "do not apply if the agreement to arbitrate was individually negotiated by the employee and employer, or if the employee was represented or advised by counsel during the negotiations." Minimum Standards, at 5. While there is no suggestion these exceptions apply here, it is possible that they apply to some other Twitter employees, and in those cases the arbitrator would presumably have the authority to allocate fees between the respective parties more freely because the Minimum Standards would be inapplicable.

IV.   Conclusion

23

For the foregoing reasons, the Court grants the motion to compel arbitration and orders Twitter to pay all ongoing arbitration fees for petitioners' claims unless and until the individual arbitrator in each of petitioners' respective arbitrations rules to the contrary.

SO ORDERED.

New York, NY
July __, 2024

JED S. RAKOFF, U.S.D.J

24